1   ERIC KLEIN
    *eklein@akingump.com*
2   JUSTIN CHI (SBN 288252)
    *jjchi@akingump.com*
3   **AKIN GUMP STRAUSS HAUER & FELD LLP**
    1700 Pacific Avenue, Suite 4100
4   Dallas, TX 75201
    Telephone:    214-969-2800
5   Facsimile:    214-969-4343

6   Attorneys for Movants
    Lenovo Holding Company Inc. and
7   Lenovo (United States) Inc.

8   JAMIE BEABER
    *jbeaber@mayerbrown.com*
9   KFIR LEVY
    *klevy@mayerbrown.com*
10  BALDINE PAUL
    *bpaul@mayerbrown.com*
11  ANITA LAM
    *alam@mayerbrown.com*
12  **MAYER BROWN LLP**
    1999 K Street, NW
13  Washington, DC 20006
    Telephone:    202-263-3000
14  Facsimile:    202-263-3300

15  ROBERT PLUTA
    *rpluta@mayerbrown.com*
16  AMANDA K. STREFF
    *astreff@mayerbrown.com*
17  **MAYER BROWN LLP**
    71 S. Wacker Drive
18  Chicago, IL 60606
    Telephone:    312-782-0600
19  Facsimile:    312-701-7711

20  Attorneys for Movants
    LG Electronics Inc.; LG Electronics
21  U.S.A., Inc.; LG Display Co., Ltd.; and
    LG Display America, Inc.

22

23

24

25

26

27

28

**JOINT STIPULATION PURSUANT TO LOCAL RULE 37-2 REGARDING LENOVO'S AND LG'S MOTION TO COMPEL**
1

1

2

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (SOUTHERN DIVISION)

| | |
|---|---|
| LENOVO HOLDING COMPANY, INC. and LENOVO (UNITED STATES) INC., <br><br> LG ELECTRONICS INC., LG ELECTRONICS U.S.A., INC., LG DISPLAY CO., LTD., and LG DISPLAY AMERICA, INC., <br><br> Movants, <br><br> vs. <br><br> ACACIA RESEARCH CORP. and ACACIA RESEARCH GROUP LLC <br><br> Non-Movants. | Case Nos. <br><br> (District of Delaware Case No. 13-2108-RGA) <br><br> (District of Delaware Case No. 13-2109-RGA) <br><br> **JOINT STIPULATION PURSUANT TO LOCAL RULE 37-2 REGARDING LENOVO'S AND LG'S MOTION TO COMPEL ACACIA TO COMPLY WITH SUBPOENA** <br><br> Discovery Cutoff Date:  12/04/15 <br> Pretrial Conference Date: 10/14/16 <br> Trial Date:  10/24/16 |

# <u>TABLE OF CONTENTS</u>

Page(s)

I.    INTRODUCTORY STATEMENTS ........................................................- 1 -

    A.    MOVANTS' INTRODUCTORY STATEMENT ..............................- 1 -

    B.    ARC AND ARG'S INTRODUCTORY STATEMENT ....................- 4 -

II.   REQUESTS IN DISPUTE AND ARGUMENTS ........................................- 7 -

    A.    REQUESTS FOR PRODUCTION REGARDING LICENSE
        AGREEMENTS.............................................................................- 7 -

        1.    REQUEST FOR PRODUCTION NO. 23: ...........................- 7 -

        OBJECTION TO REQUEST NO. 23:........................................- 7 -

        MOVANTS' ARGUMENT........................................................- 8 -

        ARC AND ARG'S ARGUMENT ...............................................- 11 -

            a)    Plaintiffs Have All Documents And Communications Relating To The
                Asserted Patents Including License Agreements. .....................................- 12 -

            b)    The Global Agreements Are Not Relevant Because The Agreements Do Not
                Provide Any License To Any Asserted Or Related Patent. .......................- 15 -

            c)    Movants Are Attempting To Circumvent The E-Discovery Order Entered In
                This Action By Seeking E-Discovery From Third Parties ARC And ARG,
                Before Seeking E-Discovery From Plaintiffs...........................................- 18 -

        2.    REQUEST FOR PRODUCTION NO. 36: ...........................- 20 -

        OBJECTION TO REQUEST NO. 36:........................................- 20 -

        MOVANTS' ARGUMENT........................................................- 21 -

        ARC AND ARG'S ARGUMENT ...............................................- 21 -

        3.    REQUEST FOR PRODUCTION NO. 31: ...........................- 22 -

        OBJECTION TO REQUEST NO. 31:........................................- 22 -

        MOVANTS' ARGUMENT........................................................- 23 -

        ARC AND ARG'S ARGUMENT ...............................................- 26 -

            a)    Request No. 31 Seeks Cloned Regulatory Discovery That Is Wholly
                Irrelevant To The Patent Litigation. ........................................................- 26 -

b)   Request No. 31 Is Patently Overbroad And Unduly Burdensome Because The Cloned Discovery Encompasses More Than One Million Documents Regarding Unrelated Patents And Technology And Requires Pre-Production Review.................................................................................................. - 28 -

4.     REQUEST FOR PRODUCTION NO. 25: ........................................... - 30 -

OBJECTION TO REQUEST NO. 25:............................................................... - 30 -

MOVANTS' ARGUMENT..................................................................... - 31 -

ARC AND ARG'S ARGUMENT .................................................................. - 35 -

a)   The Requests Are Duplicative And Cumulative Because Plaintiffs Possess All Of The Requested Documents. ........................................... - 35 -

b)   Movants Are Trying To End-Run The Privilege Log Requirements Imposed By Judge Andrews In The Patent Litigation. .............................. - 36 -

c)   Movants' Challenges To Documents Protected Under The Common Interest Privilege And Work Product Rule Are Not Ripe Because There Is No Privilege Log, And Is Contrary To The Law. ............................................. - 36 -

5.     REQUEST FOR PRODUCTION NO. 26: ........................................... - 42 -

OBJECTION TO REQUEST NO. 26:............................................................... - 43 -

MOVANTS' ARGUMENT..................................................................... - 43 -

ARC AND ARG'S ARGUMENT .................................................................. - 44 -

CERTIFICATE OF CONFERENCE........................................................................... - 47 -

## I.    INTRODUCTORY STATEMENTS

### A.    MOVANTS' INTRODUCTORY STATEMENT

Pursuant to Rules 37(a)(2) and 45(d)(2)(B)(i) of the Federal Rules of Civil Procedure and Local Rule 37, Lenovo Holding Co. Inc.; Lenovo (United States) Inc.; LG Electronics Inc.; LG Electronics U.S.A., Inc.; LG Display Co., Ltd.; and LG Display America, Inc. (collectively "Movants"), request that the Court compel Acacia Research Group LLC ("ARG") and Acacia Research Corporation ("ARC") (collectively "Acacia") to comply with Movants' Subpoenas to Produce Documents.

On July 9, 2015, Movants served the first subject subpoena in connection with District of Delaware Case Nos. 13-2108-RGA, 13-2109-RGA, and 13-2112-RGA. (Ex. A [Movants' Subpoenas to Acacia Research Corp.])[1]. In the DDG-IDT Litigation, Movants are defending themselves from claims by Acacia subsidiaries, Delaware Display Group LLC ("DDG") and Innovative Display Technologies LLC ("IDT") (collectively, "Plaintiffs") (the "DDG-IDT Litigation"), that Movants infringe U.S. Patent Nos. 6,755,547; 7,300,194; 7,384,177; 7,404,660; 7,434,973; 7,434,974; 7,537,370; 7,914,196; and 8,215,816 (the "Patents-in-Suit"). Acacia is a third party in name only; Plaintiffs exist merely to initiate lawsuits on Acacia's behalf. ARC is the parent company to ARG. Parties have met and conferred and are at an impasse on issues raised in this stipulation. Movants have learned that Acacia has entered into agreements with third parties whereby Acacia has provided a license, covenant, and release that immunizes the third party against any claim of infringement at any time of any patent owned or controlled by Acacia or its subsidiaries. Movants know of at least one such agreement that Acacia entered into with Microsoft Corporation

---

[1] Exhibit citations herein are to the concurrently filed Declaration of Eric J. Klein and Declaration of Robert G. Pluta.

("Microsoft").  On November 20, 2013, Microsoft filed a lawsuit against Acacia. *See Microsoft Corp. v. Acacia Research Corp.*, No. 13-8275 (S.D.N.Y. 2014). According to Microsoft's amended complaint, Acacia breached a contract with Microsoft that "(a) forever immunizes Microsoft against any claim of infringement at any time of any patent owned or controlled by ARC or its subsidiaries (except for certain excluded patents not relevant here) as of September 30, 2010; and (b) forever immunizes Microsoft against any claim for infringement arising before October 1, 2013 as to any patents acquired by ARC or its subsidiaries after September 30, 2010."  *See* Ex. B, Dkt. No. 123 at ¶¶ 12, 13, 49-67, *Microsoft Corp. v. Acacia Research Corp.*, No. 13-8275 (SDNY).   This agreement is responsive to at least Requests for Production Nos. 23 and 36 of Movants' subpoenas to Acacia.  After Acacia failed to produce any documents responsive to these requests, Lenovo sent Acacia a letter on October 9, 2015, requesting that Acacia immediately produce the requested documents, including the Microsoft agreement, related to the Patents-in-Suit.  *See* Ex. C, October 9, 2015 Letter from Lenovo to Acacia.  After Acacia refused to produce any responsive documents, Movants requested a conference of counsel.  On October 19, 2015, Lenovo and Acacia met and conferred, and Acacia stated that the documents concerning these agreements were not relevant to the DDG-IDT Litigation.  During a subsequent conference of counsel on October 22, 2015, Movants again invited Acacia to remedy the dispute by producing the requested documents.  Acacia maintained its position that the documents concerning these agreements were not relevant to the DDG-IDT Litigation and informed us that it would not produce them.  Acacia should be compelled to produce unredacted copies of any documents and communications regarding any actual or contemplated agreements relating to the patents-in-suit and all licenses or offers to license the patents-in-suit or any related patents, including the agreements themselves.

In Federal Trade Commission ("FTC") Project No. P131203, the FTC sought information related to how patent assertion entities ("PAEs") acquire patents and compensate prior patent owners, as well as how PAEs assert those patents. Acacia is an entity that asserts patents. Acacia or Acacia entities would have produced documents to the FTC in response to the FTC investigation. These documents would have related to Acacia's normal patent licensing procedures and whether Acacia followed those patent licensing procedures in any agreements regarding the Patents-in-Suit. These documents also would have contained relevant information as to the extent that prior owner of the patents are involved in the DDG-IDT Litigation. On October 22, 2015, Movants and Acacia met and conferred regarding Movants' request for documents regarding the FTC investigation. Movants invited Acacia to produce the relevant documents, and Acacia refused to produce them. Acacia argues that these documents were designated as confidential under the Freedom of Information Act ("FOIA") and are not relevant to the DDG-IDT Litigation. Movants contend that the confidentiality designation does not apply in this instance and that the documents are relevant to at least the issue of damages. Acacia should be compelled to produce unredacted copies of any documents and communications related to FTC Project No. P131203. Also during the October 22, 2015 conference of counsel, Movants repeated their request that Acacia produce documents related to the Patents-in-Suit, including, but not limited to, valuations and analyses of the Patents-in-Suit. Acacia refused to produce these documents, claiming it had given all documents related to the Patents-in-Suit to Plaintiffs and that Acacia holds a common interest privilege in these documents with Plaintiffs and/or the previous patent owner. Movants contend that Acacia still has possession of these documents and cannot relinquish its responsibility to produce documents within its possession. Movants also refute Acacia's claims of common interest privilege in these documents. Acacia should

be compelled to produce unredacted copies of any documents and communications related to the valuation or analysis of the Patents-in-Suit.

## B.   ARC AND ARG'S INTRODUCTORY STATEMENT

The motion should be denied in its entirety because Movants seek documents that are not reasonably calculated to lead the discovery of admissible evidence for any claim or defense in the underlying patent infringement action.  To the extent Movants seek potentially relevant documents, Movants must first seek those documents from the *actual* parties to the infringement action, rather than attempt to circumvent their discovery obligations and seek duplicative, cumulative, and burdensome discovery from a party's corporate parent.   Plaintiffs in the infringement action have possession, custody, or control over all documents relating to the Asserted Patents.[2]  Movants even admit this in this Joint Stipulation: "[Plaintiffs] are Acacia subsidiaries who possess all relevant documents, including communications between Acacia and Plaintiffs."  (Jt. Stip. at 24, n.19.)  Yet, Movants inexplicably demand that Plaintiffs' parent companies, ARC and ARG, search, collect, and produce *identical* documents.  The remaining requests are not reasonably calculated to lead to the discovery of admissible evidence because the requests do *not* relate to the Asserted Patents.

As a means of background, ARC is a publically traded company engaged primarily in the business of acquiring and licensing patents.  ARC and its corporate affiliates, including its subsidiary ARG, partner with inventors and other patent holders, ranging from individual inventors and universities to Fortune 500 companies, and license those inventors' patented technologies to companies that are practicing the patents without the inventors' consent.

---

[2] The "Asserted Patents" are:  U.S. Patent Nos. 7,434,974; 7,537,370; 7,914,196; and 8,215,816.  Plaintiffs dismissed without prejudice claims for patents infringement of U.S. Patents Nos. 7,384,177; 7,434,973; and 7,404,660. (Declaration of Jessica L. Mullen ("Mullen Decl."), Ex. 3.)

On January 30, 2013, ARG partnered with Rambus Delaware, LLC ("Rambus") by an agreement conveying certain Rambus patents to ARG (the "Rambus Agreement").[3]  On or about June 26, 2013, ARG subsidiary IDT received an assignment of the patents, including the Asserted Patents and all of ARG's rights and obligations under the Agreement.  On or about December 20, 2013, ARG subsidiary DDG received an assignment of one of the Asserted Patents.

On December 31, 2013, Plaintiffs filed patent infringement actions against Movants in the District of Delaware (the "Patent Litigation").  Movants have not plead any counterclaims and the deadline to amend their pleadings has long passed. One and a half years later, Movants served document subpoenas on ARC and ARG on July 9, 2015.[4]

As a threshold matter, Movants admit that Plaintiffs have possession, custody, and control over all documents pertaining to the actual Asserted Patents. Movants make no assertion regarding any deficiency in Plaintiffs' document production, or that ARC or ARG have unique or different documents concerning the Asserted Patents.  There is no legal or practical basis for Plaintiffs' corporate parents, ARC and ARG, to undergo a second and third search, collect, and produce the same documents available to Plaintiffs.   Movants' demands are contrary to the clear directives of the Federal Rules.

Plaintiffs also possess documents and communications protected from discovery by the attorney-client privilege, attorney work product doctrine, and the common interest privilege.  After entering into the Rambus Agreement with ARG, Rambus shared attorney work product materials relating to the patents based upon the common legal interest in licensing and litigating valid, enforceable patents that

---

[3] The Agreement was amended on March 1, 2013 and again on April 30, 2013.

[4] Movants subsequently served ten (10) additional document and testimony subpoenas on ARC, ARG, and their former and current employees and agents.

Rambus shares with ARG.   Those confidential communications in Plaintiffs' possession remain protected under the common interest privilege and work product rule.  To the extent Movants challenge Plaintiffs' privilege assertions (repeated by ARC and ARG here only because Movants seek the *same* documents), the Court in the Patent Litigation can resolve those challenges.

All that leaves are ARC and ARG documents and agreements relating to *other* patents and documents relating to *other* patents produced to the FTC.  First, Movants demand all documents relating to ARC's "agreements with third parties whereby Acacia has provided a license, covenant, and release that immunizes the third party against any claim of infringement" (the "Global Agreements") and point to litigation between ARC and Microsoft in the Southern District of New York.  The actual contract licensing the Asserted Patents to Microsoft now has been produced.   The Global Agreements, including a Global Agreement with Microsoft, however, are not relevant.   All of the Global Agreements predate ARG's acquisition of the Asserted Patents.   None of the Global Agreements "license," provide a covenant not to sue, or convey any substantive right for the Asserted Patents or any other DDG or IDT patent, or set any economic value for them.  At most, rights under these agreements relating to the Asserted Patents are simple notice provisions – for ARC to provide updates on new patents that ARC or its subsidiaries acquired.  Thus, they are not relevant to any damages calculation.

Second, Movants demand cloned discovery – all documents that ARC produced to the FTC during a confidential government investigation.  The FTC's discovery—encompassing literally more than a million documents regarding unrelated patents and technology—is ***not*** relevant.  Even assuming *arguendo* that ARC's "general licensing practices" were relevant (which they are not), ARC has repeatedly confirmed that there are no such formal, written policies or procedures.  To the extent that documents produced to the FTC relate to the Asserted Patents or

the Patent Litigation, Plaintiffs have already produced them.

Accordingly, Movant's requests should be denied in their entirety.

## II.   REQUESTS IN DISPUTE AND ARGUMENTS

### A.   REQUESTS FOR PRODUCTION REGARDING LICENSE AGREEMENTS

#### 1.   REQUEST FOR PRODUCTION NO. 23: [5]

All Documents Relating to any actual or contemplated agreement Relating to any and all Patents-in-Suit, Including licenses, licensing Communications, covenants, contracts, assignments, sales, acquisitions, purchases, transfers, changes of title, conveyances, settlements, payments, royalty records, and related communications.

#### OBJECTION TO REQUEST NO. 23:

ARC refers to and incorporates by reference all of the General Objections stated above as though set forth in full herein.  ARC specifically objects to the Request as overly broad, unduly burdensome, and irrelevant to the extent it seeks documents or information not related to the Patents-in-Suit.  ARC objects to the Request as cumulative, burdensome and oppressive to the extent that it seeks documents that are more readily obtainable elsewhere, including documents that are available from Plaintiffs and documents that are in already in the Defendants' possession, custody, or control.  ARC objects to this Request to the extent it seeks documents that are neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.   ARC specifically objects to the Request to the extent it seeks production of information covered by any judicial order, protective order, stipulation of confidentiality, non-disclosure agreement, or confidentiality agreement with any non-parties such that

---

[5] The same requests for production were served on both ARC and ARG.  The objections from ARC and ARG were identical but for the name of the subpoenaed company.

disclosure by ARC is restricted.  ARC objects to the extent the Request seeks disclosure of ARC's trade secrets, proprietary knowledge, and/or confidential research, development, commercial, business, or other sensitive information.  ARC specifically objects to the Request to the extent it seeks documents and information protected from discovery by the attorney-client privilege, the work product doctrine, the consulting expert privilege, the joint prosecution privilege, the common interest privilege, and/or any other applicable privileges.  ARC objects to this Request to the extent it requires ARC to form a legal conclusion in order to respond.  ARC objects that the Request is vague and ambiguous, including but not limited to the use of the undefined words/phrases "contemplated agreement" and "royalty records."

Subject to the foregoing general and specific objections, ARC responds that to the extent the documents reasonably relate to the Patents-in-Suit and any such documents exist, they have been provided to or are in the possession, custody, or control of Plaintiffs and that, on information and belief, Plaintiffs are complying or have complied with their discovery obligations in the above-captioned matter.

## MOVANTS' ARGUMENT

Request No. 23 of the Movants' subpoenas to Acacia requests any actual or contemplated agreements (e.g., licenses and covenants not to sue) relating to the Patents-in-Suit.  Movants know of at least one agreement in which Acacia granted a license and covenant not to sue relating to the Patents-in-Suit.  Microsoft sued Acacia for breach of contract regarding an agreement in which "Microsoft paid a substantial fee to ARC to exercise Microsoft's option to obtain a license, covenant and release" that "forever immunizes Microsoft against any claim of infringement at any time of *any patent owned or controlled by ARC or its subsidiaries* as of September 30, 2010" and "forever immunizes Microsoft against any claim for infringement arising before October 1, 2013 as to any patents acquired by ARC or

its subsidiaries after September 30, 2010."[6]  The agreement required Acacia to provide "updates concerning later-acquired patents" and provided Microsoft with an "option to extend the protections under the Contract as to any patents acquired by ARC or its subsidiaries after September 30, 2010 through [REDACTED] for an additional fee."  *Id.* at ¶¶ 16-18.  In its amended complaint, Microsoft confirmed that "ARC provided updates concerning later-acquired patents as specified by the Contract" in 2011, 2012, and 2013.  *Id.* at ¶ 17.  In the *Microsoft* case, 10 patent sale contracts were at issue, including Acacia's agreement with Rambus Delaware LLC conferring rights in the Patents-in-Suit from Rambus to Acacia.[7]  Acacia acquired the Patents-in-Suit from Rambus Delaware LLC on January 30, 2013,[8] and was contractually obligated to offer Microsoft a license.  *Id.* at ¶ 18.  Therefore, the Microsoft agreement potentially includes a license to and covenant not to sue on the Patents-in-Suit.

Acacia has taken the position that agreements in which Acacia has granted global licenses to or covenants not to sue on <u>all</u> patents Acacia and its subsidiaries (e.g., DDG and IDT) currently own, including the Patents-in-Suit, because the agreements do not specifically identify the Patents-in-Suit.  Request No. 23 is not limited to only licenses which specifically identify the Patents-in-Suit.  Acacia has not provided any reason why the license agreements at issue here are not relevant or responsive to Request No. 23.  In addition, Acacia has not disputed that the agreements include or potentially include the Patents-in-Suit.  According to papers filed in the *Microsoft* case, the Microsoft agreement clearly contemplates inclusion of the Rambus Delaware LLC patent portfolio.  *See* Ex. D at FN2.  During oral arguments regarding a motion to stay in the DDG-IDT Litigation, Plaintiffs argued

---

[6] Ex. B, Dkt. No. 123 at ¶¶ 12-13, *Microsoft Corp. v. Acacia Research Corp.*, No. 13-8275 (SDNY) (emphasis added).
[7] Ex. D, Dkt. No. 113 at FN2, *Microsoft Corp. v. Acacia Research Corp.*, No. 13-8275 (SDNY).
[8] Ex. E, Rambus Delaware LLC Patent Assignment to Acacia Research Corp.

against the stay representing to the Court that Microsoft was a licensee of the Patents-in-Suit and was part of its licensing campaign.[9]  Therefore, the terms of the agreement(s) between Microsoft and Acacia are relevant in the DDG-IDT Litigation.

During the October 19, 2015, conference of counsel, Movants proposed to resolve the dispute by requesting that Acacia produce any actual or contemplated agreements relating to the Patents-in-Suit in unredacted form.[10]   *See* Klein declaration at ¶ 9.  Acacia refused, claiming that the Microsoft agreement and agreements similar to the Microsoft agreement were not relevant or likely to lead to relevant information.  *Id.* at 9.  The Microsoft agreement is at least relevant to the issue of damages because it discloses a monetary sum that Microsoft paid in exchange for a license and covenant not to sue on Acacia's patent portfolio, which includes the Patents-in-Suit.  *See* Ex. B at ¶¶ 12-13 ("Microsoft paid a substantial fee to ARC to exercise Microsoft's option to obtain a license, covenant and release.").  Acacia "admits that Microsoft paid $22.5 million to exercise its option under the agreement titled the 'Portfolio License and Covenant-Not- To-Sue Addendum'."  *See* Ex. G, Dkt. No. 38 at ¶ 11, *Microsoft Corp. v. Acacia Research Corp.*, No. 13-8275 (SDNY).  And as stated above, the Microsoft agreement expressly includes the Rambus Delaware LLC patent portfolio that is being asserted in the DDG-IDT Litigation against Movants.  Therefore, the Microsoft agreement and any similar agreements and related communications are unquestionably relevant to damages in the DDG-IDT Litigation.

In addition, the Microsoft agreement is also relevant because it potentially affects Lenovo's liabilities related to the Patents-in-Suit.  For example, Lenovo

---

[9] Ex. F, Plaintiffs' Presentation Regarding Hearing on Defendants' Motion for Stay at 18.

[10] Due to Acacia's failure to provide any documents in response to Request No., 23, Movants are not able to determine whether any additional actual or contemplated agreements relating to the Patents-in-Suit agreements exist.

uses Microsoft's products in most, if not all of the Lenovo products being accused of infringement in the DDG-IDT Litigation.  It is possible that Lenovo could be covered under Microsoft's license.  Without access to the full, unredacted content of the Microsoft agreement, Lenovo cannot determine the full extent of its liabilities with respect to the Patents-in-Suit.  Therefore, the Microsoft agreement and any similar agreements are undoubtedly relevant to the DDG-IDT Litigation, and Acacia should provide these agreements to allow Movants and Plaintiffs a full accounting of the facts.

Finally, after Acacia's objections to Request No. 23, Acacia responds that "to the extent the documents reasonably relate to the Patents-in-Suit and any such documents exist, they have been provided to or are in the possession, custody, or control of Plaintiffs and that, on information and belief, Plaintiffs are complying or have complied with their discovery obligations in the above-captioned matter." During the October 22, 2015, conference of counsel, Acacia confirmed that it did not provide the Microsoft agreement or any similar agreements to Plaintiffs.  *See* Klein declaration at ¶ 10.  Because Acacia is the only party with access to the Microsoft agreement and similar agreements, Movants' motion to compel is the Movants' only reasonable recourse to obtain these relevant documents.

Movants request that the Court grant their motion to compel, and order Acacia to produce unredacted copies of all responsive documents to Request No. 23 of the Acacia Subpoena.[11]

### ARC AND ARG'S ARGUMENT

To the extent that Request No. 23 pertains to the Asserted Patents, Movants have already received the responsive, non-privileged documents from Plaintiffs.

---

[11] To the extent that Acacia withholds any document on the basis of privilege, Movants request the Court order Acacia to produce a privilege log sufficient to provide Movants sufficient information to assess the claim.  *See* Fed. R. Civ. Pro. 45(e)(2)(ii).

Movants already received the actual contract under which Microsoft received a license to the Asserted Patents, once Movants finally clarified the agreement they sought.  (Declaration of Jessica L. Mullen ("Mullen Decl."), Ex. 1.)  And Plaintiffs have produced all other agreements licensing the Asserted Patents.  (*Id.* ¶ 13 & Ex. 7 at 1-2.)  Movants, however, seek other license agreements that were entered into before ARG acquired the Asserted Patents and that do not license the Asserted Patents.  In contrast, the other Global Agreements are not relevant to the Patent Litigation.  ARC has repeatedly explained that the requested agreements do not license any of the Asserted Patents or any of the other IDT or DDG patents.  The Global Agreements simply are not reasonably calculated to lead to the discovery of admissible evidence.

> **a)  Plaintiffs Have All Documents And Communications Relating To The Asserted Patents Including License Agreements.**

First, Movants admit that Plaintiffs "possess all relevant documents, including communications[.]"  (Jt. Stip. at 24, n. 19.)  Accordingly, Plaintiffs have produced documents responsive to Request No. 23, including but not limited to, acquisition, assignment, settlement, license and covenant agreements and distribution reports pertaining to the Asserted Patents.  (Mullen Decl., Ex. 7 at 1-2.)

For example, after the Asserted Patents were acquired, ARC and Microsoft entered into a Confidential License and Covenant Agreement ("Microsoft License") on December 30, 2014.  (*See id.*, Ex. 1.)  Pursuant to the Microsoft License, Microsoft received a license and covenant not to sue for three of the Asserted Patents.  (*Id.* at Schedule A & C.)  IDT produced the Microsoft License to Movants, once Movants clarified the agreement they sought.  (*Id.*)

ARC and ARG objected to Request No. 23 on the bases, *inter alia*, that the request is cumulative, burdensome, and oppressive because the documents

available from Plaintiffs.  During the meet and confer process, ARC and ARG stood on this objection and explained Plaintiffs have possession, custody, or control over all documents relating to the Asserted Patents.  Any additional search and production by ARC or ARG would be duplicative.  Movants have made *no* assertion regarding any deficiency in IDT or DDG's document productions that would justify requiring corporate parents ARC and ARG to undergo a second or third search for and production of document pertaining to the Asserted Patents.

Demanding ARC and ARG to re-produce identical documents is "unreasonably cumulative or duplicative," since these documents can [and have been] obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C); *see also* Fed. R. Civ. P. 45(d).  In fact, a magistrate judge in the Eastern District of Texas recently denied a motion to compel ARG to produce the same type of documents in the possession, custody, or control of another subsidiary.  (Mullen Decl., Ex. 8 (enclosing *Adaptix, Inc. v. Alcatel-Lucent USA, Inc., et al.*, Nos. 6:12-cv-22, 6:12-cv-122, 6:12-cv-00123 (E.D. Tex. Aug. 14, 2014) (order denying motion to compel third-party Acacia Research Group, LLC to produce documents that a party had already produced in the underlying litigation)).)

The *Adaptix* decision is consistent with other courts refusing to compel third parties to produce documents available to party opponents in other similar circumstances.  *See, e.g.*, *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 977-78 (Fed. Cir. 1993) (requiring party to seek discoverable material from party opponent prior to commencing ancillary proceeding against nonparty for purposes of obtaining relevant documents); *Nidec Corp. v. Victor Co.*, 249 F.R.D. 575, 576-77 (N.D. Cal. 2007) (granting motion to quash third-party subpoena where "the vast majority of the discovery sought . . . is discovery obtainable from a source more direct, convenient and less burdensome – namely, from Defendants"); *First*

*Aviation Servs. v. Gulf Ins. Co.*, 205 F.R.D. 63, 69 (D. Conn. 2001) (denying motion to compel production of documents from third-party because defendant possesses documents sought by plaintiff).

The decision in *In re Plastics Additives Antitrust Litig.* ("*Plastics*"), No. 03-2038, 2005 U.S. Dist. LEXIS 47979 (E.D. Pa. Aug. 9, 2005), is particularly instructive.  In *Plastics*, the court quashed a subpoena, finding that the subpoena was "unduly burdensome because . . . the desired documentation [was] obtainable from a more convenient source—the class plaintiffs." 2005 U.S. Dist. LEXIS 47979, at *12 (citing Fed. R. Civ. P. 26(b)(2)).  The court further held that "because plaintiffs . . . possess all documents requested pursuant to the subpoena, it is more convenient and less burdensome to seek such documentation from plaintiffs than from [the third-party]." *Id.* at *13.[12]

Indeed, Movants suggest no deficiency in the document production from Plaintiffs, or any suggestion that ARC or ARG somehow has unique or different documents concerning the Asserted Patents.  In *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406 (C.D. Cal. 2014), the court quashed defendant's subpoena to a non-party after, among other things, determining that the defendant failed to show that the same information was not obtainable from party witnesses.  300 F.R.D. 406, 412, n.6.  Similarly, in response to a motion to compel production of documents by a third-party, the court in *Software Rights Archive, LLC v. Google, Inc.* determined that "there is reason to believe that Respondents each have unique documents." No. 09-CV-017-JJF, 2009 U.S. Dist. LEXIS 43835, at *9 (D. Del. May 21, 2009).  Movants have not contended, let alone demonstrated, that  Plaintiffs and ARC or ARG have unique documents pertaining to the Asserted Patents.  Indeed, the court in *Software Rights* supports ARC and ARG's position that "where, for example . . . a party seeks a

---

[12] *Plastics* was later vacated on other grounds.

specific document from both a non-party and an opposing party that is nonetheless *surely* in the hands of the opposing party, there is far less need to burden the non-party, *if at all*." *Id.* at *8-9 (emphasis added).

        **b)**    **The Global Agreements Are Not Relevant Because The Agreements Do Not Provide Any License To Any Asserted Or Related Patent.**

Movants are only entitled to documents and information that are reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). The Global Agreements are simply ***not*** reasonably calculated to lead to the discovery of admissible evidence. That is because none of the Global Agreements provide any substantive right to the Asserted Patents or any other IDT or DDG patent—no licenses, covenants not to sue, releases, or any other substantive right. Movants' do not cite any authority for their bald contention that ARC or ARG's agreements licensing *other* patents (not even patents received from Rambus) are relevant to the parties' claims or defenses.

During meet and confer, ARC and ARG repeatedly explained that the Global Agreements do not license, *i.e.*, permit the use of a patent for defined consideration, any of the Asserted Patents or any of the other IDT or DDG patents. (Mullen Decl., ¶ 16 & Exs. 7 at 2-3; 10 at 6-7.) Any rights to these patents are essentially procedural in nature; the agreements do not convey a right to practice any of the Asserted Patents.

ARC entered into each of the Global Agreements between December 2009 and March 2012. (*See* Mullen Decl. ¶ 16 & Ex. 9 at 6-7.) Each Global Agreement provides each counterparty with rights to patents owned or controlled by ARC or its affiliates, as of the date of those agreements. Those rights include licenses, covenants not to sue, and releases depending upon the particular patent. For example, ARC entered into a Global Agreement with Microsoft dated September 30, 2010 that became the subject matter of an action in the Southern District of

New York between ARC and Microsoft.  (Mullen Decl., Ex. 9 at 6; Declaration of Chris Klein ("Klein Decl."), Ex. B ¶ 10.)[13]

However, ARC and ARG did not own or control any Asserted Patent or any other IDT or DDG patent as of that dates of those Global Agreements because ARG did not acquire any patent from Rambus until January 30, 2013.  (*Id*., Ex. 5.) These agreements and their economic terms were negotiated without any contemplation or consideration of the Asserted Patents or any IDT or DDG patent. (*Id*., Ex. 9 at 6-7.)

During the term of each Global Agreement, ARC and its affiliates, and the counterparty agreed not to sue any of the counterparties or commence any adverse proceedings in any other forum.  (*See* Klein Decl., Ex. B at ¶¶ 12-13.)  In addition, ARC covenanted on behalf of itself and its affiliates that it would not file suit, during the term of the agreement, against the counterparty for any new patents acquired by ARC or its affiliates ("Later-Acquired Patents").  (*Id*. at ¶¶ 16-17.) The Global Agreements only required ARC give notice of Later Acquired Patents and an option to extend the term of the agreement.

The patents assigned to ARG under the Rambus Agreement are "Later-Acquired Patents."  However, ARC did not license any DDG or IDT patent or any other Later-Acquired Patent under any Global Agreement —that is clear because Microsoft entered into an actual license agreement that has been produced.  (*Id*., Ex. 1.)

For the first time in the Joint Stipulation, Movants advance a wholly new theory based on the contention that "Lenovo uses Microsoft's products in most, if not all of the Lenovo products being accused of infringement in the [Patent Litigation].  It is possible that Lenovo could be covered under Microsoft's license."

---

[13] Dkt. No.123, *Microsoft Corp. v. Acacia Research Corp.*, No. 13-8275 (S.D.N.Y.).

(Jt. Stip. at 11.)  Movants never raised this theory in their October 9 letter or any preceding meet and confers.  (*See* Klein Decl. *passim*; Declaration of Robert Pluta ("Pluta Decl.") *passim*.)  Even after ARC and ARG expressed their "understanding that there are no Microsoft-supplied products that are being accused in this litigation."  (Mullen Decl., Ex. 9 at 6; *see also* Ex. 7 at 3 ("It is our understanding that there are no Counter Party-supplied products that are being accused in this litigation.").)  The Court may reject the request on Movants' failure to meet and confer.  *See Davis v. L.A. West Travelodge*, 2009 U.S. Dist. LEXIS 124424, at *2 (C.D. Cal. May 20, 2009) (denying plaintiff's joint stipulation to compel deposition testimony and noting that "it appears that no good faith pre-filing conference in this case" because "each party should have [left] the [pre-filing] conference knowing the facts and law of what the other party is going to argue"); *cf. Whitlock v. City of Caliente*, 2014 U.S. Dist. LEXIS 139550, at *3-4 (D. Nev. Oct. 1, 2014).  However, this new theory is irrelevant because Movants have received the actual Microsoft License and can consider their supposed rights—if any—under that agreement.

Furthermore, the Global Agreements contain a number of highly negotiated and stringent confidentiality and notice covenants, and the agreements themselves contain highly sensitive, non-public business information.   ARC and ARG objected to producing the Global Agreements on the grounds, *inter alia*, that:  "to the extent [Request No. 23] seeks production of information covered . . . stipulation of confidentiality, non-disclosure agreement, or confidentiality agreement with any non-parties such that disclosure by [Acacia] is restricted."  Indeed, the Global Agreements contemplate that, to the extent ARC is required by law or court order to disclose the terms of the agreements to a third party, ARC is contractually obligated to provide reasonable prior written notice of such disclosure in order to enable the counterparty to the agreement to seek protection

from such disclosure.  Thus far, upon receiving ARC's written notice of Movants' Joint Stipulation, at least one counterparty has objected to the production of the Global Agreement and any related documents.  (Mullen Decl. ¶ 17.)  The confidentiality interests of these third parties should not be disregarded lightly, particularly for these non-responsive and irrelevant documents.[14]  The little value—if any—of the Global Agreements to Movants' case is substantially outweighed by the detriment that would result from disclosing ARC's and other third parties' highly confidential and sensitive business information.[15]

**c)     Movants Are Attempting To Circumvent The E-Discovery Order Entered In This Action By Seeking E-Discovery From Third Parties ARC And ARG, Before Seeking E-Discovery From Plaintiffs.**

To the extent that Request No. 23 seeks e-mail communications, Movants should first seek production of such relevant communications from Plaintiffs. Pursuant to the "Order Regarding Discovery, Including Discovery Of Electronically Stored Information (the "Discovery Order") entered on or about June 24, 2014 by Judge Richard G. Andrews in the Patent Litigation, "the Parties ***need not search or produce electronic mail*** unless a requesting party can show a justifiable need for electronic mail, and it would not be unreasonably or unduly burdensome for the producing party to provide the requested documents."  (Mullen Decl., Ex. 2 at 6-7.)  To obtain e-mail parties must propound specific and limited e-

---

[14] *See, e.g.*, *Abbott Labs. v. Teva Pharm. USA, Inc.*, 2006 U.S. Dist. LEXIS 94165, at *31 (D. Del. Mar. 1, 2006) (protecting confidentiality interests of third-parties in discovery order by providing that producing party may temporarily withhold production of otherwise discoverable information, "if the party is under an obligation to a third-party not to disclose such information," so the party may provide notice to the third-party whose confidentiality interests are implicated); *see also Scott v. Las Vegas Metro. Police Dep't*, 2011 U.S. Dist. LEXIS 148167, at *18-19 (D. Nev. Dec. 23, 2011) (acknowledging in entry of protective order that the order did not "relieve any Party or non-party from any pre-existing confidentiality obligations currently owed by any Party or non-party to any other Party or non-party").

[15] Although the Global Agreements are not relevant, ARC and ARG are willing to provide the Court with copies of the requested agreements for *in camera* review.

mail production requests. (*Id.*)[16]  Although the Discovery Order provides that "E-mail production requests *shall* be phased to occur timely after the parties have exchanged initial disclosures," during meet and confer, Movants admitted that they have not yet engaged Plaintiffs in the e-mail discovery process. (Mullen Decl. ¶ 15.)  Yet, as explained above, Plaintiffs have all relevant documents including e-mail communications.    Movants' attempt to seek production of e-mail communications from ARC and ARG, ***before*** Movants themselves have begun the e-discovery process, is improper under the Federal Rules and the Discovery Order. *See* Fed. R. Civ. P. 26(b); (Mullen Decl., Ex. 2 at 6-7.)

During the meet and confer call on October 22, Movants asserted that the Discovery Order's protection does not extend to third parties and, therefore, ARC and ARG are obligated to produce Plaintiffs' e-mail communications to Movants. (Mullen Decl. ¶ 15.)  This argument is disingenuous.   Movants' demands for electronically-stored information are an attempt to circumvent meet and confer negotiations with Plaintiffs and the Discovery Order in place in the Patent Litigation.  Plainly, there is no reason why ARC and ARG should be required to undertake an extensive review of e-mails when there is a Discovery Order in place protecting and minimizing that very burden on the parties.  Since Plaintiffs, parties

---

[16] The discovery order provides:

> To the extent that a requesting party can demonstrate a justifiable need, and it would not be unreasonable or unduly burdensome for the producing party to provide electronic mail, the following procedures will apply:  E-mail production requests shall be phased to occur timely after the parties have exchanged initial disclosures . . . E-mail production requests shall identify the custodian, search terms, and time frame. . . Defendants shall collectively limit their e-mail production requests to a total of five of Plaintiffs' custodians, and five search terms per custodian.

(*Id.* at 6-7.)

to the Patent Litigation, have all e-mails relating to the Asserted Patents, Movants should seek production of such communications from Plaintiffs consistent with the Discovery Order.

### 2.     REQUEST FOR PRODUCTION NO. 36:

All documents Relating to licenses or offers to license for any of the Patents-in-Suit or any Related Patent.

### OBJECTION TO REQUEST NO. 36:

ARC refers to and incorporates by reference all of the General Objections stated above as though set forth in full herein.  ARC objects to the Request as cumulative, burdensome and oppressive to the extent that it seeks documents that are more readily obtainable elsewhere, including documents that are publicly available, available from Plaintiffs and documents that are in already in the Defendants' possession, custody, or control.  ARC objects to the extent that the Request seeks ARC's unretained expert opinion.  FED. R. CIV. P. 45(d)(3)(B)(i)-(ii); *see, e.g., Martel, Inc. v. Walking Mt. Prods.*, 353 F.3d 792, 814 (9th Cir. 2003) (quoting FED. R. CIV. P. 45 1991 amend. note).  ARC specifically objects to the Request to the extent it seeks production of information covered by any judicial order, protective order, stipulation of confidentiality, nondisclosure agreement, or confidentiality agreement with any non-parties such that disclosure by ARC is restricted.  ARC objects to the Request to the extent it seeks disclosure of ARC's trade secrets, proprietary knowledge, and/or confidential research, development, commercial, business or other sensitive information.  ARC specifically objects to the Request to the extent it seeks documents and information protected from discovery by the attorney-client privilege, the work product doctrine, the consulting expert privilege, the joint prosecution privilege, the common interest privilege, and/or any other applicable privileges.

Subject to the foregoing general and specific objections, ARC responds that to the extent the documents reasonably relate to the Patents-in-Suit and any such documents exist, they have been provided to or are in the possession, custody, or control of Plaintiffs and that, on information and belief, Plaintiffs are complying or have complied with their discovery obligations in the above-captioned matter.

## MOVANTS' ARGUMENT

Request No. 36 of the Movants' subpoenas to Acacia is similar to request No. 23 but requests "licenses for or offers to license any of the Patents-in-Suit or any Related Patent." For the reasons stated above, Movants request that the Court grant their motion to compel, and order Acacia to produce unredacted copies of all responsive documents to Request No. 36 of the Acacia Subpoena. [17]

## ARC AND ARG'S ARGUMENT

First, as explained above, to the extent that Request No. 36 pertains to the Asserted Patents, Plaintiffs possess and have produced the responsive, non-privileged documents, including all licenses to the Asserted Patents. Movants have not demonstrated a basis to compel duplicative documents from ARC or ARG.

Second, the Global Agreements are not responsive to Request No. 36. That is because none of the Global Agreements "licenses" or "offers to license" any of the Asserted Patents or any other IDT or DDG patent. The request does not seek all documents relating to agreements that bear any relationship to the Asserted Patents or any IDT or DDG patent, including nominal notice rights. ARC and ARG have repeatedly explained to Movants that the requested agreements do not license any of the Asserted Patents or any other IDT or DDG patents. The requested agreements pre-date the Acquisition of the Asserted Patents.

---

[17] To the extent that Acacia withholds any document on the basis of privilege, Movants request the Court order Acacia to produce a privilege log sufficient to provide Movants sufficient information to assess the claim. *See* Fed. R. Civ. Pro. 45(e)(2)(ii).

Moreover, Movants are only entitled to documents and information that are reasonably calculated to lead to the discovery of admissible evidence.  Fed. R. Civ. P. 26(b)(1).  Movants contend that the Global Agreements are "unquestionably relevant to damages" in the Patent Litigation.  However, Movants do not explain how the Global Agreements - which do not license any of the Asserted Patents or any other IDT or DDG patents and predate ARG's acquisition of the Asserted Patents – could be relevant to any damages calculation.  The Global Agreements and their economic terms were negotiated without any contemplation or consideration of the Asserted Patents or the IDT or DDG patents.

Third, Movants are attempting to impermissibly circumvent the Discovery Order by seeking e-mail communications from third parties ARC and ARG, before engaging in e-mail discovery with Plaintiffs.  There is no reason that ARC and ARG should be required to undertake an extensive and costly review of e-mails when there is a Discovery Order in place protecting and minimizing that very burden on the parties.  Plaintiffs have all e-mails relating to the Asserted Patents. Movants should seek production of such communications from Plaintiffs consistent with the Discovery Order.

Accordingly, the Court should deny Movants request for ARC and ARG's license agreements for any of the Asserted Patents or Related Patents.

### 3.     REQUEST FOR PRODUCTION NO. 31:

All Documents produced to the Federal Trade Commission during the FTC Investigation.

### OBJECTION TO REQUEST NO. 31:

ARC refers to and incorporates by reference all of the General Objections stated above as though set forth in full herein. ARC specifically objects to the Request as overly broad, unduly burdensome, and irrelevant to the extent it seeks documents or information not related to the Patents-in-Suit. ARC specifically

objects to the Request to the extent it seeks production of information covered by any judicial order, protective order, stipulation of confidentiality, nondisclosure agreement, or confidentiality agreement with any non-parties such that disclosure by ARC is restricted. ARC specifically objects to this request on the grounds that any information produced to the FTC pursuant to the "FTC Investigation" was designated with "FOIA Confidential Treatment" and exempt from the general mandatory disclosure rule under the Freedom of Information Act ("FOIA"), and/or is protected from disclosure under Section 6(f) of the FTC Act, 15 USC§ 46(f). ARC specifically objects to the Request to the extent it seeks documents and information protected from discovery by the attorney-client privilege, the work product doctrine, the consulting expert privilege, the joint prosecution privilege, the common interest privilege, and/or any other applicable privileges. ARC objects to the Request to the extent it seeks disclosure of ARC's trade secrets, proprietary knowledge, and/or confidential research, development, commercial, business or other sensitive information.

<b>MOVANTS' ARGUMENT</b>

This request is related to documents that Acacia entities had previously produced to FTC during the FTC Investigation (FTC Project No. P131203). As background, the FTC Investigation sought information related to, among other things, how PAEs, such as Acacia, acquire patents and compensate prior patent owners, as well as how PAEs engage in assertion activity (*i.e.*, how do they behave with respect to demands, litigation, and licensing behavior). [18]

Movants seek this information related to Acacia's general licensing practices because such information is directly relevant to the DDG-IDT Litigation,

---

[18] *See* Ex. J, FTC Agency Information Collection Activities and Request for Comment with Respect to Project No. P131203.

particularly as to whether Acacia (itself or through the Plaintiffs[19]) is deviating from its normal licensing procedures with respect to the Patents-in-Suit.  As noted above, Acacia has already licensed the Patents-in-Suit at least to Microsoft (but has refused to produce an unredacted form of that or other agreements) and has sought to license the Movants during the DDG-IDT Litigation.   Moreover, the FTC documents are also relevant insofar as a prior owner of the patents in the underlying litigation—Rambus—is intimately involved in the DDG-IDT Litigation.  As such, Movants are entitled to receive these FTC documents, which have already been searched for, collected, and reviewed for privilege.   Such documents would demonstrate whether Acacia followed its normal licensing procedures with respect to the Microsoft agreement, any other contemplated or executed agreement as to the Patents-in-Suit (which Movants seek per above), and with regard to the Movants.   For example, if Acacia's general policy is to compensate prior patent owners a percentage of the licensing fees in exchange for testimony on behalf of Acacia in asserting patents, Movants are entitled to know if a) that procedure is being followed with regard to the Patents-in-Suit (e.g., as to the Microsoft agreement);  and b) if not, why.  The FTC documents are additionally relevant as to Defendants' damages report, which will generally analyze the Patents-in-Suit in order to determine, at a minimum, a reasonable royalty.

Acacia has objected to this request by citing the designation of such material as "FOIA – Confidential Treatment" and citing 15 U.S.C. § 46(f), but these designations and the cited statute are irrelevant as they govern the disclosure of documents by *federal agencies* like the FTC, such as in response to a FOIA request or through publication of information in reports.   Movants request is one for documents from Acacia itself in connection with a federal subpoena in a litigation

---

[19]  Which are Acacia subsidiaries who possess all relevant documents, including communications between Acacia and Plaintiffs.)

for which the Court has entered a Protective Order that provides adequate safeguards for the confidentiality of material to be produced by Acacia.  Further, Acacia has stated that its compliance with "a government investigation does not make the documents produced pursuant to the FTC Investigation discoverable in this action."  Movants generally agree with this statement but, as stated above, it is the direct relevancy of the FTC Investigation to the DDG-IDT Litigation that makes the FTC documents discoverable, and not simply the prior production as set forth by Acacia.  Acacia shifts the burden to Movants, conditioning its production of these documents to Movants providing case law.  But, as is apparent, it is Acacia's positions that are without support in the law.  Whether a relevant document—as are the FTC documents—is discoverable in federal district court litigation is separate and apart from producing a document in response to a government investigation.  Movants issued the subpoena and the documents are relevant—nothing more is needed to be shown.

LG sent a letter to Acacia on August 31, 2015, in which LG raised the arguments above in response to Acacia's refusal to produce documents related to the FTC investigation.  *See* Ex. K, August 31, 2015 Letter from LG to Acacia.  LG sent a letter on September 24, 2015, memorializing conferences of counsel that occurred on September 17, 2015 and September 18, 2015, in which LG repeated its Movants' request for documents related to the FTC investigation.  *See* Ex. L, September 24, 2015 Letter from LG to Acacia.  Movants and Acacia held a conference of counsel on October 22, 2015, during which Movants explained to defendants that the documents were, in fact, relevant, and Acacia categorically refused to produce them.  *See* Pluta declaration at ¶ 6.  Parties are at an impasse as to the issues above.

Movants request that the Court grant their motion to compel, and order Acacia to produce all documents responsive to Request No. 31 of the Acacia Subpoena.

**ARC AND ARG'S ARGUMENT**

In 2014, ARC received an order from the FTC directing ARC to provide documents and other information.  ARC timely complied producing more than one million documents under the confidential treatment auspices of Section 6(f) of the FTC Act, 15 USC § 46(f), and thus protecting those materials from the general mandatory disclosure rule under the Freedom of Information Act ("FOIA").  Movants' request for wholesale production of those materials, which courts refer to as "cloned discovery" or "piggy-backed discovery," wholly disregards the relevancy requirements of the Federal Rules.  These terms derive from the fact that litigants are attempting to clone the discovery taken by others in unrelated investigations or cases and to piggyback on that unrelated discovery.  This Court should follow the decisions of other courts rejecting those unnecessary discovery tactics.  To the extent ARC provided any documents relating to the Asserted Patents, those documents are available from Plaintiffs.

**a)      Request No. 31 Seeks Cloned Regulatory Discovery That Is Wholly Irrelevant To The Patent Litigation.**

Movants have failed to make any showing of relevance for the production of documents concerning patents, other than the Asserted Patents.  The mere fact that ARC produced documents in an unrelated government investigation does not automatically make those documents discoverable in the Patent Litigation or any other litigation.  *Chen v. Ampco Sys. Parking*, No. 08-CV-0422-BEN (JMA), 2009 U.S. Dist. LEXIS 71633, at *8 (S.D. Cal. Aug. 14, 2009) (denying motion to compel production of all discovery taken in state court cases without a sufficient showing of relevance); *Moore v. Morgan Stanley & Co., Inc.*, No. 07 C 5606, 2008

U.S. Dist. LEXIS 88300, at ** 7, 14 (N.D. Ill. May 30, 2008) (holding that "[a] party's requested discovery must be tied to the particular claims at issue in the case" and that "just because the information was produced in another lawsuit . . . does not mean that it should be produced in this lawsuit").[20]

Courts have consistently held that "'cloned discovery', requesting all documents produced or received during other litigation or investigations, is irrelevant and immaterial unless the fact that particular documents were produced or received by a party is relevant to the subject matter of the subject case." *King County v. Merrill Lynch & Co*., No. C10-1156-RSM, 2011 U.S. Dist. LEXIS 86775, at *7-8 (W.D. Wash. Aug. 5, 2011) (denying motion to compel discovery requests for copies of discovery files made in the course of government investigations of Merrill Lynch) (quoting *Midwest Gas Servs., Inc. v. Indiana Gas Co*., No. IP 99-690-C-Y/G, 2000 U.S. Dist. LEXIS 8098, at *1-2 (S.D. Ind. Mar. 7, 2000) (in a private antitrust action, refusing to compel production of documents provided to the DOJ in response to a civil investigation demand absent a showing of relevance)).  As the court explained in *Midwest Gas*, a party seeking discovery must "do their own work and request the information they seek directly" and "must make proper requests describing the information in which they are interested." *Midwest Gas*, 2000 U.S. Dist. LEXIS 8098, at *1-2.  Without tailored requests, a court cannot ascertain whether the documents requested actually relate to Plaintiffs' claims and defenses. *Wollam v. Wright Med. Group, Inc*., 2011 U.S.

---

[20] *See also Payne v. Howard*, 75 F.R.D. 465, 469 (D. D.C. 1977) (stating that "[w]hether pleadings in one suit are 'reasonably calculated' to lead to admissible evidence in another suit is far from clear" and that such a determination requires consideration of "the nature of the claims, the time when the critical events in each case took place, and the precise involvement of the parties, among other considerations"); *Oklahoma v. Tyson Foods, Inc*., No. 05-CV-329-TCK-SA, 2006 U.S. Dist. LEXIS 72769, at *5-6 (N.D. Okla. 2006) (denying motion to compel production of documents made available "in a similar poultry waste pollution lawsuit previously brought in this Court" absent a showing of more than "surface similarities" between the cases).

Dist. LEXIS 56649, at *5-6 (D. Colo. May 18, 2011) (denying motion to compel; finding "sweeping cloned discovery sought by the plaintiffs has not been shown to be sufficiently relevant to the claims and defenses in this case and simply reaches too far.").

Here, Movants have not asserted any counterclaims, at all, and Movants have not explained how any of their defenses entitle them to discover such information. Movants argue in conclusory terms that: (1) the FTC documents may show whether ARC and ARG are deviating from "normal licensing procedures"; (2) Rambus, the former owner of the Asserted Patents, is intimately involved in the Patent Litigation; and (3) they may assist with Movants' damages report. As a threshold matter, documents relating to third parties ARC and ARG's "general licensing policies" are wholly irrelevant to whether Movants' accused products infringe any of the Asserted Patents. Notwithstanding that these documents are outside the scope of permissible discovery, *see* Fed. R. Civ. P. 26(b)(1), ARC and ARG confirmed multiple times in writing that ARC and ARG do not have any written policies or procedures for licensing patents. (Mullen Decl., Exs. 7 at 3; 10 at 1-2.) Therefore, as explained to Movants, ARC and ARG did not (and could not have) produced any "general licensing policies" to the FTC. (*Id.*, Ex. 10 at 2.)

For the same reason the Global Agreements are not relevant, documents produced to the FTC regarding unrelated patents and technology have no bearing on Movants' damages calculations.

To the extent that Movants are seeking documents concerning Rambus that relate to the Asserted Patents or any other IDT or DDG patent, Movants admit that "Plaintiffs possess all relevant documents." Movants can seek those documents from Plaintiffs.

       **b)**    **Request No. 31 Is Patently Overbroad And Unduly Burdensome Because The Cloned Discovery Encompasses More Than One Million Documents Regarding Unrelated**

**Patents And Technology And Requires Pre-Production Review.**

Request No. 31 is overbroad because it seeks all documents produced to the FTC without any temporal or substantive limitation.   Courts routinely deny requests for cloned discovery as overly broad and not reasonably calculated to lead to the discovery of admissible evidence, even where some relevant issues overlap. *See*, *e.g*., *Wollam*, 2011 U.S. Dist. LEXIS 56649, at **2, 5-6; *Pegoraro v. Marrero,* 281 F.R.D. 122, 132-33 (S.D.N.Y. 2012) (denying motion to compel; finding request "overly broad in its scope because it seeks all documents in connection with any whistle-blowing litigation or proceeding involving the defendants, regardless of the specific nature of the proceeding and factual circumstances underlying those proceedings); CV 07-1675 (ERK) (VVP), *Am. Eagle Outfitters, Inc. v. Payless Shoesource, Inc*., 2009 U.S. Dist. LEXIS 3781, at *3-4 (E.D.N.Y. Jan. 21, 2009) (denying motion to compel "considerably overbroad" categories of documents relating to defendant's prior intellectual property litigations without limitation to the asserted trademarks).

Movants' request is so overbroad and unduly burdensome that it includes literally more than a million documents regarding unrelated patents and technology, none of which have any bearing on the Patent Litigation.   As an example, the FTC Order encompasses documents relating to every patent held by ARC and each of its affiliate from January 2009 through September 2014.   ARC and its affiliates currently own or control thousands of patent in addition to the IDT and DDG patents, none of which are related to the Asserted Patents.

Moreover, where the cloned discovery sought is voluminous and requires additional and substantial attorney pre-production review time, courts have held that the associated burden of wholesale discovery outweighs any marginal relevance.  *See*, *e.g*., *Yu Cheng Chen v. Cincinnati Inc*., CV-06-3057 (FB)(VVP), 2007 U.S. Dist. LEXIS 102262, at *4 (E.D.N.Y. Apr. 20, 2007) (denying motion to

compel production of transcripts of depositions in prior lawsuits requiring the retrieval, copying and production entailing 150 hours of estimated work).

Pursuant to the FTC's order, ARC produced highly confidential commercial and financial information to the FTC under the protections of  15 U.S.C. § 46(f). Compelling ARC to produce all documents produced to the FTC in the Patent Litigation would entail unduly burdensome pre-production review time.  ARC and its attorneys would be required to review the FTC production to identify and redact confidential commercial and financial information unintended for production in the civil litigation context.  Movants' grossly overbroad demands would place an undue burden on ARC and ARG that far outweighs whatever limited relevance these materials might have.  This is particularly true because Movants have already received all non-privileged documents that relate to the Asserted Patents through a less burdensome source—Plaintiffs' document production.  *See Yu Cheng Chen,* 2007 U.S. Dist. LEXIS 102262, at *4 (holding burden of reviewing and producing cloned discovery "more than outweighs whatever marginal assistance the transcripts would provide to the plaintiffs beyond what has already been disclosed concerning the accidents.") (citing Fed. R. Civ. P. 26(b)(2)(C)).

### 4.    REQUEST FOR PRODUCTION NO. 25:

All valuations of any or all of the Patents-in-Suit, individually, collectively, or any grouping thereof.

### OBJECTION TO REQUEST NO. 25:

ARC refers to and incorporates by reference all of the General Objections stated above as though set forth in full herein. ARC objects to the Request as cumulative, burdensome and oppressive to the extent that it seeks documents that are more readily obtainable elsewhere, including documents that are available from Plaintiffs or third parties and documents that are in already in the Defendants' possession, custody, or control. ARC specifically objects to the extent the Request

seeks ARC's unretained expert opinion. Fed. R. Civ. P. 45(d)(3)(B)(i)-(ii); *see, e.g., Mattel, Inc. v. Walking Mt. Prods.,* 353 F.3d 792, 814 (9th Cir. 2003) (quoting Fed. R. Civ. P. 45 1991 amend. note). ARC specifically objects to the Request to the extent it seeks production of information covered by any judicial order, protective order, stipulation of confidentiality, non-disclosure agreement, or confidentiality agreement with any non-parties such that disclosure by ARC is restricted. ARC specifically objects to the Request to the extent it seeks documents and information that is protected from discovery by the attorney-client privilege, the work product doctrine, the consulting expert privilege, settlement privilege, the joint prosecution privilege, the common interest privilege, and/or any other applicable privileges. ARC objects to the Subpoena to the extent it seeks disclosure of ARC's trade secrets, proprietary knowledge, and/or confidential research, development, commercial, business or other sensitive information. ARC objects to this Request on the grounds that it seeks information or documents beyond ARC's possession, custody, or control.

## MOVANTS' ARGUMENT

This straightforward request is related to valuations of any or all of the Patents-in-Suit.  These documents (and those related to infringement analyses, prior art, etc. in Request 26) are unquestionably relevant—a fact not disputed by Acacia.  Acacia first acquired the Patents-in-Suit from Rambus, and Acacia then created the Plaintiff entities for the sole purpose of licensing and/or asserting the Patents-in-Suit.

Acacia has objected to producing these documents because 1) Plaintiffs, not Acacia, are in "possession" of the documents; and 2) an improper invocation of the attorney-client, work product, and/or common interest privileges.  Both reasons do not pass muster.

As to the first reason, Acacia asserts that it provided a network location where Plaintiffs (likely either employees of Acacia working with Plaintiffs' counsel or Plaintiffs' counsel itself) were able to download all documents related to the Patents-in-Suit.  Putting aside whether this is indeed true, Acacia cannot abrogate its ability to produce relevant documents by passing the buck to a shell entity, who shares office space with Acacia, and whose sole purpose is to enforce the Patents-in-Suit.  Acacia has equal access to the documents as Plaintiffs, and therefore is equally "in possession" of the documents.

As to the second reason, the privilege assertions, Acacia has not carried its burden to demonstrate that a common interest between it and Plaintiffs and/or Rambus exists to shield the production of these documents.[21]   *See Invista N. Am. S.A.R.L. et al. v. M&G USA Corp., et al.*, No. 1:11-cv-1007-SLR-CJB (D. Del. Oct. 17, 2013) (D.I. 503) (the party asserting the privilege carries the burden to show that "(1) the communications at issue are made by separate parties in the course of a matter of common legal interest; (2) the communications are designed to further that common legal interest; and (3) the privilege has not been waived."). For a communication to be protected under the common interest privilege, the interests must be "'**identical**, not similar, and be **legal**, **not solely commercial**.'" *Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 376 (D. Del. 2010) (emphasis added); *see also CIF Licensing, LLC v. Agere Sys. LLC*, No. 07-170-LPS, 2012 U.S. Dist. LEXIS 173583, at *22 (D. Del. Dec. 3, 2012) (noting legal interests must be at least "substantially similar").  In correspondence with Movants, Acacia claims that the "common interest" is "valid, enforceable patents,"

---

[21] Of note, to date, despite numerous requests, neither Acacia nor Plaintiffs have provided a privilege log leaving Movants in the dark about both the volume and general nature of the alleged privileged documents.  Thus, to the extent Acacia alternatively asserts another privilege, such as work product, shields these documents from discovery, such a claim is groundless.  Movants do not have any way of testing the privilege (whichever it may be) without, at a minimum, seeing the documents on a privilege log.

but such a claim would swallow the rule.  Of course, patents are presumed valid and one cannot assert an unenforceable patent.

Acacia further claims that its agreement with Rambus in acquiring the Patents-in-Suit supports its common interest claim, but this does not hold water. Any rights and/or obligations in the agreement are purely contractual and not "legal" interests as is required.  *See Leader Techs.*, 719 F. Supp. 2d at 376.

Indeed, Movants provided Acacia with an on-point case refuting its common-interest claim and underscoring that any interest is commercial or contractual, but not legal.  *See* Ex. C, October 9, 2015 Letter from Lenovo to Acacia.  In *Microsoft Corp. v. Acacia Research Corp.*, No. 13-cv-8275, 2014 U.S. Dist. LEXIS 161457 (S.D.N.Y. Nov. 17, 2014), the court granted Microsoft's motion to compel the production of documents relating to third parties who sold patents to Acacia.  In an attempt to avoid production of these documents, Acacia asserted the common-interest privilege (just as it does now), citing to a common interest "in licensing or litigation by virtue of being entitled to a portion of future revenues from licensing of those patents."  *Id.* at 4.  Acacia's claim in *Microsoft* is similar to the claim here—a goal of licensing "valid, enforceable patents."  The court soundly rejected Acacia's claim, noting that:

> The sellers do not retain any legal interest in the patents-let alone a legal interest 'common' with Acacia.  The royalty entitlements are merely a form of consideration employed by Acacia when purchasing patents.  Such entitlements are commercial in nature and do not constitute a legal interest.  Accordingly, Acacia has failed to demonstrate a common legal interest with the patent sellers.

*Id*.

The court further noted that "no common legal strategy existed between the Acacia and the patent sellers" and noted that the "terms of the contracts, therefore,

preclude any common legal strategy and provide Acacia with total discretion in prosecuting infringements." *Id.*

While it has tried (and may further try) to distinguish the *Microsoft* case, Acacia cannot escape the unambiguous holding.  The result here is no different as Rambus retained, at most, a royalty entitlement from the contract and no longer has any legal interest in the Patents-in-Suit.  Further, to the extent Acacia claims it and Plaintiffs are not similarly situated, such a claim is not credible.  Plaintiffs are a subsidiary of Acacia and, to date, have not identified any employee of Plaintiffs in charge of licensing the Patents-in-Suit.  Likely, because none exist and all licensing decisions must be funneled through Acacia.  Such shell games and gamesmanship of the discovery process cannot be tolerated.

Lenovo sent a letter to Acacia on October 9, 2015, detailing Acacia's obligation to produce the requested documents as well as providing relevant case law regarding the lack of common interest privilege, particularly the *Microsoft* case.  *See* Ex. C, October 9, 2015 Letter from Lenovo to Acacia.  Acacia's response letter on October 22, 2015, denies the *Microsoft* order, contending that the *Microsoft* order is "not persuasive because it is flawed for multiple reasons." *See* Ex. H, Acacia Letter to Lenovo.  Notwithstanding the impropriety of Acacia's refusal to acknowledge the *Microsoft* order, the Second Circuit Court of Appeals had also denied Acacia's motion to vacate the district court order in *Microsoft*.  *See* Ex. I, Dkt. No. 128, *Microsoft Corp. v. Acacia Research Corp.*, No. 13-8275 (SDNY).  Clearly, the Court intended to bind Acacia to the district court finding that there was no common interest privilege in documents related to the Patents-in-Suit.  On October 22, 2015, Movants invited Acacia to produce the requested documents, and Acacia refused to produce them.  *See* Pluta declaration at ¶ 6. Parties are at an impasse as to the issues above.

Movants request that the Court grant their motion to compel, and order Acacia to produce all documents responsive to Request No. 25 of the Acacia Subpoena.

### ARC AND ARG'S ARGUMENT

The request seeks documents that Movants admit are in Plaintiffs' possession, custody, and control, and thus there is no basis to compel ARC and ARG to produce the same identical documents.  Movants' privilege challenge to the common interest privilege is contrary to the weight of authority recognizing that a patentee and a licensee can share both legal interests in valid and enforceable patents co-existing with their commercial interests.

### a) The Requests Are Duplicative And Cumulative Because Plaintiffs Possess All Of The Requested Documents.

As explained above for Request Nos. 23 and 36, Plaintiffs are in possession of all documents relating to the Asserted Patents, that includes privileged materials. (Mullen Decl. Exs.,9 at 3-6; 10 at 2-5.)  Movants do not identify any deficiencies in IDT or DDG's document productions or suggest that ARC or ARG may possess documents different from or in addition to the documents that Plaintiffs possess. As explained above for Request Nos. 23 and 36, and equally applicable to Request Nos. 25 and 26 concerning the Asserted Patents, Movants provide no reason for ARC or ARG to re-produce identical documents, when the documents can be "obtained from some other source that is more convenient, less burdensome, or less expensive," in this case Plaintiffs.  *See* Fed. R. Civ. P. 26(b)(2)(C); Fed. R. Civ. P.45(d); *see also*, *e.g.*, *Haworth, Inc.*, 998 F.2d at 977-78 (Fed. Cir. 1993); *Nidec Corp.*, 249 F.R.D. 575, 576-77 (N.D. Cal. 2007); *Plastics*, 2005 U.S. Dist. LEXIS 47979, at *12-13.  The absence of deficiencies in Movants' document productions or unique documents in ARC or ARG's possession demonstrates that there is ***no*** basis for ARC or ARG to undergo the expense and time to produce

identical documents.  *See*, *e.g.*, *Amini Innovation Corp.*, 300 F.R.D. 406; *Software Rights Archive, LLC*, 2009 U.S. Dist. LEXIS 43835, at *8-9.

          **b)**      **Movants Are Trying To End-Run The Privilege Log Requirements Imposed By Judge Andrews In The Patent Litigation.**

As Movants state, "to the extent that Acacia withholds any document on the basis of privilege, Movants request that the Court order Acacia to produce a privilege log sufficient to provide Movants sufficient information to assess the claim." (Jt. Stip. at 11 n.11.)  However, Movants request for a privilege log here is an attempt to circumvent their obligations to meet and confer with the parties to the suit as required under the Discovery Order.

The Discovery Order requires the parties to meet and confer on the nature and scope of privilege logs, "including whether categories of information may be excluded from any logging requirements and whether alternatives to document-by-document logs can be exchanged." (Mullen Decl., Ex. 2 at 3.)  During meet and confer, Movants' admitted that they had not yet conferred with Plaintiffs concerning the parties' privilege logs.  (*Id.* ¶ 15.)  Plaintiffs' agreed to produce a privilege log after the parties' engaged in the required meet and confer process as did other non-moving defendants.  (*Id.*)  Therefore, Movants' Joint Stipulation challenges hypothetical privilege assertions.

However, to the extent the Movants request a privilege log from ARC and ARG, ARC and ARG stand willing to provide a privilege log.

          **c)**      **Movants' Challenges To Documents Protected Under The Common Interest Privilege And Work Product Rule Are Not Ripe Because There Is No Privilege Log, And Is Contrary To The Law.**

Movants admit that there is no privilege log yet and thus they are unable to assess any privilege claim.  (Jt. Stip. at 11 n. 11.)  Thus, any evaluation of ARC and ARG's general privilege assertions – made to highlight the overbroad nature of

the requests into documents protected from discovery – is not ripe until there is a privilege log.

On the merits, Movants' challenge to the common interest privilege is contrary to the weight of authority, including decisions from within this circuit.  A common interest exists between two parties if:  (1) the parties share a common interest; (2) the disclosing party had a reasonable expectation of confidentiality; and (3) the disclosure is reasonably necessary.  *Continental Cas. Co. v. St. Paul Surplus Lines Ins. Co.*, 265 F.R.D. 510, 528-29 (E.D. Cal. 2010).  "[T]he legal interests between or among the clients need not be identical, and the degree to which the commonality of interests converge is relaxed.  Further, the fact there may be an overlap of commercial and legal interests . . . does not negate the effect of the legal interests in establishing a community of interest."  *MobileMedia Ideas LLC v. Apple, Inc.*, 890 F. Supp. 2d 508, 515 (D. Del. 2012).

For example, *In re Regents of the University of California*, 101 F.3d 1386 (Fed. Cir. 1996) ("*Regents*"), the Federal Circuit protected communications between Eli Lilly's attorneys and attorneys for University of California ("UC").  *Id.* at 1389-91.  Eli Lilly had an option agreement to license certain UC patents upon successful prosecution of the patents.  *See id.*  UC and Eli Lilly's attorneys exchanged legal analyses relating to prior art searches *before* Eli Lilly exercised its option.  *Id.*  In a declaratory relief action challenging patent validity, the district court granted a motion to compel the production of those materials.  *Id.*

Granting mandamus relief, the Federal Circuit found the parties shared a common legal interest in strong and enforceable patents.  *Id.*  The Federal Circuit explained:

> [W]e conclude that the legal interest between Lilly and UC was substantially identical because of the potentially and ultimately exclusive nature of the Lilly-UC license agreement.  Both parties had the same interest in

1
2
3
4
5
6
7

> obtaining strong and enforceable patents. The district court erred in concluding that Lilly and UC did not have an identical legal interest in the '877 patent and its foreign counterparts because "a patentee and a nonexclusive licensee do not share identical legal interests." Lilly was more than a non-exclusive licensee, and shared the interest that UC would obtain valid and enforceable patents. UC is a university seeking valid and enforceable patents to support royalty income. Lilly is an industrial enterprise seeking valid and enforceable patents to support commercial activity. Valid and enforceable patents on the UC inventions are in the interest of both parties.

8
9 *Id.* at 1390.  Numerous courts have reached the same conclusion, including courts
10 within this circuit.  *See*, *e.g.*, *MobileMedia Ideas*, 890 F. Supp. 2d at 516-17
11 (stating that "as evidenced by the various agreements" among the parties, the
12 "purpose of the transfer of patent prosecution files and the [Invention Disclosure
13 Forms] were part of the joint legal strategy … before MMI's formation and
14 continued thereafter . . . [and] clearly share[d] a common legal interest" in
15 enforcing the patents); *Morvil Tech., LLC v. Ablation Frontiers, Inc.,* 2012 U.S.
16 Dist. LEXIS 30815, at *10 (S.D. Cal. Mar. 8, 2012) (following *Regents*; applying
17 doctrine for documents shared between seller and prospective buyer during
18 diligence); *Britesmile, Inc. v. Discus Dental, Inc.*, 2004 U.S. Dist. LEXIS 20023, at
19 *9 (N.D. Cal. Aug. 10, 2004) (refusing to compel disclosure of patent opinions
20 provided to a patent purchaser pre-acquisition); *Hewlett-Packard Co. v. Bausch &
21 Lomb, Inc.,* 115 F.R.D. 308, 310-12 (N.D. Cal. 1987) (applying doctrine to
22 documents shared during diligence even though the transaction was never
23 consummated).

24      Here, Rambus and ARG (and subsequently, the Plaintiffs) share similar,
25 legal interests in valid, enforceable patents.  Under the Rambus Agreement, after
26 conveying the patents to ARG, Rambus received a grant back license to practice
27 the patented technologies (Mullen Decl., Ex. 5 at § 2.1,) and a continuing right to

28

---

royalty payments from the recoveries from the licensing, enforcement, or sale of the Patents.  (*Id*. § 3.2.)

Such rights align Rambus with ARG's interests in licensing or litigating the patents against infringers, and defending the patents for challenges to their validity. The Rambus Agreement also contains multiple covenants for cooperation in litigating and licensing the patents (*see id*. at §§ 1.5, 3.6, 6.1) and protections for confidential materials exchanged, including a special provision for the handling of any privileged materials.  (*Id*. at §§ 8.1, 8.2; *see also id*. at § 1.2.)  The Rambus Agreement designates federal law and the laws of the state of New York to govern the parties' relationship.  (*Id*. at § 7.1.)

Under similar circumstances, another court in the Central District upheld common interest protection for privileged information exchanged between a predecessor to ARG and one of its inventor partners.  *Diagnostic Sys. Corp. v. Symantec Corp*., 2008 U.S. Dist. LEXIS 123915, at *33-35 (C.D. Cal. Aug. 12, 2008) (Carter, J.).  There, the court found that inventor Amado shared his own privileged materials because he had a right to royalties for licensing and enforcing the patents, under a similar agreement with a predecessor to ARG.  2008 U.S. Dist. LEXIS 123915, at *33-35.  The court further found that Amado was actively involved in the litigation, demonstrating his contributions to the active case by attending depositions and court hearings.  *Id*.

Movants cited authorities are inapposite.  Unlike in *Leader Technologies v. Facebook*, ARG and Rambus do not dispute that a common legal interest exists as expressly provided for in the Rambus Agreement.  *See Leader Techs., Inc. v. Facebook, Inc*., 719 F. Supp. 2d 373, 376-77 (D. Del. 2010) (rejecting common-interest privilege because plaintiff and litigation financing companies did not assert a common-interest agreement).

Movants also mistakenly rely upon the decision in *Microsoft Corp. v. Acacia Research Corp.*, No. 13 cv 8275 (PAC), 2014 U.S. Dist. LEXIS 161457 (S.D.N.Y. Nov. 17, 2014).  That order is not binding upon this Court.  *Starbuck v. City & Cnty of San Francisco*, 556 F.2d 450, 457 n.13 (9th Cir. 1977) ("The doctrine of stare decisis does not compel one district court judge to follow the decision of another."); *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991) (stating the same).

Following that order, ARC sought relief from the Second Circuit.[22]  At the hearing, ARC argued the discovery order should be vacated.  The panel member of the Second Circuit stated:  "***That's not binding in those other cases*** . . . it can be used against you but only to the extent that the district judge's opinion persuades any future judge, right?"  (Mullen Decl., Ex. 11 at 2:18-19; 4:10-12 (emphasis added).)

The order is also not persuasive because it is flawed for multiple reasons.  First, that order is inconsistent with *Regents* and the weight of authority, recognizing that a patentee and licensee can share both legal interests in valid and enforceable patents co-existing with their commercial interests.  The order does not even address *Regents* and other leading cases.  Second, ARC then and ARC and ARG now only assert the common interest for privileged materials exchanged ***after*** Rambus and ARG entered into the Agreement, which set the economic terms.  In other words, ARG and Rambus were no longer adversaries in contract negotiation because the financial terms and other terms were already defined in the Agreement when the parties exchanged the otherwise privileged materials – a point that the order fails to address.  Third, the order also failed to consider the choice of law provision in the applicable agreement.  The law of the Federal Circuit, New York,

---

[22] ARC sought interlocutory review to appeal the discovery order and its writ of mandamus was set for oral argument.  However, the parties settled before ARC was able to complete the appellate process.  (Mullen Decl., Ex.11.)

and Delaware approves of the application of the common interest in this precise situation. *See*, *e.g.*, *Regents*, 101 F.3d at 1390; *Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 124 A.D.3d 129, 137 (N.Y. App. Div. 1st Dep't 2014) (applying common interest doctrine to protect privileged documents exchanged pre-merger); *U.S. v. Bank of N.Y. Mellon*, 66 F. Supp. 3d 406, 413 (S.D.N.Y. 2014) (upholding common interest where parties shared expressly commercial interests and legal interests); *HSH Nordbank AG N.Y. Branch v. Swerdlow*, 259 F.R.D. 64, 73 (S.D.N.Y. 2009) (same); *MobileMedia Ideas*, 890 F. Supp. 2d at 516-17; *Rembrandt Techs., L.P. v. Harris Corp*, C.A. No. 07C-09-059-JRS, 2009 Del. Super. LEXIS 46, at *24-26 (Feb. 12, 2009) (upholding common interest for diligence materials for a patent licensing company).

Even if the common interest privilege was not available, the work product doctrine provides an independent basis to protect the materials from discovery. That is because most of the materials exchanged between Rambus and ARG after they entered into the Rambus Agreement are, if not all, attorney work product created in anticipation of licensing and litigating the patents, consistent with the overall purpose for the Rambus Agreement. *See* Fed. Rules Civ. P. 26(b)(3)(A) ("a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).").

In fact, ARG and Rambus entered into a Consulting Agreement on March 25, 2013 under which Rambus would perform consulting services to assist in the litigation of the Asserted Patents.  (Mullen Decl., Ex. 4 § 6.4 ("The parties may share privileged information . . . In furtherance thereof, the parties agree that such sharing and exchange of Privileged Information will be subject to the attorney-client privilege, the attorney work product doctrine, and/or other applicable

privileges and immunities to the maximum extent possible.").). Thus, those work product materials prepared for the litigation are protected from discovery.  *U.S. v. Torf,* 357 F.3d 900, 909 (9th Cir. 2003) (holding documents prepared by environmental consultant hired by a party to advise and defend it in anticipated litigation with the EPA were entitled to work product protection).

The purpose and scope, and basis for wavier, of the work product doctrine differs from the attorney client privilege.  *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1298-99 (D.C. Cir. 1980) (the purpose of the work product privilege "is to protect material from an opposing party in litigation, not necessarily from the rest of the world generally[,]" thus "disclosure to a third party does not waive the privilege unless such disclosure . . . is inconsistent with the maintenance of secrecy from the disclosing party's adversary.") (internal quotations and citations omitted); *see also U.S. v. Adlman*, 134 F.3d 1194, 1200 (2d Cir. 1998) (discussing scope of work-product protection); *Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 646 (E.D. Cal. 2014); *Nielsen Elecs. Inst. v. Student Fin. Corp.*, 2001 U.S. Dist. LEXIS 25553, at *5 (D. Del. Jan. 18, 2001) ("Under the work product doctrine, a disclosure to a third party does not necessarily waive the doctrine's protection.").    Because the disclosure of these materials between Rambus and ARG was unlikely to come in the hands of a litigation adversary (as evidenced by Movants' attempt to seek them here), there has been no wavier of the work product privilege.

The Court should therefore deny Movants' demand for duplicative production of Plaintiffs' documents relating to valuations of the Asserted Patents.

### 5.    REQUEST FOR PRODUCTION NO. 26:

All Documents Relating to any analysis, consideration, or assertion of infringement or non-infringement, validity or invalidity, enforceability or

unenforceability, ownership, inventorship, or damages Relating to any and all Patents-in-Suit.

### OBJECTION TO REQUEST NO. 26:

ARC refers to and incorporates by reference all of the General Objections stated above as though set forth in full herein. ARC specifically objects to the extent the Request seeks ARC's unretained expert opinion. Fed. R. Civ. P. 45(d)(3)(B)(i)-(ii); *see, e.g., Mattel, Inc. v. Walking Mt. Prods.,* 353 F.3d 792, 814 (9th Cir. 2003) (quoting Fed. R. Civ. P. 45 1991 amend. note). ARC objects to the Request as cumulative, burdensome and oppressive to the extent that it seeks documents that are more readily obtainable elsewhere, including documents that are available from Plaintiffs and documents that are in already in the Defendants' possession, custody, or control.  ARC specifically objects to the Request to the extent it seeks documents and information that is protected from discovery by the attorney-client privilege, the work product doctrine, the consulting expert privilege, settlement privilege, the joint prosecution privilege, the common interest privilege, and/or any other applicable privileges. ARC specifically objects to the Request to the extent it seeks production of information covered by any judicial order, protective order, stipulation of confidentiality, non-disclosure agreement, or confidentiality agreement with any non-parties such that disclosure by ARC is restricted. ARC objects to the Request to the extent it seeks disclosure of ARC's trade secrets, proprietary knowledge, and/or confidential research, development, commercial, business or other sensitive information. ARC objects to this Request to the extent it requires ARC to form a legal conclusion in order to respond.

### MOVANTS' ARGUMENT

Request No. 26 of the Movants' subpoenas to Acacia is similar to request No. 25 but requests "All Documents Relating to any analysis, consideration, or assertion of infringement or non-infringement, validity or invalidity, enforceability

or unenforceability, ownership, inventorship, or damages Relating to any and all Patents-in-Suit."

Lenovo sent a letter to Acacia on October 9, 2015, detailing Acacia's obligation to produce the requested documents as well as providing relevant case law regarding the lack of common interest privilege, particularly the *Microsoft* case.  *See* Ex. C, October 9, 2015 Letter from Lenovo to Acacia.  Acacia's response letter on October 22, 2015, denies the *Microsoft* order, contending that the *Microsoft* order is "not persuasive because it is flawed for multiple reasons."  *See* Ex. H, Acacia Letter to Lenovo.   Notwithstanding the impropriety of Acacia's refusal to acknowledge the *Microsoft* order, the Second Circuit Court of Appeals had also denied Acacia's motion to vacate the district court order in *Microsoft*.  *See* Ex. I, Dkt. No. 128, *Microsoft Corp. v. Acacia Research Corp.*, No. 13-8275 (SDNY).  Clearly, the Court intended to bind Acacia to the district court finding that there was no common interest privilege in documents related to the Patents-in-Suit.  On October 22, 2015, Movants invited Acacia to produce the requested documents, and Acacia refused to produce them.  *See* Pluta declaration at ¶ 6.  Parties are at an impasse as to the issues above.

For the reasons stated above, specifically as to Request No. 25, Movants request that the Court grant their motion to compel, and order Acacia to produce all documents responsive to Request No. 26 of the Acacia Subpoena.

### ARC AND ARG'S ARGUMENT

As explained above for Request No. 25, to the extent Request No. 26 pertains to the Asserted Patents, Movants have already received the responsive, non-privileged documents from Plaintiffs.  Movants have not demonstrated a basis to compel duplicative documents from ARC or ARG.  Plaintiffs have in their possession the communications and materials exchanged between Rambus and ARG, including any attorney client communications and work product information

shared between ARG and its subsidiary Plaintiffs and Rambus that are covered both by the common interest privilege and work product doctrine.

Movants' insistent reliance on the *Microsoft* order is misplaced for the reasons offered above.  The Second Circuit Court of Appeals expressly stated: "That's not binding in those other cases[.]"  (Mullen Decl., Ex. 11 at 2:18-19.)  The *Microsoft Crop*. decision is also inconsistent with *Regents* and the weight of authority cited above for Request No. 25, recognizing that a patentee and licensee can share both legal interests in valid and enforceable patents co-existing with their commercial interests.  *See*, *e.g.*, *Regents*, 101 F.3d at 1390.  For the reasons explained above, Rambus and ARG (and subsequently Plaintiffs) share similar, common legal interests in valid and enforceable patents.  (Mullen Decl., Exs. 5, 9 at 3-6; 10 at 2-5.)  Under similar circumstances, another court in the Central District upheld common interest protection for privileged information exchanged between a predecessor to ARG and one of its inventor partners.  *Diagnostic Sys. Corp*, 2008 U.S. Dist. LEXIS 123915, at *33-35.

Even if the common interest privilege was not available, the work product doctrine provides an independent basis to protect these materials from discovery.  That is because most of the materials exchanged between Rambus and ARG after they entered into the Rambus Agreement are, if not all, attorney work product created in anticipation of licensing and litigating the patents, consistent with the overall purpose for the Rambus Agreement and the Consulting Agreement.  *See* Fed. Rules Civ. P. 26(b)(3)(A); *see Torf,* 357 F.3d at 909 (Mullen Decl. Exs. 4 & 5.)  Because the disclosure of these materials between Rambus and ARG was unlikely to come in the hands of a litigation adversary (as evidenced by Movants attempt to seek them here), there has been no wavier of the work product privilege.  *See*, *e.g.*, *Am. Tel. & Tel.*, 642 F.2d at 1298-99; *Cal. Sportfishing*, 299 F.R.D. at 646; *Nielsen Elecs.*, 2001 U.S. Dist. LEXIS 25553, at *5.

The Court should therefore deny Movants' demand for duplicative production of Plaintiffs' documents relating to the Asserted Patents.


Dated:  October 30, 2015

By: /s/ Eric J. Klein
     Eric J. Klein
AKIN GUMP STRAUSS HAUER & FELD LLP

Attorney for Movants Lenovo Holding Company Inc. and Lenovo (United States) Inc.

/s/ Jamie Beaber
Jamie Beaber
Attorney for Movants LG Electronics Inc.; LG Electronics U.S.A., Inc.; LG Display Co., Ltd.; and LG Display America, Inc.

Dated: November 6, 2015

STRADLING YOCCA CARLSON & RAUTH, P.C.


By:  /s/ Jessica L. Mullen
Marc J. Schneider
Stephen L. Ram
Jessica L. Mullen
Attorneys for ACACIA RESEARCH CORPORATION, and ACACIA RESEARCH GROUP, LLC

# **CERTIFICATE OF CONFERENCE**

Movants and Acacia have met and conferred in an attempt to resolve the issues raised in this joint stipulation and were unable to come to an agreement.

/s/ Eric J. Klein
Eric J. Klein


/s/ Jamie Beaber
Jamie Beaber


/s/ Jessica L. Mullen
Jessica L. Mullen