# EXHIBIT 9



**STRADLING YOCCA CARLSON & RAUTH, P.C.**
660 NEWPORT CENTER DRIVE, SUITE 1600
NEWPORT BEACH, CA 92660-6422
SYCR.COM

*CALIFORNIA*
  NEWPORT BEACH
  SACRAMENTO
  SAN DIEGO
  SAN FRANCISCO
  SANTA BARBARA
  SANTA MONICA
*COLORADO*
  DENVER
*NEVADA*
  RENO

JESSICA MULLEN
949.725.4081
JMULLEN@SYCR.COM

October 22, 2015

**By Email**

Eric J. Klein
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Suite 4100
Dallas, TX  75201-4624
eklein@akingump.com

Re:    *Third Party Subpoenas to Acacia Research Corporation ("ARC") and Acacia Research Group, LLC ("ARG ") in Connection With Delaware Display Group LLC, et al., v. LG Electronics Inc., et al., Civ. A. No. 13-21 09-RGA (D. Del.)*

Dear Mr. Klein:

      As you know, this firm represents third parties ARC and ARG in the above referenced litigation.  On July 9, 2015, Defendant "LG Display Co., Ltd. and all other Defendants listed in Attachment A" ("Defendants") "by and through undersigned counsel of record," Robert G. Pluta of the Mayer Brown law firm ("Subpoenaing Counsel"), issued document subpoenas to ARC and ARG.[1]  In turn, ARC and ARG timely served responses on Subpoenaing Counsel.  Thereafter, ARC and ARG met and conferred extensively with Defendants concerning the objectionable aspects of the Subpoenas and reached agreements concerning the scope of the Subpoenas and requests ("Requests").

      On October 9, 2015—three months after Defendants issued the Subpoenas—ARC and ARG received for the first time a letter from your firm demanding that that ARC and ARG "immediately comply with its Rule 45 obligations and produce unredacted copies of all documents in its possession, custody, or control that are responsive to Request Nos. 8, 12, 15, 16, 23, 26, 36, 37, and 38."  On October 13, I received your email stating "[o]ur correspondence concerns the July 9 Subpoenas to ARG and ARC.  The Lenovo entities are represented by Akin Gump, not Mr. Pluta's firm.  Lenovo requests that ARG and ARC immediately produce the documents."

      As an initial matter, Lenovo is attempting to circumvent and undermine the meet and confer agreements reached between Subpoenaing Counsel and our firm on behalf of our respective clients, including Lenovo.  Indeed, your firm sat on the sidelines for three months while ARC and ARG met

---

[1] Attachment A to the Subpoenas provides that "defendants Lenovo Holding Co. Inc., Lenovo (United States), Inc., LG Electronics Inc., LG Electronics U.S.A., Inc., LG Display Co., Ltd., LG Display America, Inc., Sony Corporation, Sony Corporation of America, Sony Electronics Inc., Sony Mobile Communications (USA) Inc., and VIZIO, Inc. (collectively, "Defendants"), by and through undersigned counsel of record, have issued the attached Subpoena" respectfully submitted on behalf of Defendants by undersigned counsel Robert G. Pluta, Jamie B. Beaber, Kifir B. Levy, Baldine B. Paul, and Anita Y. Lam of the Mayer Brown Law Firm.

Eric J. Klein
October 22, 2015
Page Two

and conferred with Subpoenaing Counsel on behalf of Defendants—including Lenovo Holding Co.
Inc. and Lenovo (United States), Inc. ("Lenovo Entities"). Despite your complete absence from the
meet and confer process, you now demand that ARC and ARG immediately produce documents to
the Lenovo Entities and threaten to move to compel unless ARC and ARG meet arbitrary deadlines
you have imposed.  It is clear that any motion to compel against would be unwarranted.

        This letter responds to your letters of October 9 and 20 and our call on October 19, in an
attempt to revisit the meet and confer process you are attempting to unwind.

   **A.  Plaintiffs Have All Documents Relating To The Patents-In-Suit; The Lenovo Entities
        Should Seek Documents Related To The Patents-In-Suit From Plaintiffs To Avoid
        Imposing Undue Burden On Third-Parties ARC and ARG.**

        As stated in ARC and ARG's responses to the Subpoenas, and explained during our call,
Delaware Display Group LLC ("DDG") and Innovative Display Technologies ("IDT," collectively
with DDG, "Plaintiffs") have all documents relating to the Patents-in-Suit.[2]  To be clear, *there are no
responsive documents* concerning the Patents-in-Suit that Plaintiffs do not already have.  As
Plaintiffs' counsel confirmed during our joint meet and confer calls with Subpoenaing Counsel,
Plaintiffs have complied or are complying with their discovery obligations in the underlying action
with respect to all non-privileged documents and information related to the Patents-in-Suit or
otherwise relevant to the parties' claims and defenses in that action.  It is our understanding that
Plaintiffs have produced (or will produce) a number of documents relating to the underlying
litigation, such as relevant license agreements, documents relating to the acquisition of the Patents-
in-Suit, information disclosed by Rambus to ARG prior to the acquisition, and portions of deposition
transcripts and expert reports (to the extent possible, given third party confidentiality obligations).

        Further, Request Nos. 25, 26, and 29, which seek valuations, infringement analyses, and prior
art relating to the Patents-in-Suit, respectively, are, like other documents related to the Patents-in-
Suit, in the possession of DDG and IDT.  DDG and IDT have or will make the appropriate privilege
assertions over these documents and will produce or log responsive but privileged documents, if any,
pursuant to the Discovery Order.

        Given that Plaintiffs have provided or will provide all documents relating to the underlying
litigation and the Patents-in-Suit, any additional document production by ARC and ARG would be
unduly burdensome, duplicative, and harassing.  Further, your request that ARC and ARG log those
documents similarly creates an undue and unnecessary burden and cost.  In your letters and on our
call, you have made no assertion regarding any deficiency in DDG or IDT's document productions
that would justify requiring corporate parents, ARC or ARG, to undergo a second or third search for
and production of the *same* documents pertaining to the Patents-in-Suit.  Indeed, such unreasonable
and burdensome demands undermine the clear directives of the Federal Rules.

        Contrary to the allegations in your October 9 letter, demanding ARC and ARG to undergo
the time and cost to search for and re-produce *identical* documents is "unreasonably cumulative or

---

[2] As used herein, the term, "Patents-in-Suit" refers to U.S. Patent Nos. 7,434,974; 7,537,370; 7,914,196; and
8,215,816.

Eric J. Klein
October 22, 2015
Page Three

duplicative," since these documents "can be [and have been] obtained from some other source that is more convenient, less burdensome, or less expensive." *See* Fed. R. Civ. P. 26(b)(2)(C); *see also* Fed. R. Civ. P. 45(d). In fact, a magistrate judge in the Eastern District of Texas recently denied a motion to compel ARG to produce the same type of duplicative documents you claim is warranted here. *See Adaptix, Inc. v. Alcatel-Lucent USA, Inc., et al.*, Nos. 6:12-cv-22, 6:12-cv-122, 6:12-cv-00123 (E.D. Tex. Aug. 14, 2014) (order denying motion to compel third-party Acacia Research Group, LLC to produce documents that a party had already produced in the underlying litigation). A copy of the decision is enclosed for your review.

The *Adaptix* decision is consistent with decisions of other courts refusing to compel third parties to produce documents available from party opponents in other similar circumstances. *See, e.g., Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 977-78 (Fed. Cir. 1993) (requiring party to seek discoverable material from party opponent prior to commencing ancillary proceeding against nonparty for purposes of obtaining relevant documents); *Nidec Corp. v. Victor Co.*, 249 F.R.D. 575, 576-77 (N.D. Cal. 2007) (granting motion to quash third-party subpoena where "the vast majority of the discovery sought . . . is discovery obtainable from a source more direct, convenient and less burdensome – namely, from Defendants"); *Additives Antitrust Litig.*, No. 03-2038, 2005 U.S. Dist. LEXIS 47979, at *12 (E.D. Pa. Aug. 9, 2005) (quashing subpoena that was "unduly burdensome because . . . the desired documentation [was] obtainable from a more convenient source—the class plaintiffs"; holding that "because plaintiffs . . . possess all documents requested pursuant to the subpoena, it is more convenient and less burdensome to seek such documentation from plaintiffs than from [the third-party].") (citing Fed. R. Civ. P. 26(b)(2)).[3]

You have also made no assertion or suggested any evidence that ARC or ARG may have unique documents concerning the Patents-in-Suit. In *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406 (C.D. Cal. 2014), the court quashed defendant's subpoena to a non-party after, among other things, determining that the defendant failed to show that the same information was not obtainable from party witnesses. 300 F.R.D. 406, 412 n.6.

Accordingly, ARG and ARC have nothing additional to produce that relates to the Patents-In-Suit (*i.e.*, Document Request Nos. 7-8, 11-12, 14-16, 19, 21-29, and 35-38).

## B. Plaintiffs Have Materials Covered By A Common Interest Privilege.

To be clear, ARC and ARG believe that documents that may be covered by a common interest relating to the Patents-in-Suit are Plaintiffs' documents. However, we respond below to your assertion that a common interest does not exist. A common interest exists between two parties if: "(1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived." *MobileMedia Ideas LLC v. Apple, Inc.*, 890 F. Supp. 2d 508, 515 (D. Del. 2012) (internal quotations and citations omitted). "[T]he legal interests between or among the clients need not be identical, and the degree to which the commonality of interests converge is relaxed. Further, the fact there may be an overlap of commercial and legal interests . . . does not negate the effect

---

[3] *See also First Aviation Servs. v. Gulf Ins. Co.*, 205 F.R.D. 63, 69 (D. Conn. 2001) (denying motion to compel production of documents from third-party because defendant possesses documents sought by plaintiff).

Eric J. Klein
October 22, 2015
Page Four

of the legal interests in establishing a community of interest." *Id.* (internal citations and quotations omitted).  *See also*, *Continental Cas. Co. v. St. Paul Surplus Lines Ins. Co.*, 265 F.R.D. 510, 528-29 (E.D. Cal. 2010).

For example, in *In re Regents of the University of California*, 101 F.3d 1386 (Fed. Cir. 1996) ("*Regents*"), the Federal Circuit upheld the common interest privilege for communications between attorneys for Eli Lilly and attorneys for University of California ("UC").  *Id.* at 1389-91.  Eli Lilly had an option agreement to license certain UC patents upon successful prosecution of the patents.  *See id.*  UC and Eli Lilly's attorneys exchanged legal analyses relating to prior art searches before Eli Lilly exercised its option.  *Id.*  The Federal Circuit found the parties shared a common legal interest in valid and enforceable patents.  *Id.* at 1390.  As the Federal Circuit explained:

> [W]e conclude that the legal interest between Lilly and UC was substantially identical because of the potentially and ultimately exclusive nature of the Lilly-UC license agreement. Both parties had the same interest in obtaining strong and enforceable patents. . . . Lilly was more than a non-exclusive licensee, and shared the interest that UC would obtain valid and enforceable patents. UC is a university seeking valid and enforceable patents to support royalty income. Lilly is an industrial enterprise seeking valid and enforceable patents to support commercial activity. Valid and enforceable patents on the UC inventions are in the interest of both parties.

*Id*.

Numerous courts have reached the same conclusion.  *See*, *e.g.*, *MobileMedia Ideas*, 890 F. Supp. 2d at 516-17 (stating that "as evidenced by the various agreements" among the parties, the "purpose of the transfer of patent prosecution files and the [Invention Disclosure Forms] were part of the joint legal strategy … before MMI's formation and continued thereafter . . . [and] clearly share[d] a common legal interest" in enforcing the patents); *Morvil Tech., LLC v. Ablation Frontiers, Inc.,* 2012 U.S. Dist. LEXIS 30815, at *10 (S.D. Cal. Mar. 8, 2012) (following *Regents*; applying doctrine for documents shared between seller and prospective buyer during diligence); *High Point Sarl v. Sprint Nextel Corp.*, 2012 U.S. Dist LEXIS 8435, at *17, 33 (D. Kan. Jan. 25, 2012) (following *Regents*; applying doctrine to materials exchanged during negotiations between a patent holder and potential purchaser because they "had a substantially identical common legal interest in the validity, enforceability, and potential for infringements of the patents-in-suit at the time [the] communications"); *Mondis Tech., Ltd. v. LG Elecs., Inc.,* 2011 U.S. Dist. LEXIS 47807, at *12, 14-15 (E.D. Tex. May 4, 2011) (applying doctrine to documents shared by Mondis with potential investors to secure funding for patent purchases because a common interest "can [exist] where litigation is not imminent, as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation"); *Britesmile, Inc. v. Discus Dental, Inc.*, 2004 U.S. Dist. LEXIS 20023, at *9 (N.D. Cal. Aug. 10, 2004) (refusing to compel disclosure of patent opinions provided to a patent purchaser pre-acquisition); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 310-

Eric J. Klein
October 22, 2015
Page Five

12 (N.D. Cal. 1987) (applying doctrine to documents shared during diligence even though the transaction was never consummated).

Here, Rambus and ARG (and subsequently, the Plaintiffs) share similar, common legal interests in valid, enforceable patents.  Under the Agreement between ARG and Rambus dated January 30, 2013 ("Agreement"), after conveying the patents, Rambus received a grant back license to practice the patented technologies (Agreement at § 2.1) and a continuing right to royalty payments from the recoveries from the licensing, enforcement, or sale of the Patents.  (*Id*. § 3.2.)  Such rights align Rambus with ARG's interests in licensing or litigating the patents for infringers, and defending the patents for challenges to their validity.  The Agreement also contains multiple covenants for cooperation in litigating and licensing the patents (*see id*. at §§ 1.5, 3.6, 6.1) and protections for confidential materials exchanged, including a special provision for the handling of any privileged materials. (*Id*. at §§ 8.1, 8.2; *see also id*. at § 1.2.)  The Agreement designates federal law and the laws of the state of New York to govern the parties' relationship.  (*Id*. at § 7.1.)

Under similar circumstances, a court in the Central District of California upheld common interest protection for privileged information exchanged between an Acacia company and one of its inventor partners. *Diagnostic Sys. Corp. v. Symantec Corp*., 2008 U.S. Dist. LEXIS 123915, at *33-35 (C.D. Cal. Aug. 12, 2008). There, the court found that inventor Amado shared his own privileged materials because he had a right to royalties for licensing and enforcing the patents, under a similar agreement with a predecessor to ARG.  2008 U.S. Dist. LEXIS 123915, at *33-35.  The court further found that Amado was actively involved in the litigation, demonstrating his contributions to the active case by attending depositions and court hearings.  *Id.*

Your reliance on the decision in *Microsoft Corp. v. Acacia Research Corp*., No. 13-cv-8275 (PAC), 2014 U.S. Dist. LEXIS 161457 (S.D.N.Y. Nov. 17, 2014), is misplaced.  As an initial matter, the order is not binding.  *See, e.g.*, *Starbuck v. City & Cnty of San Francisco*, 556 F.2d 450, 457 n.13 (9th Cir. 1977) ("The doctrine of stare decisis does not compel one district court judge to follow the decision of another."); *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991) (stating the same).

The order is also not persuasive because it is flawed for multiple reasons.  First, that order is inconsistent with *Regents* and the weight of authority, recognizing that a patentee and licensee can share both legal interests in valid and enforceable patents co-existing with their commercial interests.  The order does not even address *Regents* and other leading cases.  Second, ARC then and ARC and ARG now only assert the common interest for privileged materials exchanged *after* Rambus and ARG entered into the Agreement, which set the economic terms.  In other words, ARG and Rambus were no longer adversaries in contract negotiation because the financial terms and other terms were already defined in the Agreement when the parties exchanged the otherwise privileged materials – a point that the order fails to address.  Third, the order also failed to consider the choice of law provision in the applicable agreement.  The law of the Federal Circuit, New York, and Delaware approves of the application of the common interest in this precise situation. *See, e.g.*, *Regents*, 101 F.3d at 1390; *U.S. v. Bank of N.Y. Mellon,* 66 F. Supp. 3d 406, 413 (S.D.N.Y. 2014) (upholding common interest

Eric J. Klein
October 22, 2015
Page Six

where parties shared expressly commercial interests and legal interests); *HSH Nordbank AG N.Y. Branch v. Swerdlow*, 259 F.R.D. 64, 73 (S.D.N.Y. 2009) (same); *Ambac Assur. Corp. v. Countrywide Home Loans, Inc*., 124 A.D.3d 129, 137 (N.Y. App. Div. 1st Dep't 2014) (applying common interest doctrine to protect privileged documents exchanged in the pre-merger context); *MobileMedia Ideas*, 890 F. Supp. 2d at 516-17; *Rembrandt Techs., L.P. v. Harris Corp*, C.A. No. 07C-09-059-JRS, 2009 Del. Super. LEXIS 46, at *24-26 (Feb. 12, 2009) (upholding common interest for diligence materials for a patent licensing company).

        Even if the common interest privilege was not available, the work product doctrine provides an independent basis to protect the materials from discovery.  That is because most of the materials exchanged between Rambus and ARG after they entered into the Agreement are, if not all, attorney work product created in anticipation of licensing and litigating the patents, consistent with the overall purpose for the Agreement.  In fact, ARG and Rambus entered into a Consulting Agreement on March 25, 2013 under which Rambus would perform services in anticipation of litigation of the Patents-in-Suit.  We understand that Plaintiffs produced the Consulting Agreement to you with the Bates-numbers DDG-028542-028549.  The purpose and scope, and basis for wavier, of the work product doctrine differs from the attorney client privilege.  *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1298-99 (D.C. Cir. 1980) (the purpose of the work product privilege "is to protect material from an opposing party in litigation, not necessarily from the rest of the world generally[,]" thus "disclosure to a third party does not waive the privilege unless such disclosure . . . is inconsistent with the maintenance of secrecy from the disclosing party's adversary.") (internal quotations and citations omitted); *Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 646 (E.D. Cal. 2014); *Nielsen Elecs. Inst. v. Student Fin. Corp.*, 2001 U.S. Dist. LEXIS 25553, at *5 (D. Del. Jan. 18, 2001) ("Under the work product doctrine, a disclosure to a third party does not necessarily waive the doctrine's protection.").  Because the disclosure of these materials between Rambus and ARG was unlikely to come in the hands of a litigation adversary (as evidenced by the Lenovo Entities' attempt to seek them here), there has been no wavier of the work product privilege.

**C.  The Lenovo Entities Seek Documents That Are Not Responsive To The Subpoenas And Irrelevant To The Underlying Case.**

        Your letter of October 9 demands production of a "September 30, 2010, agreement between Microsoft and Acacia" produced in an different, unrelated litigation, *Microsoft Corp. v. Acacia Research Corp*., No. 13-8275 (S.D.N.Y.).  That agreement is not responsive to Requests Nos. 23 or 36 and is not reasonably calculated to lead to the discovery of admissible evidence.  The document that was produced—an agreement between ARC and Microsoft which is also not a party to this action—does not relate to any of the Patents-in-Suit.  It is our understanding that there are no Microsoft-supplied products that are being accused in this litigation.  The fact that the document was produced in a prior litigation does not make ARC's document production itself relevant.  The claims, defenses, and parties in that matter are separate and distinct from those in the underlying matter.

        The Lenovo Entities are only entitled to documents and information that are reasonably calculated to lead to the discovery of admissible evidence.  Fed. R. Civ. P. 26(b)(1).  During our call, you contended that the agreement was relevant to royalty rates in damages calculations.  However,

Eric J. Klein
October 22, 2015
Page Seven

that agreement does not license any of the Patents-in-Suit—*i.e.*, permit the use of the patent for defined consideration.  The agreement does not convey a right to practice any of the Patents-in-Suit.

ARC entered into the agreement with Microsoft on September 30, 2011.  ARC and/or ARG did not own or control any of the Patents-in-Suit as of that date because ARG did not acquire the Patents-in-Suit until March 2013.  That agreement and its economic terms were negotiated without any contemplation or consideration of the Patents-in-Suit.  Again, that agreement did not license any patents relevant to this action.  The Lenovo Entities fail to explain how such an agreement could be relevant to damages calculations.  For these reasons, ARC and ARG stand on their objections and will not be producing the document in this case.

In the event you have any questions or wish to discuss further, please feel free to contact me at your convenience.

Very truly yours,

Jessica Mullen
STRADLING YOCCA CARLSON & RAUTH, P.C.

cc:     Jeffery Bragalone (email only - jbragalone@bcpc-law.com)
        Justin Kimble (email only - jkimble@bcpc-law.com)

Enclosure

# IN THE UNITED STATES DISTRICT COURT
## OF THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| **ADAPTIX, INC.** | § | |
| | § | |
| **v.** | § | **CASE NO. 6:12-cv-22** |
| | § | |
| **ALCATEL-LUCENT USA, INC. ,** | § | |
| **ET AL.** | § | |

---

| | | |
|---|---|---|
| **ADAPTIX, INC.** | § | |
| | § | |
| **v.** | § | **CASE NO. 6:12-cv-122** |
| | § | |
| **ALCATEL-LUCENT USA, INC. ,** | § | |
| **ET AL.** | § | |

---

| | | |
|---|---|---|
| **ADAPTIX, INC.** | § | |
| | § | |
| **v.** | § | **CASE NO. 6:12-cv-123** |
| | § | |
| **ALCATEL-LUCENT USA, INC. ,** | § | |
| **ET AL.** | § | |

## <u>ORDER</u>

The above-referenced causes of action were referred to the undersigned United States Magistrate Judge for pre-trial purposes in accordance with 28 U.S.C. § 636. The following motions are before the Court: (1) Emergency Motion of Defendant Alcatel-Lucent USA, Inc. to Compel Documents from Third Party Acacia Research Group, LLC (Docket Entry #s 196, 187 & 171); and (2) Emergency Motion of Defendant Alcatel-Lucent USA, Inc. to Compel Third Party Acacia Research Group, LLC to Produce a 30(b)(6) Witness to Address Certain Topics (Docket Entry #s 198, 189 & 173). The Court, having reviewed the relevant briefing, is of the opinion the motions should be **DENIED**.

These are patent infringement cases alleging infringement of five United States patents. Defendant Alcatel-Lucent USA, Inc. ("ALU") seeks an Order compelling non-party Acacia Research Group, LLC ("Acacia") to produce all non-privileged documents in its possession responsive to 42 document requests and to produce an agreement between Acacia and Nokia Siemens Networks ("Nokia"). According to ALU's reply, Nokia produced the particular agreement to ALU in response to a subpoena, mooting that issue.

Regarding the 42 document requests, Acacia explained its connection to Adaptix as follows, asserting it should not be required to re-analyze more than 60,000 documents in order to essentially reproduce what ALU has already received from Acacia's subsidiary, plaintiff Adaptix, Inc. ("Adaptix").

> [Acacia] acquired Adaptix as a going concern in January 2012. Adaptix, as a fully-functioning company before the acquisition, retained possession of its documents post-acquisition. To the extent [Acacia] generated, or received, documents concerning Adaptix or the patents-in-suit, those have been made available to Adaptix and its counsel. Adaptix has undertaken a review of those documents for purposes of discovery in this action. To date, Adaptix has produced, or is producing, more than one million documents to ALU, which include more than 11,000 of the documents that [Acacia] provided access to. In order to comply with ALU's demands, [Acacia] must familiarize itself with the facts and technical specifications relating to this patent infringement case, and its counsel must analyze the over 60,000 documents it already provided to Adaptix for analysis. Ultimately, ALU will likely receive the same set of documents from [Acacia] that it has already obtained from Adaptix. Again, this endeavor will require substantial attorney time and resources and would not benefit any party.

(Cause No. 6:12cv22, Docket Entry #208 at pg. 7).

In its reply, ALU states Acacia has not verified that Adaptix has in fact produced all of the responsive Acacia documents that ALU has requested. In the surreply, Acacia represents Adaptix has now confirmed that all responsive non-privileged documents have been produced to ALU.

2

Case 9:15-mc-00032-DOC-DFM Document 17-9 Filed 11/13/15 Page 11 of 12 Page ID #:612
Case 6:12-cv-00123-MHS-CMC Document 211-7 Filed 08/14/14 Page 3 of 4 PageID #: 6612
#:447

According to Acacia, Adaptix made a further supplemental production on June 26, 2014, and Adaptix's counsel has specifically confirmed in a declaration that all responsive non-privileged documents originating from Acacia that are in Adaptix's possession, custody, or control have been produced to ALU in this litigation. (Ercolini Decl., ¶3). Considering the representations of Acacia and Adaptix, ALU has no need for a duplicate production from Acacia which would impose an unnecessary and costly burden on non-party Acacia. The Court denies ALU's motion to compel documents from Acacia.

ALU also seeks an Order compelling Acacia to produce a Rule 30(b)(6) witness to address four topics (Topic Nos. 7, 15, 24, and 29). According to ALU's reply, most of the issues raised in the motion to compel were mooted by a deposition of Curtis Dodd, who testified in his capacity as corporate representative of Adaptix and Acacia. Regarding the one remaining issue, ALU states Acacia instructed Mr. Dodd not to answer a series of questions related to a patent purchase agreement between Acacia and Nokia.[1]

According to Acacia, ALU has failed to identify how the Nokia patent purchase agreement is relevant. In its reply, ALU merely states that the patent purchase agreement "may be relevant to the damage analysis in this case." (Cause No. 6:12cv22, Docket Entry #223 at pg. 2). The Court is not persuaded the patent purchase agreement is relevant. Therefore, the Court denies ALU's

---

[1] According to ALU's reply, testimony regarding the patent purchase agreement is encompassed by Topic No. 15, which seeks testimony regarding Acacia's policies and practices regarding license negotiations and settlements. In the briefing before the Court, Acacia states the agreement with Nokia is not a license of patent rights to a third party nor does it involve the patents-in-suit. Rather, the purchase agreement involved the acquisition of unrelated patents.

request to order Acacia to produce a witness that will answer questions related to the patent purchase agreement.[2]

     Based on the foregoing, it is

     **ORDERED** that Emergency Motion of Defendant Alcatel-Lucent USA, Inc. to Compel Documents from Third Party Acacia Research Group, LLC (Docket Entry #s 196, 187 & 171); and (2) Emergency Motion of Defendant Alcatel-Lucent USA, Inc. to Compel Third Party Acacia Research Group, LLC to Produce a 30(b)(6) Witness to Address Certain Topics (Docket Entry #s 198, 189 & 173) are **DENIED**.

     **SIGNED this 14th day of August, 2014.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE

---

[2] Alternatively, ALU seeks an order barring Adaptix and its damage expert from referring to, or in any way relying upon, the Nokia purchase agreement or any related information that Adaptix or its parent company, Acacia, withheld from ALU. ALU's alternative request is unclear about what the term "related information" encompasses. To the extent a specific issue arises, ALU may raise the issue with the Court at that time.