1                    UNITED STATES DISTRICT COURT

2

3                  CENTRAL DISTRICT OF CALIFORNIA

4                        SOUTHERN DIVISION

5

6

7   LENOVO HOLDING COMPANY, INC.,  )
    ET AL.,                        )
                                   )
8                                  )
           MOVANTS,                )
9                                  )
                V.                 )   SA MC 15-00032-DOC(DFMX)
10                                 )
                                   )
11  ACACIA RESEARCH CORP., ET AL., )
                                   )   SANTA ANA, CALIFORNIA
12                                 )   DECEMBER 15, 2015
           DEFENDANTS.             )   (10:08 A.M. TO 10:33 A.M.)
13                                 )   (10:36 A.M. TO 11:05 A.M.)

14

15                            HEARING

16          BEFORE THE HONORABLE DOUGLAS F. MC CORMICK
                 UNITED STATES MAGISTRATE JUDGE
17

18
    APPEARANCES:              SEE NEXT PAGE
19
    COURT REPORTER:           RECORDED; COURT SMART
20
    COURTROOM DEPUTY:         TERRI STEELE
21
    TRANSCRIBER:              DOROTHY BABYKIN
22                            COURTHOUSE SERVICES
                              1218 VALEBROOK PLACE
23                            GLENDORA, CALIFORNIA  91740
                              (626) 963-0566
24

25  PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
    TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

2

```
 1    APPEARANCES:
      FOR LENOVO:                   AKIN GUMP STRAUSS HAUER & FELD
 2                                  BY:  ERIC JOSEPH KLEIN
                                         ATTORNEY AT LAW
 3                                  1700 PACIFIC AVENUE
                                    SUITE 4100
 4                                  DALLAS, TEXAS  75201

 5    FOR LG ELECTRONICS            MAYER BROWN LLP
      AND LG DISPLAY:               BY:  MICHAEL LINDINGER
 6                                       ATTORNEY AT LAW
                                    1999 K STREET NW
 7                                  WASHINGTON, DC  20006

 8                                  MAYER BROWN LLP
                                    BY:  AMANDA K. STREFF
 9                                       ATTORNEY AT LAW
                                    71 SOUTH WACKER DRIVE
10                                  CHICAGO, ILLINOIS  60606

11    FOR ACACIA RESEARCH           STRADLING YOCCA CARLSON & RAUTH
      CORPORATION AND ACACIA        BY:  JESSICA LYNNE MULLEN
12    RESEARCH GROUP:                    STEPHEN L. RAM
                                         ATTORNEYS AT LAW
13                                  660 NEWPORT CENTER DRIVE
                                    SUITE 1600
14                                  NEWPORT BEACH, CALIFORNIA  92660

15

16

17

18

19

20

21

22

23

24

25
```

3

1                              I N D E X
     SA MC 15-00032-DOC(DFMX)                    DECEMBER 15, 2015
2
     PROCEEDINGS:   HEARING ON LENOVO'S MOTION TO COMPEL ACACIA
3                   TO COMPLY WITH SUBPOENA

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              SANTA ANA, CALIFORNIA; TUESDAY, DECEMBER 15, 2015

 2                           10:08 A.M.

 3              THE CLERK:  CALLING SANTA ANA CASE NUMBER

 4    MC 15-00032, LENOVO VERSUS ACACIA RESEARCH CORPORATION, ET AL.

 5              COUNSEL, PLEASE MOVE FORWARD AND STATE YOUR

 6    APPEARANCES.

 7              MR. KLEIN:  GOOD AFTERNOON.

 8              ERIC KLEIN ON BEHALF OF LENOVO UNITED STATES AND

 9    LENOVO HOLDING COMPANY, INC.

10              MR. LINDINGER:  MICHAEL LINDINGER AND AMANDA STREFF

11    ON BEHALF OF LG ELECTRONICS AND LG DISPLAY.

12              MS. MULLEN:  JESSICA MULLEN ON BEHALF OF THIRD-PARTY

13    ACACIA RESEARCH CORPORATION AND ACACIA RESEARCH GROUP.

14              MR. RAM:  STEVE RAM, ALSO ON BEHALF OF ACACIA

15    RESEARCH.

16              THE COURT:  ALL RIGHT.  COUNSEL, THANK YOU VERY MUCH.

17              I HAVE AGAIN ANOTHER REASONABLY SHORT TENTATIVE FOR

18    THE PARTIES.  I HAVE WRESTLED WITH I THINK WHAT I -- WHAT ARE

19    THE FOUR ISSUES IMPLICATED BY THE MOTION.

20              I HAVE I THINK TENTATIVELY DENIED THE MOTION WITHOUT

21    PREJUDICE TO SOME, I THINK, FURTHER LITIGATION ABOUT THE

22    COMMON-INTEREST PRIVILEGE.  I THINK WE HAVE SOME ADDITIONAL

23    STEPS TO TAKE TO SORT OF TEE THAT ISSUE UP.  I DON'T WANT TO

24    INVITE A SUBMISSION OF IN-CAMERA DOCUMENTS.

25              PLEASE EVERYONE SIT DOWN.  YOU'RE MAKING ME NERVOUS.
```

1          BUT IF THE MOVANTS WOULD LIKE TO BE HEARD ON THE

2     GLOBAL AGREEMENTS OR THE FTC ISSUE, I'M PREPARED TO HEAR FROM

3     YOU ON THAT.  AND THEN WE COULD DISCUSS THE COMMON-INTEREST

4     PRIVILEGE AND HOW WE'RE GOING TO -- I REALLY THINK I'D BE

5     INTERESTED TO HEAR WHAT THE TIMING OR WHAT THE -- WHERE YOU ARE

6     IN DELAWARE WITH RESPECT TO THOSE COMMON-INTEREST PRIVILEGE

7     ISSUES AND HOW I CAN HELP.

8          MR. KLEIN.

9          MR. KLEIN:  YES, YOUR HONOR.

10         THE COURT:  YOU'RE INVITED TO HAVE AT ME.

11         MR. KLEIN:  OKAY.

12         THE PARTIES ARE CURRENTLY NEGOTIATING A SCHEDULE TO

13    EXTEND THE FACT-DISCOVERY DEADLINE.  IT WILL -- IT LOOKS LIKE

14    IT WILL BE EXTENDED AT LEAST UNTIL FEBRUARY THE 12TH, 2016.

15         THE COURT IN A DIFFERENT -- THE DELAWARE COURT IN A

16    RELATED DISCOVERY MATTER THAT LG ACTUALLY PARTICIPATED IN MADE

17    IT CLEAR -- I'M SORRY, ANOTHER PARTY VISIO IN THE DELAWARE CASE

18    PARTICIPATED IN IT -- THAT THE COURT VIEWED THAT THE CASE WAS

19    IN ITS INFANCY, AND THAT THE CASE -- THERE'S STILL SOME -- A

20    LOT OF ISSUES TO BE WORKED OUT.  SO, THE COURT ENVISIONS

21    POTENTIALLY PUSHING ALL OF THE DATES AND WAS OPEN TO THE

22    COURT'S MOVING THE SCHEDULE AHEAD.

23         WITH THAT, THERE IS A PENDING MOTION TO COMPEL

24    AGAINST -- THAT WAS -- THAT'S BEEN FILED AGAINST RAMBUS, INC.

25    THAT HAS -- THAT DEALS WITH SOME RELATED COMMON-INTEREST ISSUES

1   THAT I BELIEVE THE BRIEFING IS NOW CLOSED.

2           THE COURT:  AND IS THAT IN DELAWARE OR IS THAT IN A

3   -- IN ANOTHER -- ANOTHER DISTRICT?

4           MR. KLEIN:  IN DELAWARE, YOUR HONOR.

5           THE COURT:  OKAY.

6           AND WHAT'S -- IS THAT RELATING TO THE SIMILAR

7   COMMON-INTEREST ISSUES?

8           MR. KLEIN:  YES, YOUR HONOR, IN PART.

9           I BELIEVE ONE OF THE ISSUES THAT MY CO-COUNSEL HERE

10  MR. LINDINGER WAS GOING TO DISCUSS TODAY WAS THAT THERE ARE

11  SOME DOCUMENTS THAT WE BELIEVE ARE NOT IN THE POSSESSION,

12  CUSTODY, OR CONTROL OF THE PLAINTIFFS IN THAT CASE AND WOULD

13  RESIDE ONLY IN ACACIA'S POSSESSION, CUSTODY, OR CONTROL.

14          SO, THERE'S SOME --

15          THE COURT:  AND --

16          MR. KLEIN:  THERE'S SOME ISSUES WITH HOW THE

17  DOCUMENTS --

18          THE COURT:  AND I WAS -- I DON'T WANT TO SAY

19  COGNIZANT OF THAT -- BUT IT APPEARED TO ME THAT THAT MIGHT BE

20  POSSIBLE JUST ON THE BASIS OF THE FACT THAT IT APPEARED TO ME

21  FROM THE PARTIES' DESCRIPTIONS -- AND I DIDN'T ACTUALLY DIG

22  BACK IN FOR PURPOSES OF THE TENTATIVE -- THAT THE ASSIGNMENTS

23  FROM RAMBUS -- OR THE CONVEYANCES FROM RAMBUS TO ACACIA

24  OCCURRED.  AND THERE WAS SOME GAP IN TIME BEFORE THOSE PATENTS

25  WERE ASSIGNED TO THE SUBSIDIARIES OF THE PLAINTIFFS.

1          SO, I -- THAT GAP IN TIME AT LEAST SUGGESTED TO ME

2   THAT THERE MIGHT BE SOME PERIOD OF TIME WHEN THOSE DOCUMENTS

3   WOULD RESIDE WITH THE ACACIA ENTITIES AND NOT WITH THE

4   SUBSIDIARIES.  SO, THAT'S PART OF OUR DISCUSSION ABOUT THE

5   COMMON-INTEREST PRIVILEGE AND HOW WE SORT OF SORT THAT OUT.

6          BECAUSE I THINK TO THE EXTENT THAT THOSE DOCUMENTS --

7   THERE ARE DOCUMENTS THAT RESIDE WITH THE ACACIA ENTITIES.  I,

8   NOT THE JUDGE IN DELAWARE, IS -- IS GOING TO HAVE TO WRESTLE

9   WITH THAT UNLESS SOMEONE ASKS ME NOT TO DO THAT.

10          MR. KLEIN:  UNDERSTOOD, YOUR HONOR.

11          THE COURT:  ANY COMMENTS ABOUT THE GLOBAL AGREEMENTS

12   OR THE FTC DOCUMENTS?

13          MR. KLEIN:  YOUR HONOR, WE WOULD LIKE TO BE HEARD

14   BRIEFLY ON THE GLOBAL AGREEMENTS IF THAT'S --

15          THE COURT:  PLEASE.

16          MR. KLEIN:  IF THAT'S OKAY.

17          THANK YOU, YOUR HONOR.  ERIC KLEIN ON BEHALF OF

18   MOVANTS ON THE GLOBAL AGREEMENTS ISSUE.

19          YOUR HONOR, WE RECEIVED YOUR PRELIMINARY RULING.  AND

20   WE APPRECIATE YOUR TIME AND EFFORT IN CLEARING THE ISSUES FOR

21   THE PARTIES.

22          THERE'S ONE DOCUMENT THAT WE WOULD LIKE TO FOCUS ON.

23   IT WAS SUBMITTED AS PART OF OUR SUPPLEMENTAL BRIEFING.  AND IF

24   I CAN -- I'M NOT SURE IF YOU CAN SEE THAT.

25          THIS IS EXHIBIT F TO EXHIBIT O OF THE SUPPLEMENTAL

1    BRIEFING THAT WAS FILED.

2            THE ACACIA ENTITIES ARE A --

3            THE COURT:  WHY DON'T WE DO THIS.  HOLD ON, COUNSEL.

4            MR. KLEIN:  SURE.

5            THE COURT:  WHY DON'T I -- I WILL ACTUALLY FIND THE

6    PAPER COPY.  THAT WILL CLEAR ALL THAT UP FOR ME.  NOT THAT I

7    DON'T LOVE LOOKING AT THE SCREENS, BUT THERE'S REALLY NO

8    REASON.

9            YOU SAY EXHIBIT F TO EXHIBIT O.

10           MR. KLEIN:  EXHIBIT O.

11           IF YOU JUST LOOK AT EXHIBIT O, I CAN GIVE YOU THE

12   NUMBER ON THE BOTTOM OF THE PAGE THAT WILL TELL YOU EXACTLY

13   WHERE TO LOOK.

14           THE COURT:  ALL RIGHT.

15           I'VE GOT EXHIBIT F -- I MEAN, I'VE GOT EXHIBIT O.

16           MR. KLEIN:  IT'S DDG02733 -- 377 IS THE BATES NUMBER

17   --

18           THE COURT:  ALL RIGHT.

19           MR. KLEIN:  -- AT THE BOTTOM OF THE PAGE.

20           THE COURT:  OKAY.  GO AHEAD.

21           MR. KLEIN:  YOUR HONOR, JUST A VERY SHORT AMOUNT OF

22   BACKGROUND.

23           THE ACACIA ENTITIES -- THAT'S ACACIA RESEARCH GROUP

24   AND ACACIA RESEARCH CORPORATION, THEY ARE PRIMARILY ENGAGED IN

25   THE BUSINESS OF MONETIZING PATENTS AND --

1          THE COURT:  I'M FAMILIAR WITH WHAT ACACIA DOES.

2          MR. KLEIN:  OKAY.

3          AS PART OF ITS DEAL, IT'S -- THERE'S ANOTHER COMPANY

4     CALLED "RPX."

5          I'M NOT SURE IF YOUR HONOR IS FAMILIAR WITH RPX.  RPX

6     IS A -- THEY BASICALLY PROVIDE SERVICES TO MITIGATE PATENT

7     RISK.  SO, THEY HAVE CERTAIN CLIENT -- A CLIENT BASE THAT

8     PROVIDES A MONTHLY COMPENSATION TO THEM BASED UPON THEIR

9     CLIENT'S BUSINESS WITH THE PRODUCTS THEY SELL.  THEY'RE OFTEN

10    LARGE COMPANIES.

11         FOR PURPOSES OF THIS HEARING THE MOVANTS ARE NOT

12    MEMBERS OF RPX.

13         AND WHAT RPX DOES IS THEY GO OUT INTO THE MARKETPLACE

14    WITH THIS POOL OF MONEY.  AND THEY PURCHASE PATENTS THAT COULD

15    FALL IN THE HANDS OF -- OF NON-PRACTICING ENTITIES OR FOLKS

16    THAT COULD SUE THEIR CLIENTS.  AND THEY ALSO GO OUT IN LAWSUITS

17    AND SETTLE LAWSUITS ON BEHALF OF THEIR CLIENTS WHEN THEY HAVE

18    -- THEY HAVE CERTAIN ECONOMIES OF SCALE THAT WORK TO THEIR

19    ADVANTAGE THAT THEY CAN GO IN AND SETTLE LAWSUITS FOR THEIR --

20    FOR THEIR CLIENTS.  AND THAT HAPPENED IN THIS CASE.

21         AND EXHIBIT O IS AN AGREEMENT BETWEEN THE PLAINTIFFS

22    IN THIS CASE, DELAWARE DISPLAY GROUP -- BETWEEN DELAWARE

23    DISPLAY GROUP AND INNOVATIVE DISPLAY TECHNOLOGIES.  AND THEY

24    SIGNED AN AGREEMENT WITH RPX SOMETIME IN DECEMBER OF 2014, I

25    BELIEVE.

1            (PAUSE IN PROCEEDINGS.)

2            MR. KLEIN:  I'M SORRY.  IT'S IN AUGUST OF 2014.

3            AND THIS AGREEMENT, YOUR HONOR, IS -- DEALS WITH THE

4    PATENTS THAT ARE BEING ASSERTED AGAINST THE MOVANTS IN

5    DELAWARE.  THESE ARE THE RAMBUS PATENTS AT ISSUE.

6            AND, YOUR HONOR, THERE'S BEEN SOME DISCUSSION ABOUT

7    WHETHER CERTAIN GLOBAL AGREEMENTS ARE RELEVANT TO THIS CASE AND

8    WHETHER THIS IS DUPLICATIVE OR CUMULATIVE DISCOVERY THAT IS

9    AVAILABLE TO THE MOVANTS IN DELAWARE FROM THE PLAINTIFFS IN THE

10   CASE.

11           AND THROUGH OUR MEET-AND-CONFER PROCESS WE'VE

12   DETERMINED THAT MOST OF THE GLOBAL AGREEMENTS HAVE NOT BEEN

13   PROVIDED TO THE PLAINTIFFS.  AND THAT REASON IS BECAUSE ACACIA

14   HAS DETERMINED THAT THEY ARE NOT RELEVANT TO THE CASE.  SO,

15   THEY'VE MADE A RELEVANCE DETERMINATION AND SAID THAT THEY'RE

16   NOT RELEVANT.

17           DURING THE MEET AND -- SEVERAL MEET AND CONFERS,

18   COUNSEL FOR THE PLAINTIFFS, DELAWARE DISPLAY GROUP AND IDT,

19   WOULD OFTENTIMES JOIN THE MEET AND CONFERS.  SO, WE HAD AN

20   OPPORTUNITY FOR CERTAIN AGREEMENTS THAT WE KNEW EXISTED TO ASK

21   THEM IF THOSE HAD BEEN PROVIDED TO THEM BECAUSE WE WOULD GLADLY

22   SEEK THEM FROM THE PLAINTIFFS.  AND THOSE CASES THEY SAID NO.

23           AND IF YOU LOOK AT EXHIBIT F, THIS IS A LIST OF

24   ENCUMBRANCES TO THE PATENTS THAT ARE BEING ASSERTED IN

25   DELAWARE.

1           AND AS YOUR HONOR CAN SEE, THE FIRST FOUR ARE

2   ESPECIALLY INTERESTING.  THIS IS AN OPTION -- THE FIRST IS AN

3   OPTION AGREEMENT, DATED DECEMBER THE 30TH, 2009.

4           THE COURT:  THESE ARE THE FOUR -- THESE ARE -- AT

5   LEAST WHEN I REFER TO THE FOUR AGREEMENTS IN THE FIRST TWO

6   SENTENCES OF PARAGRAPH -- OR THE FOURTH PARAGRAPH ON PAGE 2,

7   THESE ARE THE FOUR AGREEMENTS THAT I'M -- I BELIEVE I'M

8   REFERRING TO.

9           MR. KLEIN:  I BELIEVE SO AS WELL, YOUR HONOR.

10          THE COURT:  ALL RIGHT.

11          MR. KLEIN:  SO --

12          THE COURT:  I REMEMBER -- I REMEMBER THERE WAS ONE IN

13  '09, ONE IN '10, ONE IN '11, AND ONE IN '12.  AND I REMEMBER

14  THE NAMES ORACLE, MICROSOFT, SAMSUNG, AND CISCO.  SO, IF THOSE

15  ARE THE RIGHT --

16          THAT WOULD BE A REMARKABLE PARALLEL TO ME, BUT -- SO,

17  THESE ARE THE FOUR AGREEMENTS THAT I AM CALLING THE GLOBAL

18  AGREEMENTS.

19          MR. KLEIN:  THESE ARE THE GLOBAL AGREEMENTS THAT WE

20  KNOW ABOUT.  AND, YES, YOUR HONOR, THESE ARE THE ONES THAT ARE

21  -- THAT ARE AT FRONT AND CENTER HERE TODAY.

22          NOW, ACACIA HAS TAKEN THE POSITION THAT BECAUSE THESE

23  AGREEMENTS WERE SIGNED BEFORE THEY ACTUALLY REQUIRED THE

24  PATENTS FROM RAMBUS, THAT THEY'RE NOT RELEVANT TO THIS CASE.

25          HOWEVER, THIS AGREEMENT CLEARLY SHOWS THAT THEY ARE

1    ENCUMBRANCES ON THE PATENTS THAT ARE AT ISSUE BEING ASSERTED

2    AGAINST THE MOVANTS IN DELAWARE.

3            INTERESTINGLY, THEY'VE ACTUALLY PRODUCED TWO OF THESE

4    -- THESE AGREEMENTS.  AND THEY ARE EXHIBIT N AND EXHIBIT M TO

5    THE SUPPLEMENTAL BRIEFING.  THEY'RE HEAVILY REDACTED.

6            THE COURT:  RIGHT.

7            MR. KLEIN:  PROBABLY 90 TO -- 90 PERCENT PLUS

8    REDACTED.  SO, THERE'S NO QUESTION THAT THESE ARE RELEVANT.

9    THESE ARE ACTUALLY LIENS AGAINST THOSE PATENTS.

10           AS YOU -- AS YOU MAY KNOW, LG AND LENOVO MAKE CERTAIN

11   PRODUCTS.  AND THEY INCORPORATE OTHER PEOPLE'S PRODUCTS INTO

12   THEIR PRODUCTS.  AND COMPANIES LIKE SAMSUNG, MICROSOFT.  ORACLE

13   POTENTIALLY AND CISCO, THOSE PRODUCTS COULD BE INCORPORATED

14   INTO LENOVO PRODUCTS.  I'M NOT SURE ABOUT LG.

15           SO, IT'S INTERESTING THAT FOR SOME REASON THEY'RE NOT

16   PROVIDING THE -- AT LEAST THE ORACLE OR THE MICROSOFT -- THE

17   AUGUST 2ND MICROSOFT AGREEMENT AND THE CISCO SYSTEMS AGREEMENT

18   AT ALL -- ONLY REFERRING US TO A LATER SIGNED AGREEMENT WITH

19   MICROSOFT THAT WAS DATED SOMETIME IN 2014.  BUT THESE ARE

20   ENCUMBRANCES ON THE PATENTS.  THESE ARE -- THESE ARE RELEVANT. AND

21   I UNDERSTAND THAT THEY SAY, WELL, IT DOESN'T LICENSE SOMETHING.

22    IT DOESN'T -- IT DOESN'T GIVE THEM AN OPTION TO -- TO, YOU

23   KNOW, PRACTICE THIS INVENTION WITHOUT PAYING A ROYALTY.  BUT

24   IT'S AN ENCUMBRANCE IN SOME FORM.

25           AND RULE 26 ALLOWS US TO EXPLORE WHAT THAT IS.

13

1          SO, YOUR HONOR, WE'RE NOT -- WE'RE NOT TRYING TO BE

2    DIFFICULT OR SHOOTING IN THE DARK.  I MEAN, THESE ARE LICENSES

3    THAT ARE DIRECTLY RELEVANT TO THOSE PATENTS.  AND WE BELIEVE

4    THERE COULD BE OTHER ONES THAT ARE -- THAT HAVE -- IF YOU READ

5    THE TOP IT SAYS "AS OF THE EFFECTIVE DATE."  WE BELIEVE THERE

6    COULD BE OTHER LICENSES THAT AFFECT OR ENCUMBER THE PATENTS

7    BEING ASSERTED IN DELAWARE.

8          THE COURT:  NOW, LET ME -- LET ME -- I SORT OF IN

9    FOUR PAGES -- NOT EVEN FOUR PAGES -- THREE AND A HALF PAGES

10   ADDRESSED SORT OF THE HIGH POINTS OF, YOU KNOW, SEVERAL DOZEN

11   PAGES OF MATERIALS AND ARGUMENTS THAT YOU MADE.  AND YOU ALL

12   DID A VERY GOOD JOB OF BEING VERY CONCISE.  SO, YOUR PAGES ARE

13   DENSE WITH ARGUMENTS.

14         ONE OF THE ARGUMENTS THAT MS. MULLEN AND THE FOLKS ON

15   ACACIA'S SIDE MADE WAS THIS ARGUMENT THAT SORT OF WHAT I WILL

16   CHARACTERIZE AS YOUR INCORPORATION-OF-YOUR-PRODUCTS ARGUMENT

17   WAS NOT ONE THAT THE PARTIES HAVE REALLY FLESHED OUT THROUGH A

18   MEET AND CONFER PROCESS.

19         IN OTHER WORDS, TO THE EXTENT THAT LENOVO OR LG ARE

20   ARGUING, HEY, WE NEED TO -- WE MAY HAVE SOME MICROSOFT PRODUCT.

21   WE MAY HAVE SOME ORACLE PRODUCT IN OUR -- IN OUR TECHNOLOGY,

22   AND WE NEED TO UNDERSTAND WHETHER THEY'RE IMPLICATED BY THESE

23   OTHER AGREEMENTS, YOU REALLY HAVEN'T SORT OF IDENTIFIED WHAT

24   THAT IS AND WHERE THAT STANDS WITH THE FOLKS AT ACACIA.

25         AND I THOUGHT THAT WAS A FAIRLY -- A FAIR POINT -- AT

1  LEAST HAVING SORT OF READ YOUR CORRESPONDENCE BACK AND FORTH.

2            CAN YOU SPEAK TO THAT.  HAVE YOU REALLY TEED THIS UP

3  WITH THEM?

4            MR. KLEIN:  YOUR HONOR, IT HAS BEEN BROUGHT UP AND

5  MEET AND CONFERS.  THERE WERE A LOT OF ISSUES.  BUT QUITE

6  FRANKLY, IT WAS JUST A STONEWALL.  IT WAS THESE ARE NOT

7  RELEVANT.

8            SO, YOU KNOW, AT FIRST IT WAS -- IT WAS QUITE A TASK

9  JUST TO FIGURE OUT IF THE PLAINTIFFS HAD POSSESSION OF THESE.

10  WERE WE GOING AFTER THE RIGHT PARTY.

11            AFTER WE -- AFTER WE DETERMINED THAT THAT WAS NOT THE

12  CASE, THAT ACACIA HAD THESE, THERE WERE SEVERAL MEET AND

13  CONFERS.  IT MAY NOT HAVE MADE IT INTO CORRESPONDENCE, BUT

14  CERTAINLY THE IDEA OF BEING INDEMNIFIED OR HAVING SOME

15  SUBLICENSE OR SOME LICENSE RIGHTS, EXHAUSTION PRINCIPLES THAT

16  FLOW DOWN WAS CERTAINLY DISCUSSED.  I'M NOT -- I'M NOT SURE

17  WHAT ELSE WE COULD HAVE DONE WITHOUT THE AGREEMENTS.

18            THEY CHARACTERIZE THAT THERE WERE NO AGREEMENTS AND

19  THAT THEY DIDN'T COVER OUR PRODUCTS.  I MEAN, BUT I THINK WE'RE

20  ENTITLED TO SEE THEM SO THAT WE CAN MAKE THAT DETERMINATION FOR

21  OURSELVES.

22            THE COURT:  ALL RIGHT.  WELL, I MEAN, I THINK THAT

23  PART OF MY DIFFICULTY IS MUCH WITH -- AND YOU PROBABLY HEARD

24  ONLY THE LAST PORTION OF IT -- BUT MUCH AS WITH THE FIRST

25  HEARING TODAY, IF I DON'T HAVE SORT OF -- PART OF OUR DISCOVERY

1    PROCESS RELIES ON THE PARTIES TO BASICALLY SET THE GOAL POST TO

2    SOME EXTENT SO THAT I MAKE SURE I LAND SOMEWHERE IN BETWEEN

3    THEM RATHER THAN, YOU KNOW -- PARTICULARLY IN A DIFFICULT

4    COMPLEX MATTER LIKE THIS, YOUR RISK IS GETTING SOMEONE WHOSE

5    PREDOMINANT BACKGROUND IS AS A FORMER FEDERAL CRIMINAL

6    PROSECUTOR WEIGHING IN ON YOUR COMPLEX PATENT DISPUTE.  YOU

7    KNOW, I MAY LAND THE SHIP SOMEWHERE OUTSIDE THE GOAL POSTS.

8            SO, IF YOU'VE SET THE GOAL POSTS IN TERMS OF

9    PROPOSALS FOR HOW TO -- HOW TO DEAL WITH THIS SORT OF

10   INCORPORATION ISSUE -- AND AS YOU SAY IF ONE -- IF THERE'S --

11   IF THEIR RESPONSE IS SIMPLY TO STONEWALL, THAT'S SOMETHING I

12   NEED TO UNDERSTAND.

13           ALL RIGHT.  AND I THINK I UNDERSTAND WHERE WE ARE AT

14   THAT POINT.

15           ANY COMMENTS ABOUT -- ANYTHING FURTHER -- I DON'T

16   WANT TO CUT YOU OFF ABOUT THE GLOBAL AGREEMENTS OR REALLY

17   ANYTHING ELSE.

18           MR. KLEIN:  YOUR HONOR, THE ONLY THING I'D SAY IS

19   THAT, YOU KNOW, THERE WERE TWO AGREEMENTS THAT WERE PRODUCED,

20   THE ORACLE AGREEMENT AND THE SAMSUNG AGREEMENT.  THEY'RE

21   HEAVILY REDACTED.  AND WE --

22           THE COURT:  I WAS GOING TO SAY I DON'T THINK THEY'RE

23   REALLY PRODUCED IN ANY WAY THAT'S SATISFACTORY TO YOU.

24           MR. KLEIN:  NO.  NO.  THERE'S NO -- THEY'RE NOT

25   CLAIMING ANY PRIVILEGE.  AND IT'S -- THERE'S JUST NO REASON TO

1    HAVE IT -- YOU KNOW, WE HAVE AN ADEQUATE PROTECTIVE ORDER IN

2    THE CASE.  AND WE'RE HAPPY TO LIMIT IT TO OUTSIDE COUNSEL ONLY

3    UNDER THAT PROTECTIVE ORDER.  BUT WE JUST CANNOT -- YOU KNOW,

4    WE REALLY CAN'T SEE WHAT -- WHAT'S GOING ON IN THIS AGREEMENT

5    TO --

6            AND, YOUR HONOR, IF YOU HAVE EXHIBIT M I CAN -- OR

7    EXHIBIT N, I CAN GIVE YOU A QUICK EXAMPLE OF SOMETHING THAT

8    REALLY GIVES US CAUSE FOR CONCERN.

9            THE COURT:  I DO.

10           GO AHEAD.

11           MR. KLEIN:  IF YOU LOOK AT EXHIBIT N, IF YOU LOOK AT

12   -- I'M LOOKING AT PAGE -- BATES NUMBER ARG.  AND IT'S I THINK

13   FIVE ZEROS AND A 6-1.

14           AND, AGAIN, THESE WERE NOT GIVEN TO THE PLAINTIFF.

15   THESE WERE PRODUCED BY ARG.  THESE ARE -- THESE ARE ACACIA

16   DOCUMENTS.  THEY ADMIT THAT THESE HAVE NOT BEEN GIVEN TO THE

17   PLAINTIFFS IN THE CASE.  SO, JUST WORTH NOTING.

18           BUT IF YOU LOOK AT THAT, THERE ARE THREE BOXES THAT

19   ARE -- THAT ARE -- THAT ARE REDACTED.  AND THEN I SEE MY

20   CLIENT'S NAME LENOVO JUST SITTING IN THE MIDDLE THERE.  AND I

21   DON'T KNOW WHAT -- WHAT HAS BEEN REDACTED, WHAT'S -- WHAT'S

22   HERE.  I MEAN, I THINK WE'RE ENTITLED TO -- YOU KNOW, THIS

23   BEING AN ENCUMBRANCE ON THE PATENTS THAT SPECIFICALLY

24   REFERENCES MY CLIENT, WE'RE ENTITLED TO SEE WHAT THIS SAYS.

25           THE COURT:  ALL RIGHT.

1           MR. KLEIN:  AND, AGAIN, YOU KNOW, JUST TO -- YOU

2    KNOW, THERE COULD BE OTHER AGREEMENTS, YOUR HONOR.  SO, I

3    WOULDN'T SAY OUR REQUEST IS LIMITED TO JUST THESE.  IF THERE

4    HAVE BEEN SUBSEQUENT AGREEMENTS TO THE -- TO THE RPX LICENSE,

5    WE WOULD ALSO REQUEST THAT THOSE BE PRODUCED AS WELL.  THEY

6    CERTAINLY ARE RELEVANT TO THE -- TO THE CLAIMS IN THIS PATENT.

7    AND ACCORDING TO THE RPX LICENSE, THERE ARE ENCUMBRANCES ON THE

8    PATENTS THAT MAKE THEM AT LEAST RELEVANT TO THE BROAD DISCOVERY

9    REQUIREMENTS OF RULE 26.

10          UNLESS YOUR HONOR HAS ANY QUESTIONS, THAT'S ALL I

11   HAVE.

12          THE COURT:  OKAY.   THANK YOU.

13          MR. LINDINGER, DID YOU WANT TO BE HEARD ON ANYTHING

14   OR ADD TO MR. KLEIN'S COMMENTS?

15          MR. LINDINGER:  NOT ON THE FIRST ISSUE, YOUR HONOR.

16          I WOULD LIKE TO BRIEFLY ADDRESS THE FTC DOCUMENT

17   ISSUE ONCE THE FIRST ONE IS RESOLVED AND JUST BRIEFLY.

18          THE COURT:  WELL, WE'RE GOING TO HEAR FROM YOU FOLKS

19   FIRST.  SO, WHY DON'T YOU ADDRESS THE FTC ISSUE.  AND THAT WAY

20   WE HAVE ALL KINDS OF THINGS FOR MS. MULLEN AND MR. RAM TO SHOOT

21   AT.

22          MR. LINDINGER:  THANK YOU, YOUR HONOR.

23          MR. KLEIN:  IF I MAY HAVE ONE SECOND.

24          YOUR HONOR, IT DIDN'T COME UP.  BUT ONE OF THE THINGS

25   WE'RE ALSO SEEKING ARE ANY RELATED COMMUNICATIONS TO THOSE

1  GLOBAL AGREEMENTS THAT -- THAT WOULD NOT HAVE BEEN PRODUCED TO

2  THE PLAINTIFFS AS WELL.

3            THE COURT:  WELL, ANOTHER ISSUE --

4            MR. KLEIN:  I JUST WANTED TO --

5            THE COURT:  THAT RAISES ANOTHER ISSUE THAT I THINK I

6  DID NOT RAISE IN MY TENTATIVE BECAUSE TO SOME EXTENT MY

7  TENTATIVE WOULD HAVE AVOIDED THE ISSUE.

8            WELL, GO AHEAD.  WE'LL SORT OF HAVE TO DEAL WITH THAT

9  AS IT COMES UP.

10           MR. LINDINGER, GO AHEAD.

11           MR. LINDINGER:  THANK YOU, YOUR HONOR.  AND I SECOND

12  MR. KLEIN'S FEELINGS AS FAR AS SPENDING THE TIME AND GIVING US

13  THIS TENTATIVE ORDER.

14           ON THE FTC-DOCUMENT ISSUE, I THINK THE COURT

15  RECOGNIZES THAT THERE'S RELEVANCY IN THESE DOCUMENTS.

16           NOW, WE UNDERSTAND THAT THERE IS NOT A MILLION-PLUS

17  PAGES OF RELEVANT DOCUMENTS.  HOWEVER, WE HEARD FOR THE FIRST

18  TIME IN THE BRIEFING THE ACTUAL VOLUME AND SCOPE OF THE FTC

19  PRODUCTION.  AT NO POINT DID THEY SAY THERE WAS A MILLION-PLUS

20  DOCUMENTS.

21           AS MR. KLEIN INDICATED, THE VAST MAJORITY OF OUR MEET

22  AND CONFERS AND AS REPRESENTED IN THE CORRESPONDENCES BETWEEN

23  THE PARTIES INVOLVE MOSTLY STONEWALLING.  THEY BASICALLY --

24  ACACIA BASICALLY COMMUNICATED TO US THAT THIS FTC PRODUCTION IS

25  NOT RELEVANT.  WE'RE JUST NOT GOING TO PRODUCE IT.

1          I DON'T THINK THERE'S ANY QUESTION THAT PLAINTIFFS DO

2    NOT HAVE THIS IN THEIR POSSESSION.  THIS IS NOT A CIRCUMSTANCE

3    WHERE WE'RE SEEKING DUPLICATIVE DISCOVERY.  I DON'T -- TO OUR

4    KNOWLEDGE ACACIA HAS NOT PROVIDED THIS TO PLAINTIFFS TO

5    PRODUCE.

6          SO, I THINK AT LEAST AS FAR AS GOING AFTER THE RIGHT

7    PARTY, WE ARE DEFINITELY GOING AFTER THE RIGHT PARTY.  AND IT'S

8    RIPE TO BRING TO THE COURT'S ATTENTION HERE.

9          THE COURT:  WELL, MY CONCERN WITH RESPECT TO THE FTC

10   INVESTIGATION IS I FLIPPED THROUGH THE FTC -- I'M GOING TO CALL

11   IT A DOCUMENT REQUEST.  AND I DON'T SPEAK FTC -- THE FTC

12   INVESTIGATION REQUEST.  AND IT SEEKS -- I DON'T WANT TO CALL IT

13   -- IT SEEKS THE WHOLE ENCHILADA FROM ACACIA -- I MEAN, YOU

14   KNOW, EVERYTHING FROM -- FROM SOUP TO NUTS AND EVERYTHING IN

15   BETWEEN.

16          AND, YOU KNOW, NOT TO -- YOU'RE NOT ENTITLED TO THE

17   SOUP, THE NUTS, AND A GREAT DEAL OF WHAT'S IN BETWEEN.  YOU

18   MIGHT BE ENTITLED TO -- AND I THINK THE REFERENCE YOU -- THE

19   ARGUMENT YOU MADE IS YOU'RE ENTITLED TO THE INFORMATION ABOUT

20   SOME LICENSING PRACTICES SO THAT YOU CAN DETERMINE WHETHER THE

21   LICENSING DEALS YOU WERE OFFERED OR I THINK WHAT HAPPENED HERE

22   WAS IN ACCORDANCE WITH ACACIA'S GENERAL LICENSING PRACTICES.

23          I MAY AGREE WITH YOU, BUT THOSE REQUESTS WOULD BE I

24   THINK SORT OF A VERY SMALL PORTION OF THE FTC INVESTIGATION.

25   AND AS I SAID, IF YOU SOUGHT THAT, WE COULD DEAL WITH THAT.

1   BUT WE'RE -- I DON'T SEE A BASIS FOR ORDERING SORT OF THE WHOLE

2   ENCHILADA.

3              MR. LINDINGER:  I THINK WE HAVE A COUPLE OF

4   PROPOSALS, YOUR HONOR, THAT MAY GO TOWARDS RESOLVING THAT

5   CONCERN.

6              FIRST OFF, THERE WAS AN ARGUMENT ABOUT THE TEMPORAL

7   SCOPE.

8              THE FTC REQUEST ITSELF CABINS THE SCOPE AS FAR AS THE

9   TIME FROM JANUARY 1ST OF 2009 TO THE DATE OF THE REQUEST, WHICH

10  WAS I BELIEVE SEPTEMBER OF 2014.

11             THE PATENTS-IN-SUIT WERE ACQUIRED BY ACACIA IN

12  JANUARY OF 2013, SO SMACK RIGHT IN THE MIDDLE OF THE RELEVANT

13  TIME PERIOD OF THE FTC REQUEST.  SO, THERE'S NO DOUBT THAT

14  THERE ARE RELEVANT DOCUMENTS RELATED TO THE PATENTS-IN-SUIT IN

15  ADDITION TO LICENSING PRACTICES AND SUCH AS YOUR HONOR

16  IDENTIFIED.

17             HAD WE KNOWN THE SCOPE OF THIS, WE COULD HAVE WORKED

18  WITH ACACIA BEFORE THIS DISPUTE WAS -- WAS FILED, THE JOINT

19  STIPULATION.  BUT AS MR. KLEIN INDICATED, WE HAVE CONCERNS AS

20  FAR AS WHERE THEY DRAW THE LINE AS FAR AS RELEVANCE.

21             IT'S CLEAR -- AND WE'LL GET TO THIS IN THE

22  COMMON-INTEREST PORTION OF THE ARGUMENT TODAY.  BUT IT'S CLEAR

23  THAT THERE ARE DOCUMENTS THAT ARE OUT THERE THAT ARE -- THAT

24  HAVE BEEN SHARED WITH ACACIA THAT ARE IN ACACIA'S POSSESSION

25  THAT PLAINTIFFS HAVE NEVER BEEN GIVEN.

1           AND OUR CONCERN IS IF WE TRY TO IDENTIFY CERTAIN

2    CATEGORIES OF DOCUMENTS WITHIN THE FTC REQUEST, WE'RE GOING TO

3    BE RIGHT BACK HERE BECAUSE THEY'RE GOING TO BE DRAWING THE

4    RELEVANCY LINES IN A WAY THAT EXCLUDES RELEVANT DOCUMENTS.

5           TO ALLEVIATE THAT CONCERN, YOUR HONOR, FIRST, WE

6    PROPOSE THAT THEY CAN PLACE THE ENTIRETY OF THE FTC PRODUCTION

7    ON A STAND-ALONE COMPUTER, WHETHER CONNECTED TO A PRINTER OR

8    NOT, IN A SIMILAR FASHION AS LG HAS PRODUCED HIGHLY TECHNICAL

9    DOCUMENTS IN THIS CASE.  BASICALLY THERE'S A STAND-ALONE

10   COMPUTER WITH ALL THE PORTS SOLDERED SO YOU CAN'T HOOK UP ANY

11   USB DRIVES OR THUMBDRIVES OR ANYTHING TO IT.

12          AND WHETHER WE CAN COMMUNICATE A REASONABLE LIST OF

13   DOCUMENTS FOR ACACIA TO PRODUCE, OR WE CAN JUST DIRECTLY PRINT

14   THEM AND IDENTIFY THEM AND TELL ACACIA WHAT SMALL SUBSET OF

15   DOCUMENTS WE'RE IDENTIFYING, WE BELIEVE AS LONG AS THE FTC

16   DATABASE OR THE FTC PRODUCTION IS SEARCHABLE IN A WAY THAT WE

17   CAN GO IN AND RUN OUR OWN RELEVANCY SEARCHES, WE'LL PRODUCE OR

18   WE'LL IDENTIFY A SMALL SUBSET OF DOCUMENTS.

19          THE OTHER ALTERNATIVE IS LG IS WILLING TO SHARE THE

20   COSTS WITH ACACIA.  ACACIA IDENTIFIED ADDITIONAL ATTORNEY

21   REVIEW TIME AND BATES STAMPING AND PRODUCTION COSTS.

22          FIRST OFF, AS MR. KLEIN INDICATED, WE HAVE A

23   GOVERNING PROTECTIVE ORDER IN THIS CASE.  THEY CAN EASILY AFFIX

24   A HIGHLY CONFIDENTIAL ATTORNEY'S EYES ONLY TO EVERY SINGLE

25   DOCUMENT.  AND THAT TAKES MINUTES IF NOT AN HOUR

1   ELECTRONICALLY.

2          LG IS WILLING TO SHARE THE COSTS IF THEY WANT TO

3   PRODUCE THE WHOLE -- AS THE COURT SAYS, THE WHOLE ENCHILADA TO

4   US.  AND THEN WE CAN REVIEW IT AGAIN.  AND WE CAN RUN OUR OWN

5   RELEVANCY SEARCHES AND OUR DOCUMENT REVIEW TOOLS AND USE THE

6   APPROPRIATE DOCUMENTS.

7          I THINK EITHER ONE OF THOSE ALTERNATIVES, LG, THE

8   DEFENDANTS, WILL BE FINE WITH.  AND I THINK THAT ALLEVIATES THE

9   CONCERN WITH THE COURT AS WELL AS IT ALLEVIATES OUR CONCERN AS

10  FAR AS WHERE THEY DRAW THE LINES REGARDING RELEVANCY.

11         THE COURT:  OKAY.  I HEAR BOTH THOSE PROPOSALS AND I

12  UNDERSTAND THEM.

13         (PAUSE IN PROCEEDINGS.)

14         MR. LINDINGER:  IF YOU HAVE ANYTHING FURTHER, YOUR

15  HONOR --

16         THE COURT:  NO, I DON'T.

17         MR. LINDINGER:  -- I MEAN, I WANTED TO BE BRIEF ON

18  THIS TOPIC.

19         THE COURT:  OKAY.  I WANTED TO -- IF YOU WANTED TO

20  TURN THEN TO THE NEXT ISSUE AND/OR WE CAN INVITE THE FOLKS FROM

21  ACACIA TO RESPOND.

22         LET'S HEAR FROM ACACIA THEN.

23         MR. LINDINGER:  OKAY.

24         THE COURT:  LET'S TALK TO MR. ANERIA REAL QUICK.  I

25  DON'T WANT TO KEEP HIM WAITING.

1               IT'S 10:30.

2               (THE COURT AND CLERK CONFERRING.)

3               (PROCEEDING HEARD IN UNRELATED MATTER.)

4               THE COURT:  ALL RIGHT.  BACK TO LENOVO V. ACACIA.

5               MS. MULLEN OR MR. RAM, YOU'RE INVITED TO RESPOND.

6               MS. MULLEN:  GOOD MORNING, YOUR HONOR.

7               JESSICA MULLEN ON BEHALF OF ACACIA RESEARCH GROUP AND

8   ACACIA RESEARCH CORPORATION.

9               WOULD YOU LIKE TO ADDRESS THE GLOBAL LICENSE

10  AGREEMENTS FIRST, THEN THE FTC?

11              THE COURT:  I WOULD.  OBVIOUSLY THE COURT'S TENTATIVE

12  WAS THAT I THOUGHT THE GLOBAL AGREEMENTS -- I AGREE WITH ACACIA

13  THAT THE GLOBAL AGREEMENTS WERE NOT RELEVANT.  HOWEVER, I WOULD

14  -- I WOULD BE SIMILARLY CONCERNED IF I WERE MR. KLEIN AND I

15  LOOKED AT EXHIBIT N AND SAW SORT OF LENOVO SPECIFICALLY CALLED

16  OUT ON A SUBEXHIBIT AS A PARTICULAR PARTY THAT WAS EXEMPTED

17  FROM A COVENANT.

18              SO, I UNDERSTAND FROM ACACIA'S CONCERNS YOU PROBABLY

19  HAVE A LOT OF THIRD-PARTY CONFIDENTIAL ISSUES TO DEAL WITH, AND

20  YOU PROBABLY ALREADY RECEIVED SOME OBJECTIONS TO THE DISCLOSURE

21  OF THESE AGREEMENTS EVEN UNDER AN ATTORNEY'S-EYES-ONLY

22  PROVISION.

23              HOW DO WE SORT OF UNTANGLE THIS?

24              MS. MULLEN:  WELL, I'D LIKE TO THANK YOU FIRST FOR

25  YOUR TENTATIVE, AND WE AGREE WITH YOUR REASONING WITHIN.

1          I THINK THE IMPORTANT THING TO REMEMBER IS THAT THE

2    GLOBAL AGREEMENTS AT ISSUE HERE PREDATE THE ACQUISITION OF

3    CERTAIN PATENTS THAT ARE RELEVANT IN THE DELAWARE LITIGATION.

4          SO, HOW ANY ENCUMBRANCE OR COVENANT NOT TO SUE THESE

5    COUNTERPARTIES CAN BE RELEVANT TO THEIR DAMAGE CLAIM THEY HAVE

6    NOT MADE CLEAR.

7          THE COURT:  AND I AGREE WITH THAT.

8          MY CONCERN I THINK IS THE EXTENT TO WHICH -- TO SPEAK

9    NONPATENTEES FOR A MOMENT, BUT THERE ARE SORT OF ISSUES WITH

10   THE SORT OF CHAIN OF TITLE OR INTERESTS THAT ARE OUT THERE ON

11   THESE PARTICULAR PATENTS.  I THINK THAT LG AND LENOVO ARE

12   ENTITLED TO AN IN-DEPTH EXPLORATION OF THOSE ISSUES.  AND

13   OBVIOUSLY THE FACT THAT THESE ARE LISTED AS THE ENCUMBRANCES

14   HERE IN EXHIBIT O AT LEAST RAISE THAT SPECTRE.  THAT ONLY GETS

15   -- THAT CONCERN ONLY BECOMES HEIGHTENED I THINK WHEN -- AND,

16   AGAIN, I HAVEN'T REVIEWED EXHIBIT N CAREFULLY, AND I'M NOT SURE

17   HOW MUCH LIGHT THAT WOULD EVEN SHED GIVEN THAT I THINK 80

18   PERCENT OF IT IS REDACTED.

19          HOW DO WE ALLAY -- HOW DO I ALLAY ANY CONCERNS I MAY

20   HAVE ON THAT ISSUE?

21          MS. MULLEN:  I THINK IT'S IMPORTANT TO UNDERSTAND

22   THAT THE ACTUAL ASSERTED PATENTS ARE NOT BEING LICENSED BY ANY

23   OF THESE AGREEMENTS, AND THEY'RE NOT EVEN REFERENCED.  AND THEY

24   WERE NOT CONTEMPLATED BY ANY OF THESE AGREEMENTS.

25          WHEN THESE AGREEMENTS WERE ENTERED INTO THERE WASN'T

1   ANY CONSIDERATION FOR ANY ECONOMIC VALUE.  AND THAT'S BEEN THE

2   ARGUMENT THAT BOTH MOVANTS HAVE ADVANCED DURING MEET AND

3   CONFER.

4        THIS NEW ARGUMENT THEY'RE ADVANCING THAT THEIR

5   PRODUCTS MAY, YOU KNOW, CONTAIN MICROSOFT-SUPPLIED PRODUCTS WAS

6   NOT RAISED.  AND, IN FACT, I TWICE STATED THAT UNDERSTANDING OF

7   ACACIA'S IN WRITING THAT WE BELIEVED THERE WAS NO GLOBAL

8   COUNTERPARTY SUPPLIED PRODUCTS BEING ACCUSED IN THIS CASE.

9        TO THE EXTENT THAT MR. KLEIN IS CONCERNED THAT HIS

10  CLIENT'S NAME APPEARS ON ONE OF THESE EXHIBITS, WE'RE HAPPY TO

11  MEET AND CONFER ABOUT THE REDACTIONS AND ALLOW HIM TO DISCUSS

12  WITH US REMOVING THAT REDACTION.

13       BUT THE ARGUMENT THAT IT HAS BEEN ADVANCED DURING THE

14  PARTIES' MEET AND CONFER IS THAT THESE GLOBAL LICENSING

15  AGREEMENTS, WHICH DO NOT LICENSE ANY OF THE ASSERTED PATENTS IN

16  THE DELAWARE LITIGATION, WERE RELEVANT TO THEIR DAMAGES.

17       AND THEY'RE NOT BECAUSE THERE'S NO ECONOMIC VALUE

18  BEING SET FOR ANY OF THE ASSERTED PATENTS BECAUSE ACACIA DID

19  NOT EVEN ACQUIRE THEM WHEN WE ENTERED INTO THESE AGREEMENTS.

20       THE COURT:  AND I -- I THINK THE TENTATIVE ADOPTS

21  THAT ARGUMENT.

22       MS. MULLEN:  AND WE AGREE WITH YOUR REASONING THERE.

23       THE COURT:  SO, I THINK THAT THE CONCERN THEN IS AS

24  YOU'VE INDICATED THE SORT OF THE SCOPE OF THE REDACTIONS THAT I

25  WAS TRYING TO FIND IN EXHIBIT N.  AND MR. KLEIN REFERENCED PAGE

1    61, AND I THINK THAT RELATES BACK TO THE PROVISION ON PAGES 32

2    AND 33, WHICH SEEMS TO DEAL WITH A FAIRLY REMOTE, ALTHOUGH

3    PERHAPS IN THE WORLD OF TECHNOLOGY NOT THAT REMOTE, ISSUE OF

4    SOMEONE ACQUIRING ANOTHER.  AND ESSENTIALLY LENOVO AND OTHERS

5    BEING EXCEPTED FROM THAT LIST.

6            AM I READING THAT CORRECTLY?

7            MS. MULLEN:  JUST AS BACKGROUND, I THINK BASED ON

8    YOUR TENTATIVE YOU UNDERSTAND THE MECHANICS OF THESE GLOBALS

9    PRETTY WELL.  BUT THEY ESSENTIALLY IDENTIFY --

10            THE COURT:  DON'T ASSUME THAT.  I JUST -- I HAVE A

11    REMARKABLE ABILITY TO FAKE IT.

12            MS. MULLEN:  AND I'M SPEAKING GENERALLY BECAUSE, YOU

13    KNOW, THERE ARE FOUR GLOBAL AGREEMENTS AND THEY'RE SLIGHTLY

14    DIFFERENT.  BUT GENERALLY ACACIA ENTERS INTO THESE AGREEMENTS

15    WITH ANOTHER PARTY.  THERE'S AN EXHIBIT LISTING EACH OF ACACIA

16    AND ITS AFFILIATES' EXISTING PATENTS.

17            CERTAIN PATENTS ARE LICENSED BY A COUNTERPARTY --

18    MICROSOFT, GLOBAL, SAMSUNG.  THE OTHER ONES ARE NOT.  AND

19    THERE'S JUST A COVENANT NOT TO SUE THAT COUNTERPARTY.

20            WHEN WE ENTERED INTO THESE AGREEMENTS AT ISSUE, THESE

21    FOUR GLOBALS, ACACIA DID NOT YET OWN THE ASSERTED PATENTS THAT

22    ARE IN DISPUTE IN DELAWARE.  SO, THEY WERE NOT LISTED AS

23    EXISTING PATENTS, LICENSED PATENTS OR COVENANT PATENTS.

24            AND THAT'S CLEAR BY THE FACT THAT MICROSOFT DID ENTER

25    INTO A LATER AGREEMENT WITH ACACIA WHERE IT DID LICENSE THE

1  ASSERTED PATENTS, AND THAT AGREEMENT IS RELEVANT.  AND THAT'S

2  BEEN PRODUCED IN THIS ACTION BY PLAINTIFFS.

3            HOWEVER, THESE AGREEMENTS DO NOT DO THAT.  THEY DON'T

4  PROVIDE ANY ECONOMIC TERMS OR VALUE THAT COULD EVER BE RELEVANT

5  TO THEIR DAMAGES CLAIM WHICH THEY'VE BEEN ARGUING THROUGHOUT

6  THE MEET AND CONFER PROCESS.

7            THE COURT:  OKAY.

8            ALL RIGHT.  DID YOU WANT TO COMMENT AT ALL ON THE FTC

9  ISSUE.  AND THEN WE CAN TURN THEN FINALLY TO THE

10  COMMON-INTEREST ISSUES.

11            MS. MULLEN:  IT APPEARS FROM THE TENTATIVE THAT THE

12  COURT HAD MADE UP ITS MIND, AND WE AGREE WITH THE THOUGHTFUL

13  REASONING IN THE TENTATIVE.  OUR POSITIONS ARE SET FORTH IN THE

14  PAPERS.

15            BUT I WOULD JUST NOTE THAT THERE WERE ADDITIONAL

16  REQUESTS IN THE MOVANT'S SUBPOENAS TO ACACIA THAT SPECIFICALLY

17  ASKED FOR A SUBSET OF AGREEMENTS WITHIN THE FTC PRODUCTION

18  THEY'RE NOW ARGUING FOR.

19            THEIR SUBPOENA CONTAINED A REQUEST THAT ASKED FOR

20  DOCUMENTS RELATING TO LICENSING PRACTICES, COMPENSATION FOR

21  LICENSING PRACTICES.

22            AND YOU CAN SEE IN MY WRITTEN LETTERS TO MY

23  DECLARATION --

24            THE COURT:  HELP ME REAL QUICK JUST BECAUSE --

25            MS. MULLEN:  SURE.

1          THE COURT: -- I DON'T HAVE IT FRONT OF ME.

2          WHICH -- WHERE IS THE ACTUAL SUBPOENA IN THE

3     DOCUMENTS THAT WERE SUBMITTED?

4          MS. MULLEN:  I BELIEVE IT'S ATTACHED TO MOVANT'S

5     DECLARATION.  IT'S PART OF THEIR JOINT STIPULATION.

6          THE COURT:  IT'S EITHER ATTACHED TO YOUR -- YOUR

7     SUBPOENA -- ALL RIGHT.  I'VE GOT IT.  I FIGURED IT WAS EXHIBIT

8     A TO SOMEBODY.

9          (PAUSE IN PROCEEDINGS.)

10          THE COURT:  ONE OF THE THINGS I WONDERED -- AND

11     YOU'RE NOW RAISING IT DIRECTLY.  ONE OF THE THINGS I WONDERED

12     WHEN MR. LINDINGER WAS TALKING WAS WERE THERE MORE SPECIFIC

13     REQUESTS THAT WERE MORE NARROWLY TAILORED TO ACQUIRE FROM

14     ACACIA SOME OF THE TYPES OF DOCUMENTS.

15          THERE MAY HAVE BEEN IN THE FTC -- FTC PRODUCTION, AND

16     THAT THE PARTIES HAVE HAD DISCUSSIONS ABOUT AND/OR AGREEMENT --

17     REACHED AGREEMENT ON THAT AREN'T BEFORE ME.  AND OBVIOUSLY

18     THERE ARE A GREAT MANY RFPS THAT ARE IN THE CATEGORY OF NOT

19     BEFORE ME AT THIS TIME.

20          AND I THINK THAT'S WHAT YOU'RE RAISING IS THAT THOSE

21     PRODUCTIONS ARE BEING MADE AND THAT LENOVO AND LG WILL RECEIVE

22     THOSE DOCUMENTS.

23          MS. MULLEN:  YES, YOUR HONOR.  THOSE WERE REQUESTS

24     THAT WE MET AND CONFERRED ON FOR SEVERAL MONTHS.  AND THOSE ARE

25     REQUESTS THAT MOVANTS ARE NOT MOVING TO COMPEL HERE.  RATHER,

1   THEY'RE MOVING TO COMPEL AN ENTIRE PRODUCTION TO THE FTC, WHICH

2   IS PATENTLY OVERBROAD AND NOT REASONABLY CALCULATED TO LEAD TO

3   THE DISCOVERY OF ADMISSIBLE EVIDENCE AS YOU POINT OUT IN YOUR

4   TENTATIVE.

5           AND THESE MORE SPECIFICALLY DRAFTED REQUESTS ARE NOT

6   WHAT'S AT ISSUE HERE AND NOT WHAT THEY CHOSE TO MOVE TO COMPEL.

7           THE COURT:  ALL RIGHT.

8           NOW, LET'S TALK ABOUT THE COMMON-INTEREST PRIVILEGE.

9           I THINK THAT THE REQUEST FOR INFORMATION ABOUT

10  VALUATIONS OR VALIDITY, INVALIDITY, ET CETERA, ET CETERA

11  RELATED TO THE PATENTS-IN-SUIT COULD BE -- IT WOULD BE PROBABLY

12  AS SOME OF THESE OTHER REQUESTS ARE IT COULD BE POTENTIALLY

13  RELEVANT TO THE EXTENT THAT THEY ARE NOT DUPLICATIVE OF

14  INFORMATION PRODUCED BY THE PLAINTIFFS.  AND I THINK THAT GIVEN

15  THAT, AS I ALLUDED TO EARLIER, THE GAPS IN SORT OF THE CHAIN OF

16  TITLE THE TIMING FOR A WHILE OF THESE PARTICULAR

17  PATENTS-IN-SUIT STAYED IN THE ACACIA PORTFOLIO BEFORE THEY WERE

18  TRANSFERRED TO DDG AND IDT.

19          SO, THERE MAY BE SOME DOCUMENTS OUT THERE THAT ARE

20  WITHIN ACACIA'S CUSTODY, POSSESSION -- POSSESSION, CUSTODY OR

21  CONTROL.

22          DO WE NEED A PRIVILEGE LOG FOR THOSE DOCUMENTS?

23          MS. MULLEN:  WELL, JUST TO BE CLEAR, YOUR HONOR,

24  THERE IS NO GAPS IN THE DOCUMENTS BETWEEN WHAT ACACIA AND THE

25  SUBSIDIARY PLAINTIFFS HAVE.  WE HAVE IDENTICAL ACCESS TO THE

1    EXACT SAME DOCUMENTS.

2            TO THE EXTENT THAT ACACIA HAS A RESPONSIVE DOCUMENTS,

3    PLAINTIFFS HAVE OR HAVE BEEN GRANTED ACCESS TO THAT EXACT

4    DOCUMENT, WHETHER IT'S ON THE SERVER OR IT'S A HARD COPY IN A

5    FILE.

6            THE COURT:  I'M PREPARED --

7            MS. MULLEN:  AND THEY HAVE THE SAME RIGHT --

8            THE COURT:  -- TO ACCEPT THAT REPRESENTATION.  AND I

9    THINK THAT THE ISSUE THEN IS --

10            WE'LL TURN BACK TO OUR FRIENDS FROM LENOVO AND LG IN

11   A MINUTE --

12            IF THAT'S THE REPRESENTATION THAT ACACIA IS GOING TO

13   MAKE, AND I DON'T KNOW WHO REPRESENTS THE PLAINTIFFS.  IF THE

14   PLAINTIFF'S COUNSEL IS GOING TO MAKE A PRIVILEGE LOG, AND THE

15   PARTIES ARE GOING TO BE LITIGATING COMMON-INTEREST PRIVILEGE

16   BEFORE THE COURT IN DELAWARE, THAT APPEARS TO ME TO BE THE

17   PLACE FOR THAT TO HAPPEN.  BUT I'LL INVITE THEM TO COMMENT.

18            ANYTHING ELSE ON THE COMMON-INTEREST PRIVILEGE?

19            MS. MULLEN:  WELL, I WOULD JUST LIKE TO SAY THAT,

20   FIRSTLY, PLAINTIFFS HAVE PRODUCED A PRIVILEGE LOG.  AND THAT

21   THAT PRIVILEGE LOG WOULD IDENTIFY THE EXACT SAME DOCUMENTS THAT

22   AN ACACIA PRIVILEGE LOG WOULD IDENTIFY.  AND, SO --

23            THE COURT:  AND I AM NOT -- I AM NOT INTERESTED IN

24   SECOND GUESSING OR EVEN FIRST GUESSING THE COURT IN DELAWARE

25   WITH RESPECT TO THE COMMON-INTEREST ISSUES.

1          MS. MULLEN:  AND, SECONDLY, AS COUNSEL ALLUDED TO,

2     MOVANTS FILED A MOTION TO COMPEL AGAINST RAMBUS THREE DAYS

3     AFTER FILING THE JOINT STIPULATION HERE SEEKING THE EXACT

4     COMMON-INTEREST PRIVILEGE, COMMUNICATIONS AND DOCUMENTS

5     EXCHANGED BETWEEN RAMBUS AND ACACIA.  AND THOSE MOVING PAPERS

6     ARE ATTACHED AS EXHIBITS TO MY SUPPLEMENTAL DECLARATION.  AND

7     YOU CAN SEE THE ALMOST IDENTICAL PRIVILEGE CHALLENGES AND

8     ARGUMENTS BEING MADE OVER IN THE DELAWARE COURT.

9          AND THIS LAST FRIDAY BOTH SIDES REQUESTED ORAL

10     ARGUMENT ON THE ISSUE BEFORE THE DELAWARE COURT.

11          AND WE THINK HERE THAT IT MAKES SENSE TO ALLOW THE

12     DELAWARE COURT TO MAKE A DECISION.  IF THE COURT ORDERS

13     PRODUCTION OF DOCUMENTS, ACACIA WILL COMPLY WITH THAT ORDER.

14     BUT WE BELIEVE THAT THIS IS AN ISSUE THAT IS BETTER DECIDED BY

15     THE DELAWARE COURT THAT HAS PRIVILEGE LOGS AND A VERY DEVELOPED

16     RECORD IN FRONT OF IT.

17          THE COURT:  IF THE DELAWARE COURT ORDERS PRODUCTION,

18     WOULD -- AND IF YOUR EARLIER REPRESENTATION IS CORRECT, WHAT

19     WOULD -- THEY'RE GOING TO GET EVERYTHING THEY NEED FROM

20     PLAINTIFFS, AREN'T THEY?

21          MS. MULLEN:  CORRECT.

22          THE COURT:  OKAY.  I MEAN, SO -- WOULD BE SIMPLY AN

23     EXERCISE IN -- WHICH I THINK I WANT TO AVOID.  IT WOULD BE AN

24     EXERCISE IN I DON'T WANT TO SAY FUTILITY BUT IT WOULD BE -- IT

25     WOULD NOT BE A WORTHWHILE EXERCISE TO HAVE ACACIA PUT DIFFERENT

32

1 | BATES NUMBERS ON THE SAME DOCUMENTS.

2 | MS. MULLEN:  NO.

3 | THE COURT:  ALL RIGHT.

4 | MS. MULLEN:  I AGREE, YOUR HONOR.

5 | THE COURT:  ALL RIGHT.

6 | LET'S GO BACK TO THE MOVANTS AND ASK THEM TO SORT OF

7 | RESPOND ON THE COMMON-INTEREST ISSUE.

8 | IF MS. MULLEN IS CORRECT THAT EVERYTHING ACACIA HAS

9 | IS IN THE HANDS OF THE PLAINTIFFS, WHY -- WHY DO YOU WANT ME TO

10 | GET INVOLVED?

11 | MR. LINDINGER:  YES, YOUR HONOR.

12 | FIRST, AT NO POINT HAVE WE ASKED FOR DUPLICATIVE

13 | DOCUMENTS.  WE WANT TO MAKE THAT VERY CLEAR.  WE'RE NOT ASKING

14 | THEM TO PRODUCE THE EXACT SAME DOCUMENTS.  WHAT WE HAVE AN

15 | ISSUE WITH, AND WHAT WE HAVE SEEN IS BOTH PLAINTIFFS IN THE

16 | DELAWARE CASE AND RAMBUS, THE PARTY THAT IS SUBJECT TO THE

17 | PENDING MOTION TO COMPEL IN DELAWARE -- BOTH PARTIES HAVE

18 | PRODUCED PRIVILEGE LOGS.

19 | WE HAVE LOOKED AT BOTH OF THOSE PRIVILEGE LOGS.  AND

20 | THERE ARE DOCUMENTS THAT APPEAR ON RAMBUS'S PRIVILEGE LOG THAT

21 | DO NOT APPEAR ON PLAINTIFFS, THAT DISCUSS HOW ACACIA HAS BEEN

22 | CC'D ON DOCUMENTS, OR CERTAIN TECHNICAL AND PRODUCT REVIEW

23 | DOCUMENTS HAVE BEEN SHARED WITH ACACIA.

24 | AND EVEN GIVING THE PLAINTIFFS THE BENEFIT OF THE

25 | DOUBT WITH HOW THEY -- THEIR DESCRIPTIONS WERE ON THEIR

1    PRIVILEGE LOG -- WHICH HAVE BEEN DEFICIENT, AND WE'LL TAKE THAT

2    ISSUE UP WITH THE DELAWARE COURT -- THE DATES DON'T MATCH UP.

3              SO, WE'RE A LITTLE BIT AT A LOSS WHEN MS. MULLEN

4    STATES THAT PLAINTIFFS HAVE EVERYTHING.  WE UNDERSTAND THAT

5    PLAINTIFFS HAVE ACCESS TO A NETWORK OR A SHARED DRIVE WHERE

6    THEY CAN PULL DOCUMENTS DOWN.  AND, THEN, THEY CAN REVIEW THEM

7    AND PRODUCE THEM.

8              BUT IF THE DOCUMENTS ARE NOT IN THIS COMMON AREA TO

9    BEGIN WITH, THAT'S WHAT WE HAVE AN ISSUE WITH, YOUR HONOR.

10             AND WE AGREE WE'RE FINE WITH MS. MULLEN'S

11   REPRESENTATION THAT THE COURT DOESN'T NEED TO WADE TOO MUCH

12   INTO THE COMMON-INTEREST ISSUE, AND THE DELAWARE COURT CAN

13   DECIDE THAT.  WE'RE FINE WITH THAT TODAY.

14             I THINK AT A MINIMUM, THOUGH, WE DO NEED A PRIVILEGE

15   LOG FROM ACACIA.  WE ASKED THEM DURING THE MEET AND CONFERS FOR

16   A PRIVILEGE LOG SO WE CAN ASSESS WHAT DOCUMENTS THERE ARE.  AND

17   THEY HAVE SAID SIMPLY, WELL, IT'S DUPLICATIVE.  WHATEVER THE

18   PLAINTIFFS HAVE YOU'LL HAVE SO WE'RE NOT GOING TO PRODUCE A

19   PRIVILEGE LOG.  IT'S TOO BURDENSOME.  THAT'S IN EXHIBIT Q TO

20   THE SUPPLEMENTAL BRIEFING ON PAGE -- PAGE 2.  I'LL PUT IT ON

21   ELMO.

22             THEY BASICALLY SAID IT'S AN UNDUE AND UNNECESSARY

23   BURDEN AND COST TO PRODUCE A PRIVILEGE LOG.

24             SO, TO THE EXTENT THE PLAINTIFFS HAVE -- OR TO THE

25   EXTENT ACACIA HAS INDICATED THAT THIS ISN'T RIGHT, THAT THEY'D

1   BE HAPPY TO PROVIDE A PRIVILEGE LOG, WE AGREE.  THEY SHOULD BE

2   PROVIDING A PRIVILEGE LOG.  WE'VE ASKED.  AND WE'RE KIND OF AT

3   A ROPE'S END.  THAT'S WHY WE BROUGHT THIS MOTION BEFORE THE

4   COURT.

5            SO, THERE ARE -- I HAVE PRINT-OUTS OF THE RAMBUS

6   PRIVILEGE LOG.  IF THE COURT WANTS TO SEE THAT, OR IF WE WANT

7   TO SUBMIT THAT IN A SUPPLEMENTAL FILING.

8            BUT THERE ARE CLEARLY DOCUMENTS THAT ARE IN

9   PLAINTIFF'S POSSESSION -- OR I'M SORRY -- IN ACACIA'S

10  POSSESSION THAT DON'T SEEM TO BE IN PLAINTIFF'S POSSESSION.

11           SO, THE ARGUMENT THAT WE CAN JUST GO AND GET THESE

12  FROM PLAINTIFFS WE DON'T REALLY ACCEPT THAT ON ITS FACE.  AND

13  THAT'S WHAT WE HAVE AN ISSUE WITH.

14           SO, AT A MINIMUM WE'RE ASKING THE COURT TO ISSUE --

15  TO ORDER ACACIA TO PROVIDE US A PRIVILEGE LOG SO WE CAN ASSESS

16  ALL THE DOCUMENTS, MATCH IT UP WITH PLAINTIFF'S AND RAMBUS'S

17  PRIVILEGE LOG.  AND, THEN, WE CAN RESOLVE WHATEVER ISSUES WITH

18  THE DELAWARE COURT.

19           THE COURT:  ARE YOU ABLE TO IDENTIFY -- THERE ARE

20  MORE THAN -- THERE'S MORE THAN ONE PATENT-IN-SUIT, CORRECT?

21  THERE'S THREE OR FOUR?

22           MR. LINDINGER:  CURRENTLY THERE'S TWO REMAINING

23  PATENTS-IN-SUIT.  THERE WERE FOUR, BUT TWO OF THEM WERE

24  INVALIDATED AT CLAIM CONSTRUCTION.

25           THE COURT:  ALL RIGHT.  THAT SOMEWHAT HOBBLES MY

1    SUGGESTION.  I WAS GOING TO SUGGEST TO THE EXTENT -- AND AS I

2    UNDERSTAND YOUR CONCERN, YOU'RE SAYING, HEY, WE'RE LOOKING INTO

3    THIS SORT OF TUNNEL FROM BOTH ENDS, AND WE HAVE THE SORT OF

4    RAMBUS IN.  WE'RE SEEING ONE THING.  WE'RE LOOKING FROM THE

5    PLAINTIFF'S END WE SEE ANOTHER THING.  WE'RE SORT OF IN THE

6    DARK AS TO WHAT'S IN THE MIDDLE, HOW THINGS ARE BEING

7    TRANSMITTED.

8              MR. LINDINGER:  AND JUST -- I'M SORRY.  MY CO- -- MR.

9    KLEIN REMINDED ME THAT PLAINTIFFS RECENTLY FILED A SECOND -- A

10   MOTION TO FILE A SECOND AMENDED COMPLAINT.  AND THEY DID

11   INCLUDE ALL FOUR REMAINING PATENTS IN THERE, EVEN THOUGH TWO OF

12   THE FOUR BASED ON THE CLAIM CONSTRUCTION WERE FOUND --

13             THE COURT:  HAVE BEEN INVALIDATED.

14             MR. LINDINGER:  -- INVALID.

15             SO, TO CORRECT YOUR -- TO CORRECT MYSELF, YOUR HONOR,

16   ALL FOUR PATENTS ARE REMAINING STILL IN THE CASE AS OF THIS

17   MOMENT.

18             THE COURT:  ALL RIGHT.

19             AND I PROBABLY LOST MY TRAIN OF THOUGHT BECAUSE IT

20   WASN'T THAT STRONG TO START WITH.

21             WHICH IS TO SORT OF ALLEVIATE THAT UNCERTAINTY I

22   WOULD INVITE THE PARTIES TO DISCUSS PERHAPS, YOU KNOW, SHARING

23   THE INFORMATION FROM BOTH ENDS OR YOUR CONCERNS ON MAYBE

24   PERHAPS ONE PATENT-IN-SUIT AND TRY AND RESOLVE IT THAT WAY.

25   THAT'S NOW AT THIS POINT 50 PERCENT OF WHAT'S AT STAKE.  SO,

1 | THAT DOESN'T REALLY HELP.

2 |     MS. MULLEN, TELL ME WHY YOU DON'T WANT TO PRODUCE A

3 | PRIVILEGE LOG OTHER THAN IT'S BURDENSOME, WHICH I UNDERSTAND IT

4 | CERTAINLY WOULD BE.

5 |     MS. MULLEN:  YOUR HONOR, TODAY WE STAND WILLING TO

6 | PRODUCE A PRIVILEGE LOG.  DURING MEET AND CONFER MOVANTS WERE

7 | ATTEMPTING TO CIRCUMVENT JUDGE ANDREW'S EDISCOVERY ORDER IN THE

8 | DELAWARE CASE THAT REQUIRED THE PARTIES TO MEET AND CONFER

9 | ABOUT THE NATURE AND SCOPE OF THE PRIVILEGE LOG.

10 |     DURING MEET AND CONFER CALLS WITH THE PLAINTIFF'S

11 | COUNSEL AND MOVANT'S COUNSEL, BOTH HERE TODAY, THEY ADMITTED

12 | THAT THEY HAD NOT YET ENGAGED PLAINTIFFS IN THE MEET AND CONFER

13 | PROCESS REQUIRED BY THE DISCOVERY ORDER.

14 |     THEREFORE, OUR OBJECTION WAS THAT IT WAS IMPROPER.

15 | THEY WERE ATTEMPTING TO END RUN THEIR OBLIGATION TO MEET AND

16 | CONFER WITH PLAINTIFFS AND END RUN THE DISCOVERY ORDER BY

17 | SEEKING A PRIVILEGE LOG FROM ACACIA BEFORE THE PARTIES HAD EVEN

18 | PRODUCED A PRIVILEGE LOG.

19 |     THE COURT:  OKAY.  BUT THAT'S NOW HAPPENED.  SO,

20 | ACACIA IS WILLING TO PRODUCE A PRIVILEGE LOG.

21 |     MS. MULLEN:  WE ARE HAPPY TO PRODUCE A PRIVILEGE LOG.

22 |     THE COURT:  OKAY.

23 |     MS. MULLEN:  THAT SAID, THE DOCUMENTS THAT RELATE TO

24 | THIS PATENT-IN-SUIT ARE THE ASSERTED PATENTS, THE FOUR PATENTS,

25 | ARE ALL IN THE PLAINTIFF'S POSSESSION.

1          TO THE EXTENT THAT THERE'S DIFFERENCES BETWEEN THE

2     PRIVILEGE LOG THAT RAMBUS HAS PRODUCED AND PLAINTIFFS HAVE

3     PRODUCED --

4          THE COURT:  YOU DIDN'T PRODUCE RAMBUS'S PRIVILEGE LOG

5      -- OR THE PLAINTIFFS DIDN'T PRODUCE RAMBUS'S PRIVILEGE LOG.

6          AND, SO, ONE WOULD EXPECT IF PRIVILEGE LOGS WERE

7     PREPARED BY DIFFERENT LAW FIRMS ABOUT A DIFFERENT SET OF

8     DOCUMENTS, THEY'RE GOING TO LOOK A LITTLE BIT DIFFERENT.

9          MS. MULLEN:  THAT'S CORRECT, YOUR HONOR.

10         AND ALSO --

11         THE COURT:  BUT AT THE SAME TIME IF MR. KLEIN AND MR.

12    LINDINGER ARE SMART ENOUGH TO SORT OF FIGURE THAT OUT, AND IF

13    THEY'VE TRIED TO SORT OF -- THEY PUT THEIR THINKING CAPS ON AND

14    SPENT SOME OF LG AND LENOVO'S TREASURE TRYING TO FIGURE

15    SOMETHING OUT AND HAVEN'T YET, I GUESS ONE POSSIBILITY IS THEY

16    PICK UP THE PHONE AND TALK TO ACACIA OR PLAINTIFFS.  AND YOU

17    ALL HAVE SOME DISCUSSION ABOUT IT.  THE OTHER IS THEY ASK ME TO

18    ORDER A PRIVILEGE LOG.  AND IF YOU'RE READY TO PRODUCE IT, I

19    MIGHT ORDER IT.

20         MR. KLEIN, YOU WERE GOING TO INTERJECT.  I COULD JUST

21    FEEL IT.

22         MR. KLEIN:  OH, MR. LINDINGER, BUT --

23         THE COURT:  I'M SORRY.  YOU GUYS SHOULD SWITCH SEATS.

24         (LAUGHTER.)

25         MR. LINDINGER:  AGAIN, YOUR HONOR, AS FAR AS TODAY,

1    IF ACACIA IS WILLING TO PRODUCE A PRIVILEGE LOG, WHICH WE'VE

2    BEEN ASKING FOR, WE'RE FINE WITH THAT, YOUR HONOR.

3            THE COURT:  ALL RIGHT.

4            MS. MULLEN:  YOUR HONOR, WE SUGGEST -- BECAUSE ACACIA

5    AND THE PLAINTIFFS HAVE IDENTICAL DOCUMENTS -- THAT WE COULD

6    PROVIDE THE COURT WITH A COPY OF PLAINTIFF'S PRIVILEGE LOG EVEN

7    THOUGH WE BELIEVE THAT THIS MEET-AND-CONFER CONVERSATION SHOULD

8    BE HAD BETWEEN PLAINTIFFS AND MOVANTS AND WHAT'S IN THE

9    DELAWARE COURT.

10           WE COULD THEN -- ACACIA AND MOVANTS MEET AND CONFER

11   ABOUT THE SPECIFIC CONCRETE PRIVILEGE ASSERTIONS THEY'RE

12   CHALLENGING AND ATTEMPT TO RESOLVE THEM BEFORE PRESENTING THEM

13   TO THE COURT AGAIN.

14           THE COURT:  I THINK WHAT I'LL DO IS ORDER YOU TO

15   PRODUCE A PRIVILEGE LOG.  AND THEN I THINK IF THAT'S -- IF THAT

16   PRIVILEGE LOG RESULTS IN SOME FURTHER DISPUTE ABOUT A

17   PARTICULAR DOCUMENT THAT FOR SOME REMOTE REASON -- WHICH YOU'RE

18   GOING TO DENY.  AND I APPRECIATE THAT -- IS NOT IN THE

19   POSSESSION OF PLAINTIFFS BUT IS IN THE POSSESSION OF ACACIA,

20   THEN, I CAN ADDRESS THAT COMMON-INTEREST ISSUE AT SOME FUTURE

21   POINT IN TIME.  BUT WE'LL KNOW FROM YOUR PRIVILEGE LOG WHETHER

22   THERE'S ANY SUCH DOCUMENTS.

23           AND IF YOU'VE LOGGED EVERYTHING THE SAME AS

24   PLAINTIFFS, WELL, THEN, THAT'S -- YOU'RE GOING TO HAVE TO HAVE

25   SOME DISCUSSION I THINK WITH MR. LINDINGER OR MR. KLEIN ABOUT

1   WHY THE DISCREPANCIES BETWEEN RAMBUS'S LOG AND YOUR LOG.

2          MS. MULLEN:  AND I WOULD LIKE TO POINT OUT THAT I

3   BELIEVE ONE OF THE REASONS FOR THE DISCREPANCIES IS THAT THE

4   EDISCOVERY ORDER IN THE DELAWARE COURT DOES NOT ALLOW THE

5   DISCOVERY OF EMAIL COMMUNICATIONS WITHOUT SHOWING THAT THERE IS

6   A NEED AND THAT IT WOULD NOT BE AN UNDUE BURDEN TO THE PARTIES

7   AND, THEREAFTER, LIMITS THE COLLECTION OF EMAIL PRODUCTION TO

8   SPECIFIC PARAMETERS -- THE IDENTIFICATION OF FIVE CUSTODIANS

9   AND A LIMITED NUMBER OF SEARCH TERMS.

10          THE COURT:  YES.

11          MS. MULLEN:  WHEN WE DISCUSSED THIS WITH MOVANT'S

12   COUNSEL, THEY ADMITTED THAT THEY HAD NOT YET SOUGHT EMAIL

13   COMMUNICATIONS FROM PLAINTIFFS.  AND, YET, AGAIN, THEY WERE

14   ATTEMPTING TO ENTER ON MEET-AND-CONFER OBLIGATIONS WITH

15   PLAINTIFFS AND THE DISCOVERY ORDER AND SEEK EMAIL

16   COMMUNICATIONS FROM ACACIA AND RAMBUS.  AND THEY HAVE DONE JUST

17   THAT AND SOUGHT EMAIL COMMUNICATIONS FROM RAMBUS.  AND THAT

18   IMPROPER ATTEMPT TO CIRCUMVENT THE DISCOVERY ORDER IS ALSO

19   SUBJECT TO THE MOTION BEING HEARD IN THE DELAWARE COURT.

20          SO, THE DISCREPANCIES AND THE NUMBER OF ENTRIES

21   BETWEEN RAMBUS'S PRIVILEGE LOG, WHICH ACCOUNTS FOR EMAIL

22   COMMUNICATIONS, AND PLAINTIFFS MAY BE IN PART DUE TO THAT.

23          THE COURT:  ALL RIGHT.  WELL, THAT WILL -- THAT WILL

24   ALSO BE SOMETHING FOR THE PARTIES TO WRESTLE WITH.

25          ANYTHING FURTHER FOR ME TODAY?

1          MR. LINDINGER:  I THINK BOTH MR. KLEIN AND I HAVE

2     BRIEF RESPONSES ON THE TWO PRELIMINARY ISSUES, YOUR HONOR.

3          THE COURT:  GO AHEAD.

4          MR. KLEIN:  JUST BRIEFLY, YOUR HONOR, FOR THE GLOBAL

5     AGREEMENTS, WITH RESPECT TO IT BEING RELEVANT TO DAMAGES, WE

6     TALKED ABOUT THAT THEY WERE REQUIRED UNDER THOSE TO GIVE NOTICE

7     OF LATER REQUIRED PATENTS.  THEY'RE REQUIRED NOT ONLY TO GIVE

8     NOTICE BUT TO -- TO EXTEND AN OPTION TO EXTEND THE TERM OF THE

9     AGREEMENT.

10         SO, THERE WAS -- YOU KNOW, FOR EXAMPLE, IF THERE WAS

11    SOME LATER REQUIRED PATENTS, THEY SAID, OKAY.  HERE'S A NOTICE

12    OF PATENTS THAT WE HAVE.  IF YOU WANT TO EXTEND THE TERM OF

13    YOUR LICENSE TO INCLUDE THESE PATENTS, IT WOULD COST YOU X,

14    SOMETHING LIKE THAT.

15         NOW, I DON'T KNOW HOW THAT WORKS BECAUSE WE CAN'T SEE

16    THEM.  BUT IT ISN'T -- IT'S NOT JUST A NOTICE.  IT'S A -- FIRST

17    OF ALL, IT'S A COVENANT NOT TO SUE, WHICH THERE ARE REPORTS

18    THAT THE FEDERAL CIRCUIT HAS DETERMINED THAT THAT CAN BE A

19    LICENSE IN CERTAIN SITUATIONS.

20         SO, THE SECOND PART IS THEY HAVE TO GIVE AN OPTION TO

21    EXTEND.  AND I'M LOOKING AT PAGE 16 OF ACACIA'S BRIEF AND THE

22    JOINT STATEMENT AND IT SAYS,

23         "THE GLOBAL AGREEMENTS ONLY REQUIRED ARC GIVE

24          NOTICE OF LATER PATENTS AND AN OPTION TO EXTEND THE

25          TERM OF THE AGREEMENT."

1          SO, THOSE ARE -- THOSE WOULD CERTAINLY -- THE OPTION,

2    WHATEVER THOSE COMMUNICATIONS WERE, WOULD BE RELEVANT TO A

3    DAMAGES CASE BECAUSE THAT HAS PUT SOME VALUE OR MAYBE NOT A

4    DOLLAR VALUE BUT SOME PARAMETERS OF HOW THAT -- THAT ANALYSIS

5    WOULD LOOK LIKE AND HOW ACACIA VALUES THOSE PATENTS.

6          SO, WE'RE AT LEAST ENTITLED TO EXPLORE WHAT THOSE

7    OPTIONS LOOK LIKE AND THE COMMUNICATIONS BACK AND FORTH IN

8    NEGOTIATING OVER THE PATENTS THAT ARE RELEVANT IN THIS CASE.

9          THE COURT:  ALL RIGHT.  MR. LINDINGER.

10         MR. LINDINGER:  REGARDING THE RFP 31, REGARDING THE

11   FTC DOCUMENTS, IN THE BRIEFING PLAINTIFFS MADE THE ASSERTION

12   THAT THEY'VE CONFIRMED MULTIPLE TIMES IN WRITING THAT BASICALLY

13   THERE'S NO WRITTEN POLICIES FOR LICENSING.  SUCH A STATEMENT IS

14   BELIED BY ACACIA'S BUSINESS MODEL.

15         AND CURIOUSLY ONE OF THE CASES THAT THEY CITE IN THE

16   BRIEFING, THE DIAGNOSTIC SYSTEMS CASE FROM THIS COURT, SPENDS

17   MUCH TIME DISCUSSING ACACIA'S BUSINESS MODEL AND, IN FACT,

18   CITES TO ONE OF THEIR EMPLOYEES GIVING CORPORATE TESTIMONY.

19   MR. VELLA CITING TO A DOCUMENT TITLED, "NEXT GENERATION PATENT

20   APPRAISAL" IN PARENTHESIS, BUYING PATENTS, FOR A SPRING 2008

21   PRESENTATION.

22         AND THE COURT ANALYZED THIS DOCUMENT IN DETAIL AND

23   EXPLAINED THAT THIS PRESENTATION FOCUSED ON THE BUSINESS OF HOW

24   TO IDENTIFY PATENTS, HOW TO ACQUIRE, HOW TO LOOK FOR AND

25   EVALUATE TARGETS TO ASSERT THEM AGAINST, HOW TO ASSESS THE

1    VALUE.

2              TO THE EXTENT THEY MAKE -- ACACIA MAKES AN ARGUMENT

3    THAT NONE OF THESE DOCUMENTS EXIST, IT'S JUST NOT CREDIBLE,

4    YOUR HONOR.  AND, IN FACT, ONE OF THEIR FORMER EXECUTIVES MR.

5    TAUB, WHO WE CITED HIS DEPOSITION TESTIMONY IN EXHIBIT P,

6    CONFIRMED THAT SUCH DOCUMENTS EXIST.

7              SO, WHILE WE AGREE THAT SOME OF OUR RFP'S TO ACACIA

8    SUCH AS RFP NUMBER 13 GO TOWARDS A SMALLER SUBSET OF DOCUMENTS,

9    WE SPECIFICALLY -- THEY STONEWALLED US ON THAT REQUEST ITSELF.

10   SO, WE CHOSE TO PURSUE MOVING TO COMPEL ON RFP 31 BECAUSE IT

11   SPECIFICALLY TALKS ABOUT PATENT ACQUISITION, LICENSING

12   PROCEDURES.  SO, THERE OUGHT TO BE NO DOUBT THAT THEY PRODUCED

13   A MILLION-PLUS PAGES TO THE GOVERNMENT IN RESPONSE TO THE FTC

14   INVESTIGATION.

15             AND, AGAIN, WE DON'T BELIEVE A MILLION-PLUS PAGES OF

16   RELEVANT DOCUMENTS EXIST.  BUT THERE HAS TO BE AT LEAST A

17   SUBSET IN THERE RELATED TO THEIR POLICIES AND RELATED TO THE

18   PATENTS-IN-SUIT THAT ARE UNQUESTIONABLY RELEVANT.

19             AND WE ASK THE COURT AGAIN TO ADOPT AT LEAST ONE OF

20   OUR TWO ALTERNATIVES PRESENTED, WHICH SHOULD ALLEVIATE ANY SORT

21   OF BURDEN CONCERNS THAT THE -- ACACIA HAS.

22             THE COURT:  ALL RIGHT.

23             ANY FINAL COMMENT, MS. MULLEN?

24             MS. MULLEN:  WITH RESPECT TO THE GLOBAL LICENSING

25   AGREEMENTS?

1          THE COURT:  ANYTHING AT ALL.  SO, I'LL GIVE YOU THE

2     LAST CHANCE TO BE HEARD.  AND THEN WE'RE GOING TO TAKE THE

3     MATTER UNDER SUBMISSION.

4          MS. MULLEN:  WITH RESPECT TO THE GLOBAL LICENSING

5     AGREEMENTS, AS I STATED WE'RE WILLING TO MEET AND CONFER WITH

6     RESPECT TO THE REDACTIONS TO MAKE MOVANTS CONFIDENT THAT

7     THERE'S NO LICENSING OF THEIR PATENTS.

8          HOWEVER, THEIR ATTEMPT TO OBTAIN ACACIA'S

9     COMMUNICATIONS IS YET AGAIN THEIR ATTEMPT TO END RUN THE

10    DISCOVERY ORDER IN THIS ACTION THAT SPECIFICALLY SAYS THAT

11    THESE EMAIL COMMUNICATIONS ARE NOT DISCOVERABLE.

12          (PAUSE IN PROCEEDINGS.)

13          THE COURT:  OKAY.

14          MR. LINDINGER:  YOUR HONOR, WE WOULD -- THERE'S NO

15    PRIVILEGE.  THERE'S NO ARGUMENT THAT THERE'S PRIVILEGED

16    INFORMATION HERE.  WE JUST BELIEVE ANY REDACTION IS IMPROPER.

17    THEY HAVE -- THE PLAINTIFFS HAVE REQUESTED, YOU KNOW, VERY

18    BROAD LICENSED DISCLOSURES IN THE CASE.  AND THEY WANT

19    EVERYTHING.  AND THERE'S NO REDACTIONS THERE -- THERE'S

20    ARGUABLY NO PRIVILEGE THAT'S NOT AT STAKE HERE.

21          IF A THIRD PARTY HAD AN ISSUE, THEY CAN COME AND MOVE

22    FOR PROTECTION.  THAT HASN'T HAPPENED.  SO, I BELIEVE THAT AT

23    LEAST FOR THOSE GLOBAL AGREEMENTS THAT ARE IDENTIFIED IN

24    EXHIBIT F AS ENCUMBERING THE PATENT, FULL UNREDACTED COPIES OF

25    THOSE ARE -- SHOULD BE PRODUCED IN THIS CASE.

44

1            THE COURT:  ALL RIGHT.  I THINK I UNDERSTAND

2    EVERYONE'S POSITION.

3            THE COURT WILL HAVE A RULING FOR EVERYONE SHORTLY.

4            AND WE WILL WISH YOU ALL GOOD LUCK IN DELAWARE AND

5    OTHER PLACES THIS CASE MAY TAKE YOU.

6            AND THANK YOU VERY MUCH.

7            MS. MULLEN:  THANK YOU, YOUR HONOR.

8            MR. KLEIN:  THANK YOU, YOUR HONOR.

9            MR. LINDINGER:  THANK YOU, YOUR HONOR.

10           (PROCEEDINGS ADJOURNED AT 11:05 A.M.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

45

1

2

3                            C E R T I F I C A T E

4

5           I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

6    FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE

7    ABOVE-ENTITLED MATTER.

8

9

10

11   /S/ DOROTHY BABYKIN                    1/26/16

12   _____    _____

13   FEDERALLY CERTIFIED TRANSCRIBER        DATED

14   DOROTHY BABYKIN

15

16

17

18

19

20

21

22

23

24

25